Robert E. Aycock (#8878)
William B. Chadwick (#16416)
KIMBALL ANDERSON
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
Phone: (801) 359-3333
robert@kimballanderson.com
will@kimballanderson.com

*Attorneys for Defendants*
*ComicBookMovie.com and Nathan Best*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE<br><br>　　　　Plaintiff,<br><br>vs.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10.<br><br>　　　　Defendants. | **MOTION TO DISMISS COMPLAINT UNDER FRCP 12(b)(6) AND/OR SUSPEND PENDING OUTCOME OF RELATED CASE**<br><br>Case No. 2:21-cv-00567-DBP<br><br>District Judge: _____<br><br>Magistrate Judge: Dustin B. Pead |

Defendant Best Little Sites, d/b/a www.comicbookmovie.com ("CBM") and Defendant Nathan Best ("Best") (collectively, "Defendants") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint filed by Plaintiff Great Bowery, d/b/a Trunk Archive ("Trunk Archive") for violating the doctrine of claim splitting. Defendants also request that the Court suspend this case (either before or after determining this Motion) until the other pending copyright case between Trunk Archive and CBM is resolved. That case involves the same parties, same underlying facts, same

contributors, same website, the same underlying legal questions, and the same copyright registration, and is ready for trial.

## I.    Introduction

CBM owns and operates www.comicbookmovie.com ("Website"), a "fansite" where enthusiasts can post user-generated articles, reviews, news, and other content about movies, particularly those in the comic book genre. Since its launch, CBM's Website has attracted numerous independent contributors who create and post content related to other films and shows.

Over two years ago, Trunk Archive sent correspondence to CBM, demanding payment for the use of images posted by third-parties to CBM's Website. To resolve those allegations, CBM brought a declaratory judgment action in this Court seeking a determination that there had not been copyright infringement. *See Best Little Sites, d/b/a Comicbookmovie.com v. Great Bowery, d/b/a Trunk Archive*, Case No. 2:19-cv-00319 ("Trunk Archive I"). Trunk Archive responded with a counterclaim against CBM for copyright infringement. *Id.*, Dkt. 7, attached hereto as Exhibit A. That case hinges on two key issues: (1) whether the images displayed on CBM's Website via inline linking constitute copyright infringement, and (2) whether CBM is protected from liability by the safe harbor of the Digital Millennium Copyright Act ("DMCA").

Trunk Archive and CBM stipulated to a relatively typical schedule and discovery limits in Trunk Archive I and the court entered the parties' joint report. *See Trunk Archive I*, Attorney Planning Meeting Report, Dkt. 16, attached hereto as Exhibit B. Despite having several months to conduct discovery, Trunk Archive did not timely send any discovery requests, did not take any depositions, and did not serve any subpoenas. After the close of discovery, Trunk Archive moved to try to get the court to rule on the in-line linking issue or re-open discovery so that it could inquire

regarding CBM's DMCA defense. *See Trunk Archive I*, Dkt. 20 (Motion for Telephonic Status Conference); *Trunk Archive I*, Dkt. 31 (Objections to Order Denying Motion for Telephonic Status Conference). These were denied. *See Trunk Archive I*, Dkt. 29 (Order Denying Motion for Status Conference); *Trunk Archive I*, Dkt. 36 (Order Affirming Magistrate Decision to Deny Motion for Status Conference). Having missed the deadline to file a dispositive motion, Trunk Archive then moved to change the schedule to give it another chance to file a motion for summary judgment. *Trunk Archive I*, Dkt. 38 (Motion to Modify Scheduling Order). This motion was also denied. *Trunk Archive I*, Dkt. 56 (Order Denying Motion to Modify Scheduling Order). Now, the parties are just waiting for the court in Trunk Archive I to set a trial date.

Trunk Archive, through its own decisions, failed to obtain a ruling on the inline linking issue or take discovery on CBM's DMCA defenses in Trunk Archive I. Evidently now regretting its litigation strategy in the first action, Trunk Archive has filed this second action ("Trunk Archive II"), again accusing CBM of similar copyright infringement. This transparent attempt for a second bite at the apple is prohibited under the doctrine of claim-splitting. "It is well-settled that a plaintiff may not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed." *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002) (citation omitted).

The instant Complaint relies on the same underlying factual and legal theories as those Trunk Archive asserted in its counterclaim in Trunk Archive I. Once again, the allegations turn on whether inline linking constitutes copyright infringement and whether CBM qualifies for protection in the safe harbor of the DMCA. The parties, actors, accused content, purported third-

party contributors, governing terms of service, and relevant laws are essentially the same between both cases.

Although the Trunk Archive II Complaint identifies a handful of additional articles that purportedly infringe Trunk Archive's copyrights that were not identified in Trunk Archive I, most of those articles were posted before Trunk Archive filed its counterclaim in Trunk Archive I. As such, Trunk Archive could have included them in its Trunk Archive I counterclaim against CBM. Trunk Archive is barred under the doctrine of claim-splitting from filing this new lawsuit to bring those allegations against CBM.

Moreover, this time around, Trunk Archive also named CBM's owner and president—Nate Best—personally as a defendant as well as two third-party contributors who post content to CBM's Website. Trunk Archive does not plead any specific acts by Mr. Best personally that would constitute direct, contributory, or vicarious infringement. Trunk Archive also does not attempt to pierce the corporate veil or otherwise hold Mr. Best liable for the alleged tort of others. Because Trunk Archive has failed to state a claim against Mr. Best personally, he should be dismissed with prejudice.

Finally, if there is a claim remaining after this Motion, CBM submits that suspending this proceeding until Trunk Archive I is resolved will serve the interests of the Court, public, parties, and justice. CBM further submits that suspending the proceedings before ruling on this Motion would also be appropriate. The discovery period related to Trunk Archive's infringement claims asserted against CBM in Trunk Archive I is completed and that case is ready for trial. Because of the substantial overlap between Trunk Archive I and Trunk Archive II, the resolution of Trunk Archive I will settle many, if not all, of the factual and legal issues raised in this duplicative case.

A determination on the in-line linking question in Trunk Archive I would apply equally to the articles accused in Trunk Archive II. Likewise, if there is a determination on the DMCA safe harbor question, it would also apply equally to the actions alleged in Trunk Archive II. Suspending this case will also prevent the possibility of conflicting rulings on the same underlying factual questions.

## II.     Factual Background

**Trunk Archive I Litigation (No. 19-cv-00319)**

1. On May 9, 2019, Best Little Sites d/b/a ComicBookMovie.com filed an action against Great Bowery d/b/a Trunk Archive seeking a declaratory judgment that it did not infringe Trunk Archive's copyright. *See Best Little Sites d/b/a ComicBookMovie.com v. Great Bowery d/b/a Trunk Archive*, No. 19-cv-00319 ("Trunk Archive I"), Dkt. 2.

2. On July 12, 2019, Trunk Archive answered the complaint and filed a counterclaim against CBM alleging copyright infringement. *See Trunk Archive I*, Dkt. 7, attached hereto as Exhibit A.

3. Trunk Archive's counterclaim in Trunk Archive I alleged that one article posted by Cassidy on CBM's Website contained multiple images posted without authorization from the copyright owner. *See id.*

4. Fact discovery closed in Trunk Archive I on January 17, 2019. *Trunk Archive I*, Attorneys Planning Meeting Report, Dkt. 16, attached hereto as Exhibit B.

5. September 12, 2019 was the last day for the parties to file a motion to amend their pleadings or add parties. *Id.*

6. Trunk Archive did not file a motion to amend its counterclaim or to add parties in Trunk Archive I.

7. Trunk Archive I is ready for trial, and the parties are waiting for a trial date.

**Trunk Archive II Litigation (No. 2:21-cv-00567)**

8. On September 27, 2021, Trunk Archive initiated the above-captioned case against CBM in the District of Utah, again alleging copyright infringement. *Great Bowery d/b/a Trunk Archive v. Best et al.* (No. 2:21-cv-00567) ("Trunk Archive II"), Dkt. 2.

9. In addition to naming CBM as a Defendant, the Trunk Archive II Complaint also included Defendants Nathan Best (CBM's owner), Josh Wilding (a third-party content contributor to CBM), and Mark Cassidy (another third-party content contributor to CBM). *Id.*

10. To date, Trunk Archive has not filed confirmation that it has served Wilding and Cassidy with the Trunk Archive II Complaint according to Fed. R. Civ. P. 5.

11. Like the Trunk Archive I Complaint, the Trunk Archive II Complaint only sets forth one cause of action for copyright infringement.

12. As alleged by Trunk Archive, the only copyrights at issue in the Trunk Archive I Complaint and Trunk Archive II Complaint are the work of the same photographer (Annie Liebovitz), are assigned to the same party (Trunk Archive), involve the same subject matter (cast and crew of *Star Wars: The Last Jedi* and *Star Wars: The Rise of Skywalker*), and many of the same works (*see Trunk Archive I*, Dkt. 7-1 at Exhibit "A," relevant portion attached hereto as Exhibit C; *see Trunk Archive II*, Dkt. 2-1 at Exhibit A).

13. Eight articles accused in the Trunk Archive II Complaint were posted before the Trunk Archive I Counterclaim was filed on July 12, 2019. Another accused article was posted after

Trunk Archive filed its counterclaim in Trunk Archive I but a month before Trunk Archive's last day to amend its complaint or add parties.

### III. Argument

#### A. Trunk Archive's claim for copyright infringement should be dismissed because it violates the doctrine of claim-splitting.

##### 1. *Legal background*

Trunk Archive's instant Complaint is a classic example of claim-splitting and should be dismissed. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). By spreading claims around in multiple lawsuits, parties waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases." *Hartsel Springs,* 296 F.3d at 985.

"District courts have discretion to control their dockets by dismissing duplicative cases." *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016) citing Colo. *River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 817 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation."). "For example, a district court may apply the rule against claim-splitting when a party files two identical—or nearly identical—complaints to get around a procedural rule." *Id.* at 551 (10th Cir. 2016); *see Hartsel Springs*, 296 F.3d at 990 (recognizing general rule that "plaintiff may 'not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.'") (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)). "[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir. 2000).

The 10th Circuit has noted that "recent cases analyze claim-splitting as an aspect of res judicata." *Hartsel Springs,* 296 F.3d at 986 (collecting cases); *see also Stone v. Dep't of Aviation,* 453 F.3d 1271, 1278 (10th Cir. 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common law rule of claim preclusion prohibiting the splitting of actions.").

Since the Court will evaluate the preclusive effect of a case pending before a federal court, the federal law of claim preclusion applies. *See Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992). In Utah, the claim preclusion elements "are 'virtually identical' to the federal rules, so it is of no practical consequence whether we apply Utah or federal rules. . . ." *Haik v. Salt Lake City Corp.*, 2017 UT 14, ¶ 9, 393 P.3d 285 (citing *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 28 n.5)).

In the Tenth Circuit, "claim preclusion requires: (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir. 2000) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999)). "Put another way, the doctrine of claim preclusion prevents 'the parties or their privies from relitigating issues that were or could have been raised in' an earlier action." *Id. at* 1202 quoting *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992).

Claim-splitting differs in a least one regard from res judicata: "[w]hile it is correct that a final judgment is necessary for traditional claim preclusion analysis, it is not required for the purposes of claim splitting." *Katz*, 655 F.3d at 1218. "It is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final

8

judgment. . . . Thus, in the claim-splitting context, the appropriate inquiry is whether, *assuming that the first suit were already final,* the second suit could be precluded pursuant to claim preclusion." *Id.*, quoting *Hartsel Springs,* 296 F.3d at 987 n. 1 (emphasis added). Therefore, the Court must assume that the first case resulted in a final judgment for its claim-splitting analysis, and it only needs to consider the last two prongs of the claim preclusion test. *See Bank of the W. v. Whitney*, No. 2:17-CV-210 TS, 2017 WL 4539323, at *2 (D. Utah Oct. 10, 2017).

> 2. The Trunk Archive II claims are brought against the same party sued in Trunk Archive I.

"Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same." *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989). Trunk Archive sued the same party (CBM) in both cases, thus satisfying this element of claim-splitting.

> 3. The Trunk Archive II claims could and should have been raised in the first action.

Trunk Archive's instant allegations "could and should have been raised in the first action" if it wanted to bring them. *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000) (outlining elements of claim preclusion under Utah Law). Trunk Archive admits that "[i]n February 2019, Trunk Archive began to discover a number of articles on the CBM website that displayed unlicensed copies of the Star Wars Photographs." *Trunk Archive II* Complaint, Dkt. 2 at ¶ 57. From there, Trunk Archive filed its counterclaim in Trunk Archive I on July 12, 2019. *See Trunk Archive I*, Answer and Counterclaim, Dkt. 7, attached hereto as Exhibit A. That counterclaim only accused one article on CBM's Website of allegedly infringing Trunk Archive's rights. *See id.* at ¶ 36.

9

The deadline for Trunk Archive to move to amend its Trunk Archive I Complaint or add parties to that litigation was September 12, 2019. *See Trunk Archive I*, Attorneys Planning Meeting Report, Dkt. 16, attached as Exhibit B. Trunk Archive did not make any such motion. Now, over two years after the deadline to amend its Trunk Archive I Complaint, Trunk Archive has filed the Trunk Archive II Complaint identifying various other articles that allegedly infringe its copyrights. However, the majority of the posts listed in the Trunk Archive II Complaint were published before Trunk Archive filed the Trunk Archive I Complaint or at least before the deadline to amend the Trunk Archive I Complaint:

- "STAR WARS: THE LAST JEDI Actress Laura Dern Shares New Image Of Vice Admiral Amilyn Holdo" dated October 18, 2017 (Dkt. 2 at ¶ 58);

- "STAR WARS: THE LAST JEDI International TV Spot Features Benicio Del Toro As The Mysterious DJ" dated November 20, 2017 (*id.* at ¶ 59);

- "STAR WARS: THE LAST JED's Mark Hamill Shares A Lovely Tribute To Carrie Fisher One Year After Her Passing" dated December 27, 2017" (*id.* at ¶ 60);

- "Billie Lourd Shares A Touching Tribute To Carrie Fisher On The Second Anniversary Of Her Passing" dated December 27, 2018 (*id.* at ¶ 61);

- "STAR WARS: THE RISE OF SKYWALKER – 12 Biggest Reveals And Spoilers From Vanity Fair's Cover Story" dated May 22, 2019 (*id.* at ¶ 62);

- "STAR WARS: THE RISE OF SKYWALKER Behind The Scenes Video Features New Aliens And Cast Interviews" dated May 22, 2019 (*id.* at ¶ 63);

- "STAR WARS: THE RISE OF SKYWALKER Has A Very Interesting Alternate Title In Japan" dated June 25, 2019 (*Id.* at ¶ 64);

- "STAR WARS: THE RISE OF SKYWALKER Star Daisy Ridley Promises A 'Brilliant End' To The Story" dated June 26, 2019 (*id.* at ¶ 65); and

- "STAR WARS: THE RISE OF SKYWALKER's Runtime Possible [sic] Revealed Along With Some Potential SPOILERS" dated August 12, 2019 (*id.* at ¶ 66).

Trunk Archive has not offered any justification for why it did not accuse these posts (collectively, the "Trunk Archive II Articles") in its first litigation. This is the precise type of gamesmanship that the claim-splitting doctrine is intended to prevent. *See Garver v. Principal Life Ins. Co.*, 2021 WL 2338255, at *3 (D. Kan. June 8, 2021) ("The Court rejects Plaintiff's counsel's gamesmanship . . . . If the court were to follow the logic advanced by Plaintiff's counsel, Plaintiff could file a new lawsuit every time PLI reaffirms its denial of his benefits."). Each Trunk Archive II Article was posted at least as early as the deadline to amend the Trunk Archive I Complaint. The Trunk Archive II Articles were also searchable and accessible in the same manner as the articles identified in the Trunk I Complaint. Simply put, Trunk Archive was required to bring its related claims together in one case or otherwise risk them being dismissed in a second action. *Katz* at 1214 ("[R]elated claims must be brought in a single cause of action," or they may be dismissed).

   4. *The Trunk Archive II claims rely on the same underlying facts and legal theories as the Trunk Archive I claim.*

In both Trunk Archive I and Trunk Archive II, Trunk Archive is asserting a claim of copyright infringement against CBM for images posted by third-parties to CBM's Website. The only copyrights asserted in the Trunk Archive I Complaint and Trunk Archive II Complaint are the work of the same photographer (Annie Liebovitz), are assigned to the same party (Trunk Archive), involve the same subject matter (cast and crew of *Star Wars: The Last Jedi* and *Star Wars: The Rise of Skywalker*), and include many of the same works (*see Trunk Archive I*, Dkt. 7-1 at Exhibit "A," attached hereto as Exhibit C; *see Trunk Archive II*, Dkt. 2-1 at Exhibit A). The

purported author of the accused article in Trunk Archive I (Defendant Mark Cassidy) is also the alleged author of many of the articles accused in Trunk Archive II.

Like Trunk Archive I, Trunk Archive II will require resolution of two main issues: (1) whether the images displayed on CBM's Website via inline linking constitute copyright infringement, and (2) whether CBM qualifies for protection in the DMCA safe harbor. The Trunk Archive II litigation is simply a split of the claim brought in Trunk Archive I. The Trunk Archive I litigation has already finished discovery and dispositive briefing and Trunk Archive should not be afforded a do-over by restarting that process in this case.[1]

B.     <u>Trunk Archive has not plead any facts regarding Nathan Best personally.</u>

Trunk Archive affirmatively pleads that each of the Trunk Archive II Articles was authored and posted by someone other than Mr. Best. *See Trunk Archive II Complaint*, Dkt. 2, at ¶¶ 58-72. The Complaint does not plead a single action that Mr. Best allegedly took, let alone any tortious conduct. Further, Trunk Archive's Complaint does not try to pierce CBM's corporate veil and does not allege any facts that could establish that CBM is the "alter ego" of Mr. Best. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Even giving Trunk Archive the benefit of the doubt on every allegation in its Complaint, it has still failed to state a claim upon which relief can be granted as to Mr. Best personally. *See* Fed. R. Civ. P. 12(b)(6).

---

[1] Although Trunk Archive II accuses articles posted after the Trunk Archive I deadlines, resolution of the in-line linking and DMCA safe harbor issues in Trunk Archive I should resolve the related questions of infringement regarding those later-published articles without needing to relitigate them in this or a separate case. *See Katz*, 655 F.3d at 1218.

The closest that Trunk Archive comes to pleading facts connected to Mr. Best is that he "is the owner and President of CBM" and "[o]n information and belief, Defendant Best has the ability to supervise and control the content on the Website and receives a financial benefit from the operation of the Website." *Trunk Archive II* Complaint, Dkt. 2 at ¶¶ 26, 30. However, these two statements do not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 545 (quoting Fed. R. Civ. P. 8(a)(2)).

As the owner and president of CBM, Mr. Best is shielded from liability from CBM's alleged torts and certainly those of independent contributors such as Wilding and Cassidy. "The general rule is that a corporation is an entity separate and distinct from its officers, shareholders and directors and that they will not be held personally liable for the corporation's debts and obligations." *Reedeker v. Salisbury*, 952 P.2d 577, 582 (Utah App. 1998) (citation omitted). Although Mr. Best is the president of CBM, "an officer or director of a corporation is not personally liable for torts of the corporation or of its other officers and agents merely by virtue of holding corporate office, but can only incur personal liability by participating in the wrongful activity." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 19.

The allegations that Mr. Best can supervise and control the content on the Website and that he purportedly receives a financial benefit from the Website are conclusory statements without factual support and ignores CBM's status as a Utah LLC. "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

Beyond that, Mr. Best's alleged ability to control CBM and the financial benefit he receives by virtue of his ownership in CBM would not therefore make him liable for copyright infringement

without some other non-alleged facts. First, Trunk Archive expressly pleads that the Overlapping Articles were posted by someone other than Mr. Best. Taking these allegations as plead, Mr. Best therefore could not have personally directly infringed the copyright. Second, "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). The Complaint does not plead any facts to support this theory of liability.

Finally, one "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Id.* Trunk Archive lacks the facts to make this allegation and did not plead it. Financial benefit must be more than an owner's ancillary interest in the performance of a handful of articles among the tens of thousands of pages on a website that his company owns. Instead, "[f]inancial benefit exists where the availability of material 'acts as a draw for customers.'" *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996). The Complaint does not allege any facts to this effect.

Moreover, the Complaint does not articulate the extent to which Mr. Best can allegedly personally "supervise and control" the content on CBM's Website. At most, CBM might have supervisory abilities regarding its content, not Mr. Best. And even then, those abilities are limited. *See Napster*, 239 F.3d at 1024 (right and ability to control are "cabined by the system's current architecture."). Mr. Best does not personally set rules or regulations for CBM's Website. He does not have independent, personal enforcement authority over content on CBM's pages. Any role or ability he may have in connection with CBM's Website is in his role as CBM's agent and not in his personal capacity. Without independent control, Mr. Best cannot be liable for vicarious infringement. For

example, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the 9th Circuit analyzed the ability of the <u>corporate entity</u> to police infringement and not that of a specific individual acting on behalf of the entity. 76 F. 3d 259, 262-63 (9th Cir. 1996). The *Fonovisa* Court performed a similar analysis of the corporate defendants' respective control in *Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) and *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). *Id.*

Finally, the Complaint does not include any allegation that Mr. Best declined to exercise his alleged control over CBM's Website. In sum, Trunk Archive's inclusion of Mr. Best in this litigation is a thinly-veiled attempt to re-open discovery on issues it should have addressed in Trunk Archive I and to exert inappropriate pressure on Mr. Best personally. This is a classic example of "failure to state a claim," and Mr. Best should be dismissed with prejudice.

    C.    <u>Suspension of Trunk Archive II until Trunk Archive I is resolved will serve the interests of justice.</u>

To the extent there is any claim surviving after this Motion, Defendants respectfully request that this case be suspended until Trunk Archive I has resolved. A suspension of this proceeding will prevent the unnecessary retreading of discovery that was or could have been done years before. In that spirit, Defendants also submit that suspension of the case before resolving this Motion would also be appropriate.

Fact discovery in Trunk Archive I closed in January 2020, almost two years ago. In that case, Trunk Archive and CBM are only waiting for a trial date to resolve the questions regarding (1) whether images hosted on a third-party server and displayed via inline linking constitutes infringement, (2) whether CBM qualified for safe harbor protection under the DMCA, and (3) what damages (if any) are appropriate. Trunk Archive's second case against CBM relies on the

same accusations, legal theories, and underlying facts. The Trunk Archive I determination will resolve all or almost all of this case without forcing the parties to undergo repetitive discovery and motion practice. Moreover, co-pending lawsuits against the same party with similar underlying facts could result in conflicting outcomes. Suspending this case until there is a final judgment in the first case will avoid this potential outcome.

## IV. Conclusion

Trunk Archive's Complaint should be dismissed under the theory of claim-splitting because it raises claims and allegations against CBM that could have been brought in Trunk Archive I. At a minimum, Mr. Best should be dismissed with prejudice because Trunk Archive has failed to plead facts or allegations that make him personally liable for copyright infringement or that would make him liable for the infringement of others. Last, suspension of these proceedings—either before or after a determination on this Motion—will prevent unnecessary relitigation of the facts and issues from the first case.

Dated this 10th day of November 2021.

KIMBALL ANDERSON

*/s/ Robert E. Aycock*
Robert E. Aycock
William B. Chadwick

*Attorneys for Defendants*
*ComicBookMovie.com and Nathan Best*

## CERTIFICATE OF SERVICE

I certify that on November 10, 2021, I caused a true and correct copy of the foregoing **MOTION TO DISMISS COMPLAINT UNDER FRCP 12(b)(6) AND/OR SUSPEND PENDING OUTCOME OF RELATED CASE** to be filed via the Court's CM/ECF system, which directed service by email on all counsel of record.

/s/ Stephanie Hamilton