Robert E. Aycock (#8878)
William B. Chadwick (#16416)
KIMBALL ANDERSON
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
Phone: (801) 359-3333
robert@kimballanderson.com
will@kimballanderson.com

*Attorneys for Defendants*
*ComicBookMovie.com and Nathan Best*

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE<br><br>Plaintiff,<br><br>vs.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10.<br><br>Defendants. | **DEFENDANTS BEST LITTLE SITES AND NATHAN BEST'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER FRCP 12(b)(6)**<br><br>Case No. 2:21-cv-00567-DBP<br><br>District Judge Jill N. Parrish |

Defendants Best Little Sites, d/b/a www.comicbookmovie.com ("CBM") and Nathan Best ("Best") (collectively, "Defendants") file this reply in support of their Rule 12(b)(6) motion to dismiss the Complaint filed by Plaintiff Great Bowery, d/b/a Trunk Archive ("Trunk Archive").

Hoping to secure a quick payout from CBM, Trunk Archive ended discovery in its first case against CBM without timely serving any discovery requests or noticing any depositions. Now that the first case is nearing trial, Trunk Archive has initiated new litigation against CBM to try to secure rulings regarding the same DMCA and inline linking questions. Trunk Archive could and should have brought most of its present case in its prior suit. Trunk Archive does not explain why it did not include the majority of the newly accused articles in its first case against CBM. To try to differentiate this case from its prior litigation, Trunk Archive has also sued Nathan Best, CBM's owner, in the present suit. However, Trunk Archive provides only conclusory, unsupported allegations regarding Mr. Best's alleged involvement in the purported infringement. Even if the Court accepted these thin assertions, Trunk Archive still has not sufficiently plead a claim against Mr. Best because it has not plead the correct standard for vicarious infringement. Last, Trunk Archive has presented no compelling reason to not stay this litigation until the prior litigation resolves. Suspending this case will preserve judicial resources and prevent inconsistent and inequitable results.

I.  **Argument**

A.  <u>Trunk Archive's claim for copyright infringement should be dismissed because it violates the doctrine of claim-splitting.</u>

1.  *Trunk Archive does not dispute that the Trunk Archive II claims are brought against the same parties sued in Trunk Archive I.*

Trunk Archive cannot dispute that it sued CBM in Trunk Archive I and Trunk Archive II. This satisfies the privity element of claim preclusion required in a claim splitting analysis. *See*

1

*Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1275 (10th Cir. 1989) ("Privity requires, at a minimum, a substantial identity between the issues in controversy and showing the parties in the two actions are really and substantially in interest the same.").

> 2. *Trunk Archive does not dispute that it "could and should have" raised its instant claims in earlier litigation.*

In their Motion, Defendants argued that claim splitting bars this subsequent litigation of claims that Trunk Archive "could and should have been raised in the first action." Motion at 9 (quoting *Macris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000) (outlining elements of claim preclusion under Utah Law). "Put another way, the doctrine of claim preclusion prevents 'the parties or their privies from relitigating issues that were or could have been raised in' an earlier action." *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1202 (10th Cir. 2000) (quoting *Clark v. Haas Grp., Inc.*, 953 F.2d 1235, 1238 (10th Cir. 1992)). Trunk Archive offers no argument or explanation for why it did not, could not, or should not have brought the majority of its present claims in its prior litigation.

Trunk Archive does not dispute that at least nine of the fifteen newly accused posts were published before the deadline to amend the Trunk Archive I complaint, with most of the accused posts posted before Trunk Archive filed its complaint. *See* Motion at 10-11. The Trunk Archive I Court would surely deny a motion to amend the Trunk Archive I counterclaim to add these newly raised claims at this stage. Fact discovery closed in Trunk Archive I almost two years ago. *See* Trunk Archive I, *Scheduling Order*, filed in this litigation at Dkt. 16-2. The Trunk Archive I Court has denied Trunk Archive's motion for a post-discovery status conference (Trunk Archive I, Dkt. 29, affirmed in Trunk Archive I, Dkt. 36) and Trunk Archive's motion for a post-discovery motion to modify the scheduling order (Trunk Archive I, Dkt. 56). Trunk Archive's new lawsuit against CBM is a transparent attempt to re-litigate the DMCA and inline linking issues from Trunk Archive I with a new discovery clock.

This is improper. *Wyles v. Sussman*, 661 F. App'x 548, 550 (10th Cir. 2016) ("[A] district court may apply the rule against claim-splitting when a party files two identical—or nearly identical—complaints to get around a procedural rule."); *see Hartsel Springs Ranch of Colorado v. Bluegreen Corp.*, 296 F.3d 982, 990 (10th Cir. 2002) (recognizing general rule that "plaintiff may 'not use the tactic of filing two substantially identical complaints to expand the procedural rights he would have otherwise enjoyed.'") (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977)).

Trunk Archive admits that as early as February 2019, it "began to discover a number of articles on the CBM website that displayed unlicensed copies of the Star Wars Photographs." *Trunk Archive II* Complaint, Dkt. 2 at ¶ 57. Even so, Trunk Archive only accused one article of infringement in the Trunk Archive I Counterclaim. *See id.* at ¶ 36. Trunk Archive arguably kept the rest of these alleged articles in its back pocket to file a separate lawsuit if the first case went awry. And that is precisely what happened. Trunk Archive's second suit against CBM should be dismissed, at least as to the nine articles published before September 12, 2019.

Trunk Archive does not explain why it did not discover these additional alleged infringements before it filed its first case or why it took over two years to find them.[1] Nor does Trunk Archive rebut Defendants' contention that the additional accused articles were displayed on the same website as those accused in Trunk Archive I and "were also searchable and accessible in the same manner as the articles identified in the Trunk I Complaint." Motion at 11. Trunk Archive's strategy appears to be either

---

[1] Trunk Archive filed its Trunk Archive I Counterclaim on July 12, 2019. Eight of the newly accused articles were posted before this date. *See* Dkt. 2 at ¶¶ 58-65. Trunk Archive's deadline to amend its Trunk Archive I Counterclaim was September 12, 2019. *See Trunk Archive I*, Scheduling Order, provided in this litigation as Dkt. 16-2. Another newly accused article was posted in the meantime. *See* Dkt. 2 at ¶ 66. Trunk Archive did not file the Trunk Archive II Complaint until September 27, 2021. Dkt. 2.

3

gamesmanship or a lack of diligence – neither of which justifies filing this new case.

Trunk Archive argues that applying the rule against claim-splitting would yield an "inequitable," "unjust," and "outrageous" result. Opposition at 6. But this is how the rule against claim-splitting is designed to operate. Trunk Archive had a full opportunity to accuse these articles in its first case, but it chose not to bring them. "The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit." *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011). This policy serves the interests of "promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation." *Katz*, 655 F.3d at 1218.

> 3. *There is a substantial overlap in factual and legal issues between Trunk Archive I and Trunk Archive II.*

Trunk Archive cannot escape the significant overlap between the factual and legal issues in its two pending litigations against CBM. Both cases: (1) were filed in the District of Utah; (2) against CBM; (3) alleging copyright infringement; (4) of works owned by Annie Liebowitz and licensed to Trunk Archive; (5) that were allegedly posted by the same contributors; (6) to CBM's same Website. Both cases require a determination of (7) whether images hosted on a third-party server and displayed via inline linking constitute infringement; (8) whether CBM qualified for safe harbor protection under the DMCA; and (9) what damages (if any) are appropriate. Because of the privity of parties and overlap in the issues, resolution of the DMCA, and inline linking questions in Trunk Archive I will have a preclusive effect in Trunk Archive II. As a result, Trunk Archive's instant complaint should be dismissed. *See id.* ("[T]he test for claim splitting is . . . whether the first suit, assuming it were final, would preclude the second suit.").

Trunk Archive argues that Trunk Archive I will not impact this case because one newly accused article allegedly did not show the accused image through inline linking. As Trunk Archive

concedes, "it is established in the 2019 Dec. Action Litigation that the eight photographs at issue were displayed by way of 'inline linking.'" Opposition at 9. Trunk Archive has not presented credible support for its position that the same third-party contributors posted articles and images regarding the same content to the same website for the newly accused articles differently from how they inline linked images in Trunk Archive I.

Trunk Archive's only support for its contention that this case will not be impacted by a determination on the inline linking question in Trunk Archive I is an undated, unauthenticated, cropped screenshot that allegedly came from the Wayback Machine. The Court should not convert this motion to dismiss into a motion for summary judgment by considering information outside of the pleadings. Further, the Court should not take judicial notice of the exhibit. The request for judicial notice came in a personal declaration from Mr. Higbee, Trunk Archive's attorney. *See* Dkt. 17-1 at ¶ 12. Mr. Higbee is not a party and has not gone through the procedure to make an *ex parte* request. Moreover, parties are not permitted to make motions in a response, let alone in a personal declaration from counsel. *See* DUCivR 7-1(a). Finally, notice under Fed. R. Evid. 201(b)(1) is improper because the "facts" in the questionable document are not "generally known within the trial court's territorial jurisdiction," and they are subject to reasonable dispute.

> 4. *Trunk Archive's non-binding authority does not justify claim splitting in copyright cases in this District.*

Trunk Archive cherry-picks cases outside this District and Circuit to try to justify claim splitting in a copyright case. This theory lacks substance and support and should be rejected. First, Trunk Archive argues, "[w]here . . . the claim[s] involve assertion of different intellectual property rights against different products, the likelihood that . . . the test [for improper claim-splitting] will be met is very low." Motion at 5 (quoting *Int'l Controls & Measurements Corp. v. Honeywell Int'l,*

5

*Inc.*, 2013 WL 4805801, at *5 (N.D.N.Y. Sept. 9, 2013)) (bracketed edits and incorrect quotation in Trunk Archive's brief). But that case has almost nothing to do with Trunk Archive's present suit. In *International Controls*, the court opined whether a plaintiff asserting multiple patents against multiple products presented a compulsory counterclaim under various N.D.N.Y. tests. This case has no bearing on whether Trunk Archive's overlapping copyright claims constitute impermissible claim splitting in this District.

Trunk Archive next argues that it should be permitted to file serial lawsuits because the Copyright Act creates "causes of action at the subatomic level" that justify separate lawsuits. Motion at 5 (quoting *Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F.3d 315, 332) (4th Cir. 2007) (Niemeye, J. concurring). However, in this non-binding concurring opinion from a different circuit, Judge Niemeye does not approve of Trunk Archive's claim splitting. Rather, he expresses his frustration with claim splitting of copyright cases because it "pulls in tension from traditional joinder and claim preclusion policies and tends to undermine good judicial administration aimed at efficiency and justice." *Id.* at 333. Such litigation is in direct conflict with federal judicial policy which "encourages resolving in one action all claims arising out of a transaction or occurrence"). *Id.* at 333 (citing Fed. R. Civ. P. 13, 14, 18, 19, and 20). Moreover, courts in the 10th Circuit have denounced Trunk Archive's position. *See Garver v. Principal Life Ins. Co.*, 2021 WL 2338255, at *3 (D. Kan. June 8, 2021) ("The Court rejects Plaintiff's counsel's gamesmanship . . . . If the court were to follow the logic advanced by Plaintiff's counsel, Plaintiff could file a new lawsuit every time PLI reaffirms its denial of his benefits.").

Finally, Trunk Archive relies on *Leonard v. Stemtech Int'l, Inc.*, No. CIV.A. 12-86-LPS-CJB, 2012 WL 3655512, at *9 (D. Del. Aug. 24, 2012) to argue that claim splitting is rare in

copyright cases when they involve separate infringements. Motion at 5. But the *Leonard* court specifically found there had not been claim splitting in that case because "the operative events at issue in *Leonard II* occurred well after the date of the Amended Complaint in *Leonard I* and well after the deadline for the filing of amendments to that complaint." *Id.* That court also rejected a claim-splitting argument because it was not a circumstance where the plaintiff was trying to make "an end-run" around a previous court order or procedural rule. *Id.* By contrast, the operative events at issue in Trunk Archive II occurred *before* the deadline for amending the Trunk Archive I Counterclaim. Further, this litigation is a clear attempt to circumvent the Trunk Archive I Court's order denying Trunk Archive's attempts to re-open discovery.

    B. <u>Trunk Archive has not plead any facts regarding Nathan Best personally.</u>

  Defendants moved to dismiss Trunk Archive's claims against Mr. Best personally because the Complaint failed to allege any facts specific to Mr. Best that could impute liability to him. *See* Motion at 12-15. In response, Trunk Archive concedes that it is not pursuing liability against Mr. Best for direct infringement, contributory infringement, or under an alter-ego theory, and thus, such facts are "irrelevant to a finding of individual liability for copyright infringement." Opposition at 10. Without these theories, Trunk Archive pivots to the only position left—that Mr. Best may be vicariously liable for copyright infringement. Trunk Archive, however, has not provided any authority from the 10th Circuit, the District of Utah, or any other district within this Circuit that protects its barebones, conclusory allegations against a motion to dismiss under Rule 12(b)(6).

  Trunk Archive pleads only one substantive allegation related to Mr. Best: "On information and belief, Defendant Best has the ability to supervise and control the content on the Website and receives a financial benefit from the operation of the Website." Dkt. 2, at ¶¶ 26-30. Trunk Archive

has provided nothing more than this incorrect recitation of the elements of vicarious infringement. These inaccurate conclusions "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). But even if they were, they still do not state a claim for vicarious infringement against Mr. Best.

A company "infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). <u>Trunk Archive did not plead that Mr. Best declined to exercise a right to stop or limit alleged infringement</u>. Moreover, <u>Trunk Archive did not plead that Mr. Best received a financial benefit *from the alleged infringement*</u>. Trunk Archive has thus failed to state a claim against Mr. Best for vicarious infringement as a matter of law.

Beyond this, the requisite financial benefit must be more than an owner's ancillary interest in the performance of a handful of articles among the tens of thousands of pages on a website that his company owns. Instead, "[f]inancial benefit exists where the availability of material 'acts as a draw for customers.' " *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)). Trunk Archive did not plead any facts (or even conclusions) to this effect. After Defendants pointed this out in their motion, Trunk Archive chalked their deficient pleading up to a factual dispute without addressing their failure to plead sufficient factual support. *See* Opposition at 11.

Trunk Archive has not provided any binding authority that an <u>individual's</u> ability to control or supervise content in his role at the corporate entity can result in the <u>individual</u> being vicariously liable for the direct copyright infringement of others. As argued in Defendants' Motion, vicarious liability may apply to <u>a corporate entity</u> that can decline to police infringement, but not an

individual. *See Fonovisa,* 76 F. 3d at 262-63; *Shapiro, Bernstein and Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963); *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). Instead, Trunk Archive argued that "[i]t's well established that vicarious liability may lie against an individual even if he is acting in his capacity as officer or agent of a corporation." Opposition at 11 (citation omitted). However, Trunk Archive offers no Utah, 10th Circuit, or any appellate decision that has accepted this purportedly "well established" position.

    C. <u>This case should be stayed until Trunk Archive I has been resolved.</u>

In the Motion, Defendants requested a stay of this case pending the Trunk Archive I litigation outcome. Motion at 15-16. Defendants identified three specific issues set to be resolved by the upcoming trial in Trunk Archive I that will "resolve all or almost all of [Trunk Archive II] without forcing the parties to undergo repetitive discovery and motion practice." *Id.* Defendants also warned that "co-pending lawsuits against the same party with similar underlying facts could result in conflicting outcomes." Motion at 6.

Trunk Archive does not address these arguments. Trunk Archive does not acknowledge that it has sued the same party (CBM) in two separate cases in the same jurisdiction (District of Utah) for the same cause of action (copyright infringement) regarding works owned by the same party (Annie Liebowitz licensed to Trunk Archive) posted by the same third-party contributors on the same website (comicbookmovie.com) in the same format at around the same time. Instead, Trunk Archive simply argues that the majority of the parties, articles, and photographs in this case differ from those in its first litigation. Opposition at 11. Trunk Archive concludes—without authority— that these differences "weigh against staying this action." *Id.*

9

While each accused article is slightly different, the underlying questions are the same: "(1) whether images hosted on a third-party server and displayed via inline linking constitutes infringement, (2) whether CBM qualified for safe harbor protection under the DMCA, and (3) what damages (if any) are appropriate." Motion at 15. Permitting Trunk Archive to pursue this second case against CBM would waste "scarce judicial resources" and undermine "the efficient and comprehensive disposition of cases." *Hartsel Springs*, 296 F.3d at 985. This Court has broad discretion to handle its docket to promote the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *see also Rhines v. Weber*, 544 U.S. 269, 276 (2005) (citation omitted) ("District courts . . . ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion."). Suspending the litigation until Trunk Archive I is resolved will serve these goals. Trunk Archive also contends that whether inline linking constitutes infringement is an "open legal issue in the 10th Circuit." Opposition at 9. This uncertainty provides additional support for prohibit co-pending litigations on the same legal issues against the same parties because of the increased risk of inconsistent results.

## II. Conclusion

Trunk Archive's Complaint should be dismissed under the theory of claim-splitting because it raises claims and allegations against CBM and Best that could and should have been brought in Trunk Archive I. At a minimum, Mr. Best should be dismissed with prejudice because Trunk Archive has failed to plead facts or allegations that make him personally liable for copyright infringement. Last, suspension of these proceedings—either before or after a determination on this Motion—will prevent unnecessary relitigation of the facts and issues from the first case and avoid inconsistent rulings.

Dated this 22nd day of December 2021.

                                                                                                KIMBALL ANDERSON

                                                                                                 */s/ Robert E. Aycock*
                                                                                                 Robert E. Aycock
                                                                                                 William B. Chadwick
                                                                                                 *Attorneys for Defendants*
                                                                                                 *ComicBookMovie.com and Nathan Best*

12

## CERTIFICATE OF SERVICE

I certify that on December 22, 2021, I caused a true and correct copy of the foregoing **DEFENDANTS BEST LITTLE SITES AND NATHAN BEST'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER FRCP 12(b)(6)** to be filed via the Court's CM/ECF system, which directed service by email on all counsel of record.

*/s/ Stephanie Hamilton*