Mathew K. Higbee, SBN 11133
**HIGBEE & ASSOCIATES**
1504 Brookhollow Drive, Suite #112
Santa Ana, CA 92705
(714) 617-8373
mhigbee@higbeeassociates.com
*Attorneys for Plaintiff Trunk Archive*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE,<br><br>　　　Plaintiff,<br><br>v.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10, inclusive,<br><br>　　　Defendants. | Case No. 2:21-cv-00567-JNP-JCB<br><br>**OPPOSITION TO MOTION TO DISMISS** |

i

# TABLE OF CONTENTS

I.     INTRODUCTION……………………………………………………………………1

II.    FACTUAL BACKGROUND………………………………………………….....1

    A.    The Star Wars Photographs Form The Subject Matter Of This Litigation…1

    B.    Co-Defendants Best And CBM Are Residents Of Utah………………………2

    C.    Cassidy And Wilding Are Paid As Top Contributors To CBM………………4

III.    THE COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION …….5

    A.    Trunk Archive Concedes That General Jurisdiction Does Not Exist…………6

    B.    Sufficient Contacts Exist For The Court To Exercise Specific Jurisdiction….6

        1.    *14th Amendment Due Process Analysis Supports Personal Jurisdiction*..6

            a.    Cassidy and Wilding purposefully directed their conduct at Utah via systematic contacts spanning over a decade…………7

            b.    Trunk Archive's copyright infringement claim relates to Cassidy and Wilding purposefully directed contacts…………12

            c.    Exercising personal jurisdiction would comport with traditional notions of fair play and substantial justice……………………13

        2.    *Utah's Long Arm Statute Supports Personal Jurisdiction*……………...14

            a.    Cassidy and Wilding conduct business within Utah by providing content for the CBM Website …………………………14

            b.    Cassidy and Wilding contracted with CBM to provide writing, editorial and administrative services for the CBM Website….16

            c.    Cassidy and Wilding caused tortious injury to Trunk Archive by providing infringing content to a Utah based website …….19

    C.    Jurisdiction May Also Be Exercised Under Rule 4(k)(2) ………………………21

IV.    LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY IS ALSO PROPER….23

V.    CONCLUSION …………………………………………………………………25

# TABLE OF AUTHORITIES

## Cases

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002) ................10

*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419
(10th Cir. 1996) .......................................................................................................................7

*Behagen v. Amateur Basketball Asso.,* 744 F.2d 731, 733 (10th Cir. 1984) .................................7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ................................................5, 7, 13

*Calder v. Jones*, 465 U.S. 783 (1984) .......................................................................................22

*CGC Holding Co., Ltd. Liab. Co. v. Hutchens,* 974 F.3d 1201, 1209 (10th Cir. 2020)...............21

*Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.,*
970 F.3d 1269, 1282 (10th Cir. 2020) ......................................................................................21

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) .............6, 12

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 2021 U.S. App. LEXIS 25354, at *19 (10th Cir.
Aug. 24, 2021).........................................................................................................................22

*International Shoe Co. v. Washington*, 326 U. S. 310 (1945).........................................................6

*Kamdar & Co. v. Laray Co.*, 815 P.2d 245, 248 (Utah Ct. App. 1991).......................................15

*Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003)...............................................24

*McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ........................................................7, 14

*MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1095 (C.D. Cal. 2003) ...................23

*Nova Mud Corp. v. Fletcher*, 648 F. Supp. 1123, 1126 (D. Utah 1986) ......................................14

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) .............5

*Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, 201 P.3d 944, 951 (Utah 2008) .............................5

*Shell v. Henderson*, 2013 U.S. Dist. LEXIS 129006, at *7 (D. Colo. July 24, 2013)..................19

*Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011) .........................................................10, 11

*Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) .........................24

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)...............24

*Yellowbear v. Ashe*, 612 Fed. App'x 918, 921 (10th Cir. 2015) ......................................5

**Statutes**

17 U.S.C. § 106 .........................................................................................................19

Utah Code Ann. § 78B-3-202(2) ...............................................................................14

Utah Code Ann. § 78B-3-205............................................................................5, 14

Utah Code Ann. § 78B-3-205(1) ...............................................................................16

Utah Code Ann. § 78B-3-205(2) ..............................................................16, 18, 19

Utah Code Ann. § 78B-3-205(3) ...............................................................................19

**Federal Rules of Civil Procedure**

Federal Rule of Civil Procedure 4(k)(2) ....................................................................21

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant Mark Cassidy ("Cassidy") and Joshua Wilding's ("Wilding") Motion should be denied. The Court may properly exercise personal jurisdiction under a 14th Amendment Due Process analysis, the specific conduct enumerated in the Utah long-arm statute, and under Rule 4(k)(2) of the Federal Rules of Civil Procedure.

For over a decade, Cassidy and Wilding purposefully engaged in a sustained business relationship with the Utah based Best Little Sites, LLC d/b/a www.comicbookmovie.com ("CBM") which resulted in the creation of over 45,000 revenue generating posts for the CBM Website. Indeed, Cassidy and Wilding's contacts go beyond merely writing articles for the CBM and include editorial and administrative responsibilities over the CBM Website.

Trunk Archive's infringement claim is directly related to Cassidy and Wilding's contacts with CBM and Utah because Cassidy and co-Defendant Nathan Best ("Best") engaged in infringement the content at issue to CBM as part of a paid contributor relationship in order to drive readership to the CBM Website and increase advertising revenue for CBM.

Alternatively, the affidavits provided by Cassidy and Wilding makes clear that both Cassidy and Wilding have at least *some* contacts with Utah. Thus, it would be proper for the Court to allow jurisdictional discovery.

As such, Cassidy and Wilding's Motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    The Star Wars Photographs Form The Subject Matter Of This Litigation.

The instant litigation involves the serial infringement of 18 photographs for which Trunk Archive holds the exclusive licensing rights. *See generally* Complaint at Dkt. #2 ("Complaint"). Trunk Archive is a full-service photography licensing agency representing some of the most prominent photographers and iconic images in the world. *Id*. at ¶12. One of Trunk Archive's most prominent American portrait photographer Annie Leibovitz. *Id.* at ¶14.

1

Between 2014 and 2019, Leibovitz took a series of photographs of the cast and crew of *Star Wars: The Last Jedi* and *Star Wars: The Rise of Skywalker*, 18 of which make up the subject matter of this lawsuit ("Star Wars Photographs"). *Id.* at ¶¶17-20. As relevant here, three of the Star Wars Photographs include: a photograph of actress Laura Dern as Vice Admiral Amilyn Holdo ("Holdo Photograph"); a photograph of actor Benicio Del Toro as DJ ("DJ Photograph"); and a photograph of actors Mark Hamil and Carrie Fisher as Luke Skywalker and Leia Organa ("Skywalker Photograph"). *Id.* at ¶¶18-20.

As relevant here, Cassidy is the author of nine articles on the containing infringing copies of the Star Wars Photographs, and Wilding is the author of six articles containing infringing copies of the Star Wars Photographs (collectively "Infringing Articles"). Complaint ¶¶57-74.

**B.      Co-Defendants Best And CBM Are Residents Of Utah.**

Co-Defendant CBM is a Utah based limited liability company that owns and operates a website consisting primarily of movie and television articles and related editorial content geared towards the comic book, graphic novel, sci-fi, fantasy, and horror genres. *Id.* at ¶¶2, 25, 27. Co-Defendant Best is also a Utah resident and the owner and President of CBM. *Id.* at ¶¶3, 26.

CBM actively solicits paid contributors to generate, edit, and moderate content for the CBM Website. *Id.* at ¶31. According to the CBM Website, paid contributors are expected to meet a minimum article count "based upon your desired shift (typically one per day), that you will be required to meet to maintain editorship and payment eligibility." *Id.* at ¶32. Paid contributors are compensated each month and are eligible for bonus and other incentives based on the content they create to CBM's Website. *Id.* at ¶33. According to the CBM Website[1]:

> For your account to qualify and be a part of the Contributor Partner Program you must do the following:
>
> 1. Follow the Comic Book Movie Community Guidelines
> 2. Agree and be familiar with Comic Book Movie ToS (Terms of Service)

---

[1] The specific page of the CBM Website in question is https://comicbookmovie.com/about/partner/. The numerical list cited in this section contains hyperlink to various pages on the CBM Website which have been recreated in this brief.

3. Post a minimum of 10 new peices [sic] of content each month
4. Meet or exceed the content & quality guidelines
5. No more than 3 Copyright/DMCA Takdwon [sic] Requests in the last 90 days

*See* https://comicbookmovie.com/about/partner/ (last accessed April 27, 2022).

CBM's Community Guidelines provide the following requirements for content that is submitted as part of the Contributor Partner Program:

- **THUMBNAILS**
  - **Thumbnail images are required** for all posts
  - Must include a relevant thumbnail
  - **SPOILER FREE**
  - Letterbox/16:9 aspect ratio (the platform will handle any resizing)
  - 72 DPI Resolution is best
  - MUST BE PRESENTABLE when shrunk. Square images or tall images will be distorted and won't do your content any favors...
  - **Posts without thumbnails will be deleted!**

- **BANNER IMAGES**
  - **Banner images are REQUIRED** for all posts
  - **NO SPOILERS!** The image is used by social and sharing feeds, so choose wisely!
  - **MUST be JPG/JPEG!** (PNG files are too large and will take users too long to download, thus ruinging [sic] their experience)
  - Larger images in 16:9 aspect ratio work best
  - 72 DPI Resolution works great here as well

- **BODY/CONTENT IMAGES**
  - **JPG/JPEG!** images for photos are the fastest
  - The site is designed for 690 width. Anything larger than 800 width can hurt the user experience and download times.
  - No maximum height requirements (i.e. landscape and portrait images are both welcome)
  …

https://comicbookmovie.com/about/quality/ (last accessed April 27, 2022, emphasis in original).

Similarly, the CBM Website terms of service, to which all participants in the Contributor Partner Program are required to agree, states as follows:

Best Little Sites LLC, a company operating under the laws of Utah, located at 237 E Lake View Dr, Vineyard, UT 84059 (referred to as "Best Little Sites LLC", "BLS", "Comic Book Movie", "CBM", "we", "us", or "our") is responsible for providing this service.
…

Registering for a Comic Book Movie account will give you additional abilities, features and functions such as writing content and posting to the site, commenting on posts, etc.
…

If you have a Comic Book Movie account, you may be able to create Content to and through the Service. You may use your Content to promote your business or artistic enterprise. If you choose to create Content, you must not submit to the Service any Content that does not comply with this Agreement (including the Comic Book Movie Community Guidelines) or the law. The Content you submit must not include third-party intellectual property (such as copyrighted material) unless you have permission from that party or are otherwise legally entitled to do so. **You are legally responsible for the Content you submit to the Service.**
. . .

All claims arising out of or relating to these terms or the Service will be governed by Utah law, except Utah's conflict of laws rules, and will be litigated exclusively in the federal or state courts Utah, USA. You and Comic Book Movie consent to personal jurisdiction in those courts.

*See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022, emphasis in original).

### C.     Cassidy And Wilding Are Paid As Top Contributors To CBM.

Cassidy's profile on the CBM Website states that he has been a member of the Website since November 9, 2008 and states that he has contributed over 16,000 posts[2] to the CBM Website, or an average of approximately 3.4 post per day. *Id.* at ¶38. Cassidy refers to himself on his LinkedIn profile as the "Head Editor" of the CBM website and has made social media posts on Twitter to that effect. *Id.* ¶¶41-42, 45-46.

Likewise, Wilding's profile on the CBM Website states that he has been a member of the Website since March 13, 2009 and states that he has contributed over 29,500 posts[3] to the CBM Website, or an average of almost 6 posts per day. *Id.* at ¶47. Wilding holds himself out to be the "Head writer" of the CBM website. *Id.* at ¶50-51, Exhibit I. Additionally, on his personal website, Wilding states that during his time with the CBM Website "I've helped manage the Twitter, Facebook, and Instagram accounts (growing their followers by thousands of users) and have used Google Analytics to track pageviews in order to best establish how to increase traffic to the website. That resulted in the articles I published receiving over 174 million pageviews in 2019." *Id.* at ¶52-53, Exhibit J.

---

[2] Between the filing of this Complaint in September 2021 and the date of this filing, Cassidy has contributed nearly 1,000 additional posts to the CBM website bringing his total over 16,800.

[3] Between the filing of this Complaint in September 2021 and the date of this filing, Wilding has contributed nearly 2,500 additional posts to the CBM website bringing his total over 29,600.

Both Wilding and Cassidy are listed prominently on the "About" page of the CBM website as two of the Website's four "Top Contributors." Complaint ¶¶35-36, Exhibit D.

In their sworn affidavits, both Cassidy and Wilding admit that they are paid by CBM for the work, and that they have communicated directly with Best about the content of the Infringing Articles. *See* Dkt. 38-1 ("Wilding Decl.") ¶¶5 and 7; and Dkt. 38-2 ("Cassidy Decl.") ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

## III. THE COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION

When the court considers a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (citations omitted).

> The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'

*Ibid*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Utah's long-arm statute is "coterminous with the Due Process Clause"; therefore, the Court need only "conduct a single inquiry" into whether a defendant's contacts with Utah satisfy due process. *Yellowbear v. Ashe*, 612 Fed. App'x 918, 921 (10th Cir. 2015); *see* Utah Code Ann. §§ 78B-3-205, 78B-3-201(3); *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, 201 P.3d 944, 951 (Utah 2008) (holding that any set of circumstances that satisfies due process will also satisfy Utah's long-arm statute) (quotations and citations omitted). Depending on the nature and extent of a defendant's contacts with the forum, the court may exercise general or specific personal jurisdiction. *See Yellowbear,* 612 Fed. App'x at 921.

Here, the Court may properly exercise personal jurisdiction under a 14th Amendment Due Process analysis, the specific conduct enumerate in the Utah long-arm statute, and under Rule 4(k)(2) of the Federal Rules of Civil Procedure.

**A.      Trunk Archive Concedes That General Jurisdiction Does Not Exist.**

A state court may exercise general jurisdiction only when a defendant is essentially at home in the State. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) (quotation omitted).

Although the contacts of both Cassidy and Wilding are substantial and continuous for over a decade, Trunk Archive concedes that these contacts do not rise to the level of conferring general jurisdiction on Cassidy or Wilding.

**B.      Sufficient Contacts Exist For The Court To Exercise Specific Jurisdiction.**

Here, the Court may properly exercise specific personal jurisdiction over both Cassidy and Wilding. This is not a close case. Cassidy and Wilding's contacts with Utah are numerous, continuous, and material to Trunk Archive's infringement claims. Under both a 14th Amendment Due Process analysis and the specific categories of contacts enumerated in the Utah long-arm statute, this Court can comfortably exercise personal jurisdiction over Cassidy and Wilding.

*1.      A 14th Amendment Due Process Analysis Supports Personal Jurisdiction.*

The Fourteenth Amendment's Due Process Clause limits a state court's power to exercise jurisdiction over a defendant. *Ford Motor Co.*, 141 S. Ct. at 1024. To exercise specific jurisdiction, a tribunal's authority depends on the defendant's having such "contacts" with the forum State that "the maintenance of the suit" is "reasonable, in the context of our federal system of government," and "does not offend traditional notions of fair play and substantial justice." *Ibid.* quoting *International Shoe Co. v. Washington*, 326 U. S. 310 (1945).

A strict causal relationship between the defendant's in-state activity and the litigation is not required to exercise specific jurisdiction. *Ford Motor Co.*, 141 S. Ct. at 1026. Rather, the most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." *Ibid.* (citation omitted, emphasis in original). The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing. *Ibid.*

When considering a motion to dismiss for lack of personal jurisdiction, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Asso.,* 744 F.2d 731, 733 (10th Cir. 1984) (citations omitted).

In this case, Cassidy and Wilding's contacts with Utah are such that it would be consistent with notions are fair play and substantial justice to exercise personal jurisdiction. Cassidy and Wilding have engaged in a purposeful, substantial, and ongoing business relationship with CBM to provide writing, editorial, and administrative services for the CBM Website in exchange for payment. Trunk Archive's infringement claim arises out of and is related to these contacts because during the course of this business relationship, Cassidy and Wilding engaged in infringement of the Star Wars Photographs by providing the Infringing Articles to Best and CBM to publish on the CBM Website in order to drive readership and increase advertising revenue for CBM.

Thus, Cassidy and Wilding's Motion should be denied.

<u>**a.**</u>      <u>**Cassidy and Wilding purposefully directed their conduct at Utah via systematic contacts spanning over a decade.**</u>

The first requirement that must be satisfied before a defendant is subject to the jurisdiction of the forum State is that the defendant must have "purposefully directed [its] activities at residents of the forum." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted). This requirement ensures that a nonresident is not forced to defend suit in a jurisdiction based on "random, fortuitous, or attenuated contacts, or of the unilateral activity of another." *Id.* at 475 (citations and internal quotation marks omitted). "[A] single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996) (citing *McGee v. Int'l Life Ins. Co*., 355 U.S. 220, 223 (1957)).

The evidence presented shows that ongoing relationships exist between Cassidy, Wilding, and CBM for Cassidy and Wilding to provide writing, editorial and administrative services to the CBM Website. CBM actively solicits paid contributors to generate, edit, and moderate content for

the CBM Website. Complaint at ¶31. According to the CBM Website, paid contributors are expected to meet a minimum article count "based upon your desired shift (typically one per day), that you will be required to meet to maintain editorship and payment eligibility." *Id.* at ¶32. Paid contributors are compensated each month and are eligible for bonus and other incentives based on the content they create to CBM's Website. *Id.* at ¶33.

In order to qualify, a prospective paid content contributor must agree to the following terms set forth by CBM:

1. Follow the Comic Book Movie Community Guidelines
2. Agree and be familiar with Comic Book Movie ToS (Terms of Service)
3. Post a minimum of 10 new peices [sic] of content each month
4. Meet or exceed the content & quality guidelines
5. No more than 3 Copyright/DMCA Takdwon [sic] Requests in the last 90 days

*See* https://comicbookmovie.com/about/partner/ (last accessed April 27, 2022).

Cassidy's profile on the CBM Website states that he has been a member of the Website since November 9, 2008 and states that he has contributed over 16,000 posts to the CBM Website, or an average of approximately 3.4 post per day over a 14-year period. Complaint at ¶38. Cassidy refers to himself on his LinkedIn profile as the "Head Editor" of the CBM website and has made social media posts on Twitter to that effect. *Id.* ¶¶41-42, 45-46.

Likewise, Wilding's profile on the CBM Website states that he has been a member of the Website since March 13, 2009 and states that he has contributed over 29,500 posts to the CBM Website, or an average of almost 6 posts per day over a 13-year period. *Id.* at ¶47. Wilding holds himself out to be the "Head writer" of the CBM website. *Id.* at ¶50-51, Exhibit I. Additionally, on his personal website, Wilding states that during his time with the CBM Website "I've helped manage the Twitter, Facebook, and Instagram accounts (growing their followers by thousands of users) and have used Google Analytics to track pageviews in order to best establish how to increase traffic to the website. That resulted in the articles I published receiving over 174 million pageviews in 2019." *Id.* at ¶52-53, Exhibit J.

Between 2017 and 2020, as part of their Paid Contributor relationship with CBM, Cassidy and Wilding submitted a total of 15 Infringing Articles, nine authored by Cassidy and six authored by Wilding, which displayed unauthorized copies of the Star Wars Photographs at issue. Complaint ¶¶57-56. Cassidy and Wilding's sworn affidavit testimony states that they were paid by CBM for the work, and that they have communicated directly with Best about the content of the Infringing Articles. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Contrary to Cassidy and Wilding's assertion, these contacts are not "the result of unilateral acts by the other defendants and were wholly outside of Cassidy's and Wilding's control." Motion at p. 12. Rather, Cassidy and Wilding purposefully chose to enter into a sustained business relationship with the Utah based CBM which resulted in the creation of over 45,000 revenue generating posts for the CBM Website. Indeed, Cassidy and Wilding's contacts go beyond merely writing articles for the CBM and include editorial and administrative responsibilities as well. Complaint ¶¶41-42, 45-46, 51-53. That Cassidy and Wilding continued to maintain this relationship with the Utah based CBM for over a decade can hardly be said to be "random, fortuitous, or attenuated."

Both Cassidy and Wilding claim to be unaware that Best and CBM were based in Utah, but the evidence suggests otherwise. *See* Wilding Decl. ¶6; and Cassidy Decl. ¶6. The CBM Term of Service by which all Paid Contributors agree to be bound specifically mentions that CBM is a "a company operating under the laws of Utah" located in Utah, and also states that

> All claims arising out of or relating to these terms or the Service will be governed by Utah law, except Utah's conflict of laws rules, and will be litigated exclusively in the federal or state courts Utah, USA. You and Comic Book Movie consent to personal jurisdiction in those courts.

*See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022). In addition, both Cassidy and Wilding admit to having communicated with Best about the Infringing Articles. *See* Wilding Decl. ¶7; and Cassidy Decl. ¶7. The Infringing Articles were posted on the CBM Website between October 18, 2017 and January 7, 2020. Complaint ¶¶58-72. On March 29, 2019, Best sent

an email to Higbee & Associates stating that certain of the Star Wars Photographs had been removed from the CBM Website. Declaration of Ryan E. Carreon ("Carreon Decl.") ¶¶2-4. The email was signed

> **Nathan Best**
> *Owner – Best Little Sites LLC*
> 639 E 720 N, Lindon, UT 84042
> Nate@BestLittleSites.com
> (801) 836-6327

Carreon Decl. ¶¶5-6, Exhibit A (emphasis in original).

As such, even if Cassidy and Wilding lacked actual knowledge of Best and CBM's status as Utah residents, they were certainly on inquiry notice of such facts and could have reasonably anticipated being haled into court in Utah for any of their acts related to their relationship with CBM.

Cassidy and Wilding rely heavily on *Shrader v. Biddinger*, 633 F.3d 1235 (10th Cir. 2011) for the proposition that Cassidy and Wilding's contacts do not rise to the level required to satisfy the purposeful direction or availment prong. *Shrader* is easily distinguishable.

In *Shrader*, the Oklahoma based plaintiff sued a number of non-resident defendants in Oklahoma for various tort arising out of the posting of an allegedly defamatory email communication on the web forum Wave95, which was operated outside of Oklahoma. *Shrader,* 633 F.3d at 1237-38. The *Shrader* court determined that "[t]he forum was simply a vehicle by which members could exchange information, and there is no indication that … [defendants conduct] alter[ed] its basic passive character." *Id.* at 1241. As pertinent here the *Shrader* court noted that in Internet posting cases, it was important to place "emphasis on the [I]nternet user or site *intentionally directing* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *Id.* at 1240 (emphasis in original). Shrader also quoted with approval a test adopted by the Fourth Circuit in *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002):

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) *directs electronic activity into the State*, (2) *with the*

*manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

*Shrader,* 633 F.3d at 1240-41 (emphasis in original).

Unlike *Shrader*, this case does not involve a forum-based plaintiff seeking to assert jurisdiction over non-residents simply by virtue of the plaintiff's geographical residence. As noted by Cassidy and Wilding in their Motion, Trunk Archive is a Delaware corporation based in New York. Far from the mere passive activity in *Shrader,* the jurisdictional analysis in this case hinges on Cassidy and Wilding's ongoing business relationship with Utah-based CBM which is the conduit through which the Star Wars Photographs were unlawfully infringed on the CBM Website.

When considering the three-pronged *ALS Scan* test approved by *Shrader,* it is clear that personal jurisdiction can properly be asserted here.

First, Cassidy and Wilding clearly directed their electronic contacts into Utah. For over a decade, Cassidy and Wilding purposefully submitted over 45,000 revenue generating posts to the Utah based CBM for publication CBM Website. Complaint at ¶38, 47. Indeed, Cassidy and Wilding's contacts go beyond merely writing articles for the CBM and include editorial and administrative responsibilities over the CBM Website as well. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Second, Cassidy and Wilding clearly had the manifest intent of engaging in business interactions with the Utah based CBM. Not only are Cassidy and Wilding paid by the Utah-based CBM for their submissions as part of the Paid Contributor program, but the articles themselves were intended to generate revenue for CBM.

Finally, this activity created Trunk Archive's cause of action for copyright infringement. The Infringing Articles were submitted by Cassidy and Wilding under the guise of the Paid Contributor relationship with CBM, and that they have communicated directly with Best about the

content of the Infringing Articles. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Not only in *Shrader* distinguishable, but actually supports the exercise of jurisdiction in this case. Thus, Trunk Archive has made a prima facie case that Cassidy and Wilding have purposefully directed their contacts at Utah.

> **b.** **Trunk Archive's copyright infringement claim relates to Cassidy and Wilding purposefully directed contacts.**

A strict causal relationship between the defendant's in-state activity and the litigation is not required to exercise specific jurisdiction. *Ford Motor Co.*, 141 S. Ct. at 1026.

Between 2017 and 2020, as part of their Paid Contributor relationship with CBM, Cassidy and Wilding submitted a total of 15 Infringing Articles, nine authored by Cassidy and six authored by Wilding, which displayed unauthorized copies of the Star Wars Photographs at issue. Complaint ¶¶57-56. Trunk Archive's infringement claim is related to Cassidy and Wilding's contacts with CBM and Utah because Cassidy and Best engaged in infringement of the Star Wars Photographs by providing the Infringing Articles to CBM as part of their Paid Contributor relationship with CBM in order to drive readership to the CBM Website and increase advertising revenue for CBM.

Further bolstering the assertion that the Infringing Articles were submitted under the guise of the Paid Contributor relationship with CBM is Cassidy and Wilding's sworn affidavit testimony stating that they were paid by CBM for the work, and that they have communicated directly with Best about the content of the Infringing Articles specifically. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Finally, the CBM Website Terms of Service that all Paid Contributors are required to abide by unequivocally states that

> "All claims arising out of or relating to these terms or the Service will be governed by Utah law, except Utah's conflict of laws rules, and will be litigated exclusively in the federal or state courts Utah, USA. You and Comic Book Movie consent to personal jurisdiction in those courts."

> *See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022).

Trunk Archive's infringement claims are related to Cassidy and Wildings business relationship with CBM because the Infringing Articles were created and provided to CBM to published on the CBM Website as a result of CBM's "Paid Contributor" relationship with Cassidy and Wilding.

**c.**     **Exercising personal jurisdiction would comport with traditional notions of fair play and substantial justice.**

Where a defendant who purposefully has directed his activities at a forum seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King*, 471 U.S. at 477.

Here, Cassidy and Wilding have not presented a "compelling case" to overcome the decade plus of purposefully directed contacts with CBM and Utah. Depositions, settlement conference, and the like can easily be conducted via video conferencing software. It appears based on the nature of this case and the contacts alleged that both Cassidy and Wilding are highly tech savvy individuals. Regarding any alleged financial burden caused by litigation, the same could be said of any defendant in any civil lawsuit, whether local or foreign. The straightforward nature of this case suggests that discovery and motion practice will be minimal. To the extent Cassidy and Wilding believe they have a meritorious defense, the section 505 of the Copyright Act provides a mechanism for them to be awarded attorneys fees should they prevail.

Additionally, Utah has a significant interest in this dispute give CBM and Bests residency and Cassidy and Wilding's business relationship with them. Further, while England and Ireland have copyright laws, it is unclear how those laws would be implicated since the Infringing Articles were published on a United States based website.

As to forum related efficiency, Utah is no less convenient than any other jurisdiction. In fact, it is the only forum where multiple defendants reside. If the forum were to be in New York where Trunk archive resides, Ireland where Cassidy resides, or England where Wilding resides, the other four parties would be required to travel. Furthermore, those forums would likely present their own personal jurisdiction issues as to the other defendants.

In conclusion, the 14th Amendment Due Process analysis clearly establishes that the exercise of personal jurisdiction over Cassidy and Wilding would comport with the traditional notions of fair play and substantial justice. Thus, Cassidy and Wilding's Motion should be denied.

### 2. Utah's Long Arm Statute Supports Personal Jurisdiction.

Although Utah's long-arm statute is coterminous with the Due Process Clause of the 14th Amendment, the statute also lists a set of seven specific categories of acts that will submit a non-resident to specific personal jurisdiction. As relevant here, the statute states as follows:

> any person or personal representative of the person, whether or not a citizen or resident of this state, who, in person or through an agent, does any of the following enumerated acts is subject to the jurisdiction of the courts of this state as to any claim arising out of or related to:
> (1) the transaction of any business within this state;
> (2) contracting to supply services or goods in this state;
> (3) the causing of any injury within this state whether tortious or by breach of warranty;
> …

Utah Code Ann. § 78B-3-205.

Here, the contacts of both Cassidy and Wilding are sufficient to satisfy the categories enumerated in the Utah long-arm statute by showing that they each (1) transact business within Utah; (2) contract to supply services in Utah; and (3) have caused tortious injury within Utah.

### a. Cassidy and Wilding conduct business within Utah by providing content for the CBM Website.

The words "transaction of business within this state" mean activities of a nonresident person, his agents, or representatives in this state which affect persons or businesses within the state. Utah Code Ann. § 78B-3-202(2). These words are liberally and expansively interpreted such that "a person may transact business within the state despite an absence of physical presence in Utah." *Nova Mud Corp. v. Fletcher*, 648 F. Supp. 1123, 1126 (D. Utah 1986); *see also McGee*, 355 U.S. at 223 (a nonresident corporation can act within the forum by mail).

Utah's long-arm statute grants personal jurisdiction over claims arising out of or related to *any* business transaction within the state and is not limited to nonresidents conducting their *own* trade or business within the state. *Kamdar & Co. v. Laray Co.*, 815 P.2d 245, 248 (Utah Ct. App.

1991). Rather, it is sufficient that nonresidents transact business in Utah regardless of whether it is related to the Utah resident's trade or the business of the nonresident. *Ibid.*

It is clear that substantial and ongoing business relationships exist between Cassidy, Wilding, and CBM for Cassidy and Wilding to provide writing, editorial and administrative services to the CBM Website. CBM actively solicits paid contributors to generate, edit, and moderate content for the CBM Website. *Id.* at ¶31. In order to qualify, a prospective paid content contributor must agree "Agree and be familiar with Comic Book Movie ToS (Terms of Service)." *See* https://comicbookmovie.com/about/partner/ (last accessed April 27, 2022). The terms of service state that the CBM Website is operated by "Best Little Sites LLC, a company operating under the laws of Utah, located at 237 E Lake View Dr, Vineyard, UT 84059." *See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022).

Cassidy's profile on the CBM Website states that he has been a member of the Website since November 9, 2008 and states that he has contributed over 16,000 posts to the CBM Website, or an average of approximately 3.4 post per day. Complaint at ¶38. Cassidy refers to himself on his LinkedIn profile as the "Head Editor" of the CBM website and has made social media posts on Twitter to that effect. *Id.* ¶¶41-42, 45-46.

Likewise, Wilding's profile on the CBM Website states that he has been a member of the Website since March 13, 2009 and states that he has contributed over 29,500 posts to the CBM Website, or an average of almost 6 posts per day. *Id.* at ¶47. Wilding holds himself out to be the "Head writer" of the CBM website. *Id.* at ¶50-51, Exhibit I. Additionally, on his personal website, Wilding states that during his time with the CBM Website "I've helped manage the Twitter, Facebook, and Instagram accounts (growing their followers by thousands of users) and have used Google Analytics to track pageviews in order to best establish how to increase traffic to the website. That resulted in the articles I published receiving over 174 million pageviews in 2019." *Id.* at ¶52-53, Exhibit J.

Between 2017 and 2020, as part of their Paid Contributor relationship with CBM, Cassidy and Wilding submitted a total of 15 Infringing Articles, nine authored by Cassidy and six authored by Wilding, which displayed unauthorized copies of the Star Wars Photographs at issue. Complaint ¶¶57-56.

Further bolstering the assertion that the Infringing Articles were submitted under the guise of the Paid Contributor relationship with CBM is Cassidy and Wilding's sworn affidavit testimony stating that they were paid by CBM for the work, and that they have communicated directly with Best about the content of the Infringing Articles specifically. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Under the broad statutory definition, Cassidy and Wilding are engaged in "transaction of business within" Utah because their activities, *i.e.* provide writing, editorial, and administrative services to the CBM Website including the submission of the Infringing Articles, affected the business operated by Utah residents Best and CBM, by generating content and revenue for the CBM Website. *See, e.g.* Complaint ¶75 ("CBM monetized the Infringing Articles and received advertising revenue from visitors to the Website who viewed the Infringing Articles.")

Trunk Archive's infringement claim arises out of and is related to Cassidy and Wilding's "transaction of business" because Cassidy and Best engaged in infringement of the Star Wars Photographs by providing the Infringing Articles to Best and CBM to publish on the CBM Website in order to drive readership and increase advertising revenue for CBM.

Thus, under Utah Code Ann. § § 78B-3-205(1) Cassidy and Wilding's contacts are sufficient to confer personal jurisdiction, and their Motion should be denied.

### b.    Cassidy and Wilding contracted with CBM to provide writing, editorial and administrative services for the CBM Website.

The next category of contacts that give rise to personal jurisdiction under the Utah Long-arm statute, is to any claim "related to" a defendant's "contracting to supply services … in this state." Utah Code Ann. § 78B-3-205(2).

The evidence presented shows that ongoing contractual relationships exist between Cassidy, Wilding, and CBM for Cassidy and Wilding to provide writing, editorial and administrative services to the CBM Website. CBM actively solicits paid contributors to generate, edit, and moderate content for the CBM Website. Complaint at ¶31. According to the CBM Website, paid contributors are expected to meet a minimum article count "based upon your desired shift (typically one per day), that you will be required to meet to maintain editorship and payment eligibility." *Id.* at ¶32. Paid contributors are compensated each month and are eligible for bonus and other incentives based on the content they create to CBM's Website. *Id.* at ¶33.

In order to qualify, a prospective paid content contributor must agree to the following terms set forth by CBM:

6. Follow the Comic Book Movie Community Guidelines
7. Agree and be familiar with Comic Book Movie ToS (Terms of Service)
8. Post a minimum of 10 new peices [sic] of content each month
9. Meet or exceed the content & quality guidelines
10. No more than 3 Copyright/DMCA Takdwon [sic] Requests in the last 90 days

*See* https://comicbookmovie.com/about/partner/ (last accessed April 27, 2022). In other words, a contract is formed by paid contributors who agree to abide by CBM terms in exchange for the ability to generate, edit, and moderate content for the CBM Website.

Cassidy's profile on the CBM Website states that he has been a member of the Website since November 9, 2008 and states that he has contributed over 16,000 posts to the CBM Website, or an average of approximately 3.4 post per day. Complaint at ¶38. Cassidy refers to himself on his LinkedIn profile as the "Head Editor" of the CBM website and has made social media posts on Twitter to that effect. *Id.* ¶¶41-42, 45-46.

Likewise, Wilding's profile on the CBM Website states that he has been a member of the Website since March 13, 2009 and states that he has contributed over 29,500 posts to the CBM Website, or an average of almost 6 posts per day. *Id.* at ¶47. Wilding holds himself out to be the "Head writer" of the CBM website. *Id.* at ¶50-51, Exhibit I. Additionally, on his personal website, Wilding states that during his time with the CBM Website "I've helped manage the Twitter,

Facebook, and Instagram accounts (growing their followers by thousands of users) and have used Google Analytics to track pageviews in order to best establish how to increase traffic to the website. That resulted in the articles I published receiving over 174 million pageviews in 2019." *Id.* at ¶52-53, Exhibit J.

Here, § 78B-3-205(2) of the Utah long-arm statute can be utilized to exercise personal jurisdiction over Cassidy and Wilding because Trunk Archive's claim for copyright infringement "aris[es] out of or relate[s] to" Cassidy and Wilding's contractual agreement with CBM. Between 2017 and 2020, as part of their Paid Contributor relationship with CBM, Cassidy and Wilding submitted a total of 15 Infringing Articles, nine authored by Cassidy and six authored by Wilding, which displayed unauthorized copies of the Star Wars Photographs at issue. Complaint ¶¶57-56.

Further bolstering the assertion that the Infringing Articles were submitted under the guise of the Paid Contributor relationship with CBM is Cassidy and Wilding's sworn affidavit testimony stating that they were paid by CBM for the work, and that they have communicated directly with Best about the content of the Infringing Articles specifically. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76.

Finally, the CBM Website Terms of Service that all Paid Contributors are required to abide by unequivocally states that

> "All claims arising out of or relating to these terms or the Service will be governed by Utah law, except Utah's conflict of laws rules, and will be litigated exclusively in the federal or state courts Utah, USA. You and Comic Book Movie consent to personal jurisdiction in those courts."

*See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022).

Because the allegations in the Complaint and sown affidavit testimony confirm that both Cassidy and Wilding are paid contributors to the CBM Website, they are clearly in contractual privity with CBM for the services that they provide. Furthermore, Trunk Archive's infringement claims are related to Cassidy and Wildings contractual relationship with CBM because the Infringing Articles were created and provided to CBM to published on the CBM Website as a result of CBM's "Paid Contributor" relationship with Cassidy and Wilding.

Thus, under Utah Code Ann. § 78B-3-205(2) Cassidy and Wilding's contacts are sufficient to confer personal jurisdiction, and their Motion should be denied.

<u>**c.**</u>       **<u>Cassidy and Wilding caused tortious injury to Trunk Archive by providing infringing content for use on a Utah based website.</u>**

The third category of contacts that give rise to personal jurisdiction under the Utah Long-arm statute, is to any claim "related to" a defendant's "causing of any injury within this state" Utah Code Ann. § 78B-3-205(3). Several circuits specifically have characterized copyright infringement as a tort and suggested that willful infringement is an intentional tort. *Shell v. Henderson*, 2013 U.S. Dist. LEXIS 129006, at *7 (D. Colo. July 24, 2013) (collecting cases and considering copyright infringement to be a tort for purposes of Colorado fee shifting statute).

Here, Cassidy and Wilding's infringement caused a tortious injury in the state of Utah. As previously noted, Cassidy and Wilding are participants in CBM's "Paid Contributor" program. *See* Wilding Decl. ¶7; and Cassidy Decl. ¶7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76. As part of the program, Cassidy and Wilding are required to submit content in accordance with CBM's "Community Guidelines." These guidelines require that any articles be submitted with thumbnails, banner images, and body/content images. *See* https://comicbookmovie.com/about/quality/.

As part of this program, Cassidy and Wilding created the Infringing Articles and created and distributed unauthorized copies of the Star Wars Photographs to CBM in Utah to be published and displayed on the CBM Website. These acts constitute tortious injury because they violated Trunk Archive's exclusive rights to reproduce, distribute, publicly display, perform, and create derivative works of the Star Wars Photographs. *See* 17 U.S.C. § 106. The tortious acts occurred in Utah because Cassidy and Wilding distributed the unauthorized copies of the Star Wars Photographs to CBM in Utah via the Infringing Articles with the intent that CBM publish and monetize them, ostensibly also from Utah. Indeed, both Cassidy and Wilding admit in their affidavits that they communicated directly with Best, a Utah resident, about the content of the Infringing Articles. *See* Wilding Decl. ¶7; and Cassidy Decl. ¶7.

That both Cassidy and Wilding claim to be unaware that Best and CBM were based in Utah is both irrelevant and highly suspect. *See* Wilding Decl. ¶6; and Cassidy Decl. ¶6. Cassidy and Wilding cite to no authority stating that actual knowledge of a specific geographic location is required for personal jurisdiction to be properly exercised.

Even still, Cassidy and Wilding's profession of ignorance is questionable considering in light of the known evidence. The CBM Term of Service by which all Paid Contributors agree to be bound specifically mentions that CBM is a "a company operating under the laws of Utah" located in Utah, and also states that

> All claims arising out of or relating to these terms or the Service will be governed by Utah law, except Utah's conflict of laws rules, and will be litigated exclusively in the federal or state courts Utah, USA. You and Comic Book Movie consent to personal jurisdiction in those courts.

*See* https://comicbookmovie.com/about/tos/ (last accessed April 27, 2022). In addition, both Cassidy and Wilding admit to having communicated with Best about the Infringing Articles. *See* Wilding Decl. ¶7; and Cassidy Decl. ¶7. The Infringing Articles were posted on the CBM Website between October 18, 2017 and January 7, 2020. Complaint ¶¶58-72. On March 29, 2019, Best sent an email to Higbee & Associates stating that certain of the Star Wars Photographs had been removed from the CBM Website. Carreon Decl. ¶¶2-4. The email was signed

> **Nathan Best**
> *Owner – Best Little Sites LLC*
> 639 E 720 N, Lindon, UT 84042
> Nate@BestLittleSites.com
> (801) 836-6327

Carreon Decl. ¶¶5-6, Exhibit A (emphasis in original). If Cassidy and Wilding had been communicating with Best via email as their affidavits suggest, they would have certainly seen Best's email signature which included a Utah address and phone number. Indeed, the March 29, 2019 email from Best to Higbee & Associates containing the signature block was sent prior to eleven of the fifteen Infringing Articles having been created. *See* Complaint ¶¶57-73. As such, even if Cassidy and Wilding lacked actual knowledge of Best and CBM's status as Utah residents,

they were certainly on inquiry notice of such facts and could have reasonably anticipated being haled into court in Utah for any of their acts related to CBM.

Thus, under Utah Code Ann. § 78B-3-205(3) Cassidy and Wilding's contacts are sufficient to confer personal jurisdiction, and their Motion should be denied.

### C. Jurisdiction May Also Be Exercised Under Rule 4(k)(2).

When a claim arises under federal law and the defendant is not subject to the jurisdiction of any state court of general jurisdiction, Federal Rule of Civil Procedure 4(k)(2) provides for federal long-arm jurisdiction if the plaintiff can show that the exercise of jurisdiction comports with due process. *Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.,* 970 F.3d 1269, 1282 (10th Cir. 2020) (citation and quotation omitted). A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). *Id.* at 1284 (citation and quotation omitted).

As to the first element of the 4(k)(2) analysis, the claims asserted in this litigation arise under Copyright Act, which is a Federal statute. As to the second element, both Cassidy and Wilding contend that they are not subject to personal jurisdiction in Utah, nor have they affirmatively identified another state[4] in which jurisdiction would be proper.

The only remaining element to be considered is whether the court's exercise of jurisdiction would be consistent with the Constitution and laws of the United States. To determine whether the exercise of federal jurisdiction over a defendant satisfies due process in the context of Rule 4(k)(2), the court must determine whether the defendant had minimum contacts with the United States. *CGC Holding Co., Ltd. Liab. Co. v. Hutchens,* 974 F.3d 1201, 1209 (10th Cir. 2020). Under that

---

[4] To the extent that Cassidy and/or Wilding concede to jurisdiction in another state on Reply, Trunk Archive would request that the Court transfer the case pursuant to 28 U.S.C. § 1404 or § 1406.

standard, a federal court can exercise specific personal jurisdiction over a foreign defendant "only if the defendant purposely directed [its] activities at the forum and the plaintiff's injuries arose from the defendant's forum-related activities." *Ibid*. (citation omitted). The relevant forum here is not an individual state, but the United States as a whole. *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 2021 U.S. App. LEXIS 25354, at *19 (10th Cir. Aug. 24, 2021).

Instructive in this instance is the Supreme Court case *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, Shirley Jones, of Partridge Family fame, brought suit in California against the National Enquirer, the Enquirer's local distributor, and the writer and editor of an allegedly libelous article published in the Enquirer. *Id.* at 785-86. While the Enquirer and its distributor chose not to contest jurisdiction, both the writer, John South, and the editor, Iain Calder, challenged the authority of the California courts to hear Ms. Jones's suit, stressing that the article was written and edited in Florida and, though the Enquirer was distributed nationally, the individual defendants had few contacts with California. *Id.* at 785-86, 789. The Court found specific jurisdiction in California was nonetheless appropriate because the defendants had not engaged in "mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions, were expressly aimed at California." *Id.* at 789. The Court added that "Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the magazine has its largest circulation. *Id.* at 789-90.

Distilling *Calder* to its essence, the Supreme Court found purposeful direction because of the presence of (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum (the article was about a California resident and published by a California base distributor), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and that the National Enquirer had its largest circulation there).

As in *Calder*, Cassidy and Wilding engaged in an intentional action by writing, editing and publishing the Infringing Articles containing the Star Wars Photographs to be monetized by a United States based business operating a United States based website. *See* Complaint ¶¶2-3, 25, 41-44, 50-55, 58-70.

Similarly, as in *Calder*, these acts were expressly aimed at the United States because Cassidy and Wilding submitted a total of 15 Infringing Articles which displayed unauthorized copies of the Star Wars Photographs as part of their Paid Contributor relationship with United States resident CBM to be monetized in the United States. Cassidy and Wilding's sworn affidavit testimony stating that they were paid by United States resident CBM for the work, and that they have communicated directly with United States resident Best about the content of the Infringing Articles specifically. *See* Wilding Decl. ¶¶5 and 7; and Cassidy Decl. ¶¶5 and 7; *see also* Complaint ¶¶37, 43-44; 54-55; 75-76. Further, the CBM Terms of Service to which paid contributors such as Cassidy and Wilding are required to agree, expressly states that the relationship is "governed by the law of Utah" any dispute will be litigated exclusively in the federal or state courts Utah, USA."

Finally, as in *Calder*, Cassidy and Wilding knew or should have known that the brunt of the injury would be felt in the United States since CBM and its Website are both based in the United States and published the Infringing Articles from the United States to be monetized in the United States. *See MGM Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1095 (C.D. Cal. 2003) ("even if [Australian company] could not reasonably anticipate being haled into a court in this *state*, it certainly could reasonably anticipate being haled into a court in this *country*." (emphasis in original)).

Thus, under 4(k)(2) Cassidy and Wilding's contacts are sufficient to confer personal jurisdiction, and their Motion should be denied.

## IV.    LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY IS ALSO PROPER

District courts are endowed with broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues. *See Budde v. Ling-Temco-Vought, Inc.*, 511

F.2d 1033, 1035 (10th Cir. 1975). Leave to conduct jurisdictional discovery should be granted when the jurisdictional facts are contested or more facts are needed. *See Sizova v. Nat'l Inst. of Standards & Tech*., 282 F.3d 1320, 1326 (10th Cir. 2002) ("[p]rejudice is present where 'pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary.'" quoting *Wells Fargo & Co. v. Wells Fargo Express Co*., 556 F.2d 406, 430 n.24 (9th Cir. 1977)).

If the Court is not inclined to find a sufficient basis to exercise personal jurisdiction over Cassidy and Wilding, Trunk Archive would request leave to conduct limited jurisdictional discovery related to (1) any agreements between Defendants and CBM or Best; (2) the communications between Defendants and Best about the Infringing Articles as described in paragraph 5 of the Cassidy and Wilding affidavits; and (3) the payments from CBM to Cassidy and Wilding as described in paragraph 7 of the Cassidy and Wilding Affidavits.

The Complaint alleges, and both Cassidy and Wilding admit, that they were paid contributors to CBM. *See* Complaint ¶¶33-44, 47-56; Cassidy Decl. ¶5; Wilding Decl. ¶5. Cassidy previously held himself out as "Head Editor" of the CBM website (Complaint ¶¶41-42, Exhibit F) and Wilding previously held himself out as "Head Writer" for CBM (Complaint ¶¶50-51, Exhibit I) stating that he had managed the CBM social media accounts, evaluated CBM's analytics in order to increase website traffic, and received over 174 million page views for his work in 2019 (Complaint ¶¶52-53, Exhibit J). Cassidy has contributed over 16,000 posts to CBM since 2008 while Wilding has contributed over 29,500 posts since 2009. *See* Complaint ¶¶38, 47. Cassidy and Wilding also admit that they had direct communications with Best regarding the Infringing Articles. Cassidy Decl. ¶7; Wilding Decl. ¶7.

It is clear that both Cassidy and Wilding have at least *some* contacts with Utah. The limited discovery sought would reveal the nature and extent of those contacts, particularly as they relate to the nature of the relationship between Cassidy and Wilding, and the Utah-based Best and CBM.

Thus, in the alternative, Trunk Archive should be granted leave to conduct jurisdictional discovery.

## V. CONCLUSION

Plaintiff Great Bowery Inc. d/b/a Trunk Archive respectfully requests that Defendant Mark Cassidy and Joshua Wilding's Motion to Dismiss be denied. Alternatively, Trunk Archive would request leave to conduct jurisdictional discovery.

Dated: April 28, 2022                       Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, SBN 11133
**HIGBEE & ASSOCIATES**
(714) 617-8373
mhigbee@higbeeassociates.com

**/s/ Ryan E. Carreon**
Ryan E. Carreon, *pro hac vice* pending
**HIGBEE & ASSOCIATES**
(714) 617-8373
rcarreon@higbeeassociates.com
*Attorneys for Plaintiff Trunk Archive*