THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE,<br><br>  Plaintiff,<br><br>v.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [16] DEFENDANTS' MOTION TO DISMISS COMPLAINT OR SUSPEND CASE**<br><br>Case No. 2:21-cv-00567-DBB<br><br>District Judge David Barlow |

Great Bowery (doing business as Trunk Archive) brought a suit against Best Little Sites (doing business as comicbookmovie.com, or "CBM"), Nathan Best, Mark Cassidy, Joshua Wilding, and Does 1 through 10 for copyright infringement.[1] Defendants CBM and Best moved to dismiss on the basis that Trunk Archive's claims against CBM were barred by the doctrine of claim-splitting and that Trunk Archive failed to state a claim against Best.[2] Alternatively, CBM and Best requested that the court stay the current case pending the resolution of a related case.[3] Because Trunk Archive's claims are not barred and the complaint states a claim against Best, the Motion to Dismiss or Stay the Case is DENIED.

---

[1] *See* Complaint at ¶¶ 77–85, ECF No. 2, filed Sept. 27, 2021.
[2] *See* Motion to Dismiss Complaint under FRCP 12(b)(6) and/or Suspend Pending Outcome of Related Case ("Motion to Dismiss") at 1, ECF No. 16, filed Nov. 10, 2021.
[3] *See id.*

## BACKGROUND

On May 9, 2019, CBM filed suit against Trunk Archive for a declaratory judgment that it had not infringed on Trunk Archive's copyright when allegedly copyrighted photos were posted on CBM's website (*Trunk Archive I*).[4] In response, Trunk Archive filed a counterclaim for copyright infringement in which it alleged that CBM had published an article on May 24, 2017 that included eight copyrighted photographs from an upcoming Star Wars movie.[5] After no dispositive motions were filed, *Trunk Archive I* was set for trial on December 2, 2022.[6]

On September 27, 2021, Trunk Archive filed the current suit against CBM, Nathan Best, Mark Cassidy, and Joshua Wilding for copyright infringement (*Trunk Archive II*).[7] Trunk Archive alleged that the Defendants had published 15 articles that collectively included 18 copyrighted photographs from an upcoming Star Wars movie.[8] Although the articles were all distinct from the article at issue in *Trunk Archive I*, three of the photographs were the same in both actions.[9] On May 5, 2022, this case was transferred to this court because "the factual and legal underpinnings" of this case are similar to those of *Trunk Archive I*.[10]

Now, CBM and Best move to dismiss the claims against them in *Trunk Archive II*.[11] They argue that the claims against CBM are barred by the doctrine of claim-splitting and that the

---

[4] *Trunk Archive I* Complaint at ¶¶ 35–40, ECF No. 2, filed May 9, 2019.
[5] *Trunk Archive I* Defendant's Answer to the Complaint and Counterclaim for Copyright Infringement ("*Trunk Archive I* Counterclaim") at ¶¶ 52–60, ECF No. 7, filed July 12, 2019.
[6] *Trunk Archive I* Trial Order at 1, ECF No. 69, filed March 24, 2022.
[7] *See* Complaint at ¶¶ 77–85.
[8] *Id.* ¶¶ 58–72.
[9] *Compare* Complaint Ex. A *with Trunk Archive I* Counterclaim Ex. A.
[10] Order Transferring Case to Judge Barlow at 3, ECF No. 47, filed May 5, 2022.
[11] Motion to Dismiss Complaint at 1.

complaint fails to state a claim against Best.[12] Alternatively, they argue that the case should be stayed pending resolution of *Trunk Archive I*.[13]

## STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[14] Each cause of action must be supported by sufficient, well-pleaded facts to be plausible on its face.[15] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, the court accepts all well-pleaded ("that is plausible, non-conclusory, and non-speculative")[16] facts as true and draws all reasonable inferences from the pleadings in favor of the nonmoving party.[17] But the court disregards "assertions devoid of factual allegations" that are nothing more than "conclusory" or "formulaic recitation[s]" of the law.[18]

## DISCUSSION

CBM and Best make three arguments in their motion to dismiss: first, that the court should dismiss the claims against them because the claims violate the doctrine of claim-splitting;[19] second, that the claims against Best should be dismissed for failure to state a claim;[20] and third, that, if the court permits the case to go forward, it should postpone the case until the resolution of *Trunk Archive I*.[21] These arguments are addressed in turn.

---

[12] *Id.*
[13] *Id.* at 1–2.
[14] Fed. R. Civ. P. 12(b)(6).
[15] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[16] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts Co.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).
[17] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).
[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[19] Motion to Dismiss at 7–12.
[20] *Id.* at 12–15.
[21] *Id.* at 15–16.

## I. Trunk Archive's claims against CBM are not barred by the doctrine of claim-splitting.

"The rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit."[22] This doctrine is predicated on the district court's "discretion to control their dockets by dismissing duplicative cases" and is justified because if parties spread claims around in multiple lawsuits, "parties waste 'scarce judicial resources' and undermine 'the efficient and comprehensive disposition of cases.'"[23]

The Tenth Circuit directs the court to analyze claim-splitting as an aspect of res judicata, or claim preclusion.[24] The test for whether a claim is barred by the doctrine of claim-splitting is "not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit."[25] "Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[26]

The parties do not dispute that Trunk Archive and CBM are identical to the parties in *Trunk Archive I*.[27] As such, the court will consider whether the causes of action in this case are identical to the causes of action in *Trunk Archive I*.

---

[22] *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011).
[23] *Id.* (quoting *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 985 (10th Cir. 2002)).
[24] *Id.*
[25] *Id.* at 1218. *See also Harstel*, 296 F.3d at 987 n.1 ("It is clear that a motion to dismiss based on improper claim-splitting need not—indeed, often cannot—wait until the first suit reaches final judgment. . . . Thus, in the claim-splitting context, the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion.")
[26] *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).
[27] *See* Motion to Dismiss at 9; Opposition to Motion to Dismiss ("Opposition") at 9, ECF No. 17, filed Dec. 8, 2021 ("[A]ny potential preclusive effect of the 2019 Dec. Action Litigation would apply only to Defendant CBM and would not apply to Defendants Best, Cassidy, and Wilding since the individual defendants and their conduct are not at issue in the 2019 Dec. Action Litigation.").

To determine what constitutes an identical "cause of action" for preclusion purposes, the Tenth Circuit applies the "transactional approach" from the Second Restatement of Judgments.[28] Under this approach, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction."[29] "What constitutes the same transaction or series of transactions is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"[30]

Generally, a claim should not be precluded merely because it is based on facts that arose prior to the entry of judgment in a previous action.[31] As the Tenth Circuit explains in *Hatch v. Boulder Town Council*:

> The filing of the plaintiff's complaint frames the scope of litigation, establishing a transactional nexus into which facts and claims are fitted or excluded for purposes of claim preclusion. "New" claims, arising after the complaint has been filed, but before judgment, may be excluded from this transactional nexus, and thus be litigated in a subsequent action.[32]

In *Hatch*, the court quotes the Second Circuit for the proposition that:

> The *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not litigated. Although a plaintiff may seek leave to file a supplemental pleading to assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so.[33]

---

[28] *MACTEC*, 427 F.3d at 832.
[29] *Id.*
[30] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1997).
[31] *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1149 (10th Cir. 2006).
[32] *Id.* at 1150.
[33] *Id.* (quoting *Computer Assocs. Int's, Inc. v. Altai, Inc.*, 126 F.3d 365, 369–70 (2d Cir. 1997)).

The *Hatch* court clarified:

> This does not mean, however, that a plaintiff can avoid supplementing his complaint with facts that are part of the same transaction asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion. Under the transactional test, a new action will be permitted only where it raises new and independent claims, not part of the previous transaction, based on the new facts.[34]

Finally, the Tenth Circuit noted that a new and independent claim could still be precluded if it falls under one of several exceptions to the rule that only claims related to the existing transaction are precluded, such as "where . . . 'the object of the first proceeding was to establish the legality of the continuing conduct into the future.'"[35]

To determine if Trunk Archive's current claims are barred by the doctrine of claim-splitting, the court must first determine the transactional nexus of *Trunk Archive I* and whether the current claims are "new and independent claims, not part of the previous transaction, based on . . . new facts."[36]

A copyright claim generally arises "when an infringing act occurs."[37] In the copyright context, generally "each infringing act starts a new limitations period" because "[e]ach time an infringing work is reproduced or distributed, the infringer commits a new wrong."[38]

Trunk Archive's claim against CBM in *Trunk Archive I* is a counterclaim for copyright infringement.[39] Specifically, Trunk Archive pointed to one article on CBM's website that was published in May 24, 2017 and displayed eight photographs; Trunk Archive claimed to hold the

---

[34] *Id.*
[35] *Id.* at 1150–51 (quoting 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4409, at 232).
[36] *Id.* at 1150.
[37] *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014).
[38] *Id.* at 671 (citing *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992) ("Each act of infringement is a distinct harm giving rise to an independent claim for relief.")).
[39] *Trunk Archive I* Counterclaim at ¶¶ 52–60.

exclusive right to license those photographs.[40] Thus, the "transactional nexus" of Trunk Archive's counterclaim in *Trunk Archive I* was the publication of the May 24, 2017 article with the eight allegedly infringing photographs.

To determine if Trunk Archive's claims in the current litigation arise from the same transactional nexus as those in *Trunk Archive I*, the court reviews the operative complaint in *Trunk Archive II*. Here, Trunk Archive brings a new claim for copyright infringement against CBM.[41] In its complaint, Trunk Archive identifies 15 articles that displayed allegedly copyrighted photographs.[42] The oldest of these articles was published on October 18, 2017; the *Trunk Archive II* complaint does not even reference the May 24, 2017 article at issue in *Trunk Archive I*.[43] The current litigation alleges that CBM infringed on Trunk Archive's exclusive right to license 18 photos, 3 of which were also at issue in *Trunk Archive I*.[44] The other 15 photographs are not mentioned in *Trunk Archive I*.

Because the current suit involves 15 articles that were not mentioned in the *Trunk Archive I* counterclaim, and because a new cause of action for copyright infringement exists each time an infringing image is published, Trunk Archive's current claims against CBM are not part of the same transactional nexus as the claims in *Trunk Archive I*. Thus, these claims are not barred by the doctrine of claim-splitting unless they fall into an exception to the general rule.

The only possible applicable exception that could bar Trunk Archive's claims in the current proceeding is if "the object of the first proceeding was to establish the legality of the

---

[40] *Id.* ¶¶ 36, 38, 53.
[41] Complaint at ¶¶ 77–85.
[42] *See id.* ¶¶ 58–72.
[43] *See id.*
[44] *Compare* Complaint Ex. A *with Trunk Archive I* Counterclaim Ex. A.

continuing conduct into the future."[45] In *Trunk Archive I*, CBM originally brought suit for a declaratory judgment that Trunk Archive is without right to maintain suit against CBM for copyright infringement.[46] But CBM's complaint does not reference conduct continuing into the future, it only seeks to establish the legality of CBM's past conduct.[47] Furthermore, the Tenth Circuit has never applied this exception in the claim-splitting context. As such, the court will not apply the exception here.

None of CBM's other arguments for dismissal are persuasive. CBM argues that Trunk Archive "could and should have" raised its claims in the first action because the allegedly infringing articles were discovered before the deadline to amend in *Trunk Archive I*.[48] But the standard that claims are precluded if they "could and should have been raised in the first action" is based on Utah law;[49] here, the claims at issue are exclusively federal and thus federal claim-preclusion law applies. Accordingly, the question is not whether Trunk Archive "could and should have" raised its claims in the first action, but rather whether Trunk Archive's current claims are "new and independent claims, not part of the previous transaction, based on . . . new facts."[50] Because they are, the claims are not precluded.

In sum, because Trunk Archive's current copyright claims arise from a different transaction than its copyright claims in *Trunk Archive I*, its claims are not barred by the doctrine of claim-splitting.

---

[45] *Hatch*, 471 F.3d at 1151.
[46] *Trunk Archive I* Complaint at ¶¶ 35–40.
[47] *See id.*
[48] Motion to Dismiss at 9–10.
[49] *See Marcris & Assocs., Inc. v. Neways, Inc.*, 16 P.3d 1214, 1219 (Utah 2000).
[50] *Hatch*, 471 F.3d at 1150.

## II. Trunk Archive's complaint states a claim against Nathan Best for vicarious copyright infringement.

Next, Best argues that Trunk Archive's claims against him should be dismissed because the complaint "does not plead a single action that Mr. Best allegedly took," the complaint "does not try to pierce CBM's corporate veil," and the complaint "does not allege any facts that could establish that CBM is the 'alter ego' of Mr. Best."[51] In response, Trunk Archive claims that "piercing the corporate veil is irrelevant to a finding of individual liability for copyright infringement" and that it has "sufficiently alleged that Best is vicariously liable."[52] Thus, Trunk Archive concedes that it is not pursuing a theory that CBM is Best's alter-ego or that the court should pierce CBM's corporate veil, but is only arguing that Best is vicariously liable for CBM's copyright infringement.

In *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, the Supreme Court explained that "[o]ne . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or limit it."[53] The Tenth Circuit later stated that "[v]icarious liability attaches when the defendant 'has the right and ability to supervise the infringing activity' and 'has a direct financial interest in such activities.'"[54] Accordingly, district courts in the Tenth Circuit have held that to state a claim for vicarious infringement, "a plaintiff must allege that the defendant (i) had the right and ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial interest in the exploited copyrighted materials."[55]

---

[51] Motion to Dismiss at 12.
[52] Opposition to Motion to Dismiss ("Opposition") at 10, ECF No. 17, filed Dec. 8, 2021.
[53] *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).
[54] *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013).
[55] *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002); *Softel, Inc. v. Gradon Med. & Sci. Commc'ns*, 118 F.3d 955,

To determine if Trunk Archive has stated a claim against Best for vicarious copyright infringement, the court examines the allegations in the complaint. The complaint alleges that Best "is the owner and President of CBM"[56] and that "Best has the ability to supervise and control content on the Website and receives a financial benefit from the operation of the Website."[57] At the motion to dismiss stage, the court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of Trunk Archive, the nonmoving party.[58] Trunk Archive alleges that Best is the owner and president of CBM and that Best has a financial interest in the operation of the site.[59] It is a reasonable inference that web traffic to articles posted on CBM might increase if the articles included the potentially infringing photographs, the subject of which was an internationally popular movie franchise. Furthermore, the complaint alleges that Best, as president of CBM, has the ability to supervise and control content on the website.[60]

Best argues that Trunk Archive nonetheless failed to state a claim for vicarious infringement because the complaint did not allege "that Mr. Best declined to exercise a right to stop or limit alleged infringement" or that "Mr. Best received a financial benefit *from the alleged infringement*."[61] But the Tenth Circuit does not require such specific allegations to state a claim for vicarious infringement—to state a claim for vicarious infringement a plaintiff need only allege that a defendant "'has the right and ability to supervise the infringing activity' and 'has a

---

971 (2d Cir. 1997)); *see also Warner Records Inc. v. Charter Commc'ns*, 454 F. Supp. 3d 1069, 1078 (D. Colo. 2012).
[56] Complaint at ¶ 26.
[57] *Id.* ¶ 30.
[58] *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016).
[59] Complaint at ¶¶ 26, 30.
[60] *Id.* ¶ 30.
[61] Defendants Best Little Sites and Nathan Best's Reply in Support of Motion to Dismiss Complain Under FRCP 12(b)(6) ("Reply") at 8, filed Dec. 22, 2021, ECF No. 24.

direct financial interest in such activities.'"[62] Trunk Archive has done so here. Thus, Trunk Archive's allegations state a claim against Best for vicarious copyright infringement at this stage.

### III. The court will not stay the case pending the resolution of *Trunk Archive I*.

Finally, CBM and Best request a stay of the case pending the outcome of *Trunk Archive I*.[63] *Trunk Archive I* is currently set for trial in December 2022. CBM argues that the trial in *Trunk Archive I* will resolve legal issues relevant in the current case and will "resolve all or almost all of [the current] case without forcing the parties to undergo repetitive discovery and motion practice."[64] These legal issues include "(1) whether images hosted on a third-party server and displayed via inline linking constitutes infringement, (2) whether CBM qualified for safe harbor protection under the DMCA, and (3) what damages (if any) are appropriate."[65]

In response, Trunk Archive argues that "significant factual and legal differences exist between the two litigations" and that the "factual connection between the two litigations is, at best, tenuous considering the majority of the parties, articles, and photographs at issue in each case are different."[66] Trunk Archive also notes that three defendants: Best, Cassidy, and Wilding, are defendants in the current case but are not defendants in *Trunk Archive I*.[67]

A district court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding.[68] "It is well settled that [a] district court has the power to stay proceedings pending before it and to control its docket for the purpose of

---

[62] *Diversey*, 738 F.3d at 1204.
[63] Motion to Dismiss at 15.
[64] *Id.* at 15–16.
[65] *Id.* at 15.
[66] Opposition at 11.
[67] *Id.*
[68] *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

11

'economy of time and effort for itself, for counsel, and for litigants.'"[69] Accordingly, the district court "may stay a case pending the completion of related federal proceedings."[70]

The court declines to stay this case pending the resolution of *Trunk Archive I*. The current case involves more parties and alleging infringing articles than *Trunk Archive I*. It also does not involve the article at issue in *Trunk Archive I*. To the extent that CBM is concerned that "co-pending lawsuits against the same party with similar underlying facts could result in conflicting outcomes,"[71] the two cases are now pending before the same judge—there is no risk of conflicting outcomes. Finally, the uncertainty caused by COVID-19 and the need to prioritize criminal cases during the pandemic mean the December trial date in *Trunk Archive I* is not absolutely certain. Accordingly, CBM and Best's request to stay this case is denied.

## ORDER

For the reasons stated above, Defendants' Motion to Dismiss or Suspend the Case is DENIED.

Signed June 9, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[69] *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)).
[70] *Alter v. F.D.I.C.*, 57 F. Supp. 3d 1325, 1334 (D. Utah 2014).
[71] Motion to Dismiss at 16.