THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| GREET BOWERY, d/b/a TRUNK ARCHIVE,<br><br>                    Plaintiff,<br><br>v.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [38] DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No. 2:21-cv-00567-DBB<br><br>District Judge David Barlow |

Great Bowery (doing business as Trunk Archive) brought a suit against Best Little Sites (doing business as comicbookmovie.com, or "CBM"), Nathan Best, Mark Cassidy, Joshua Wilding, and Does 1 through 10 for copyright infringement.[1] Defendants Cassidy and Wilding moved to dismiss on the basis that this court lacks personal jurisdiction over them.[2] Because there is sufficient evidence that the court has personal jurisdiction over Cassidy and Wilding, the Motion to Dismiss is DENIED.

---

[1] *See* Complaint at ¶¶ 77–85, ECF No. 2, filed Sept. 27, 2021.
[2] *See* Motion by Defendants Mark Cassidy and Joshua Wilding to Dismiss Complaint for Lack of Personal Jurisdiction Pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion to Dismiss") at 1, ECF No. 38, filed Apr. 14, 2022.

## BACKGROUND

On September 27, 2021, Trunk Archive filed the current suit against CBM, Nathan Best, Mark Cassidy, and Joshua Wilding for copyright infringement.[3] Trunk Archive alleged that the Defendants had published 15 articles that collectively included 18 copyrighted photographs from an upcoming Star Wars movie.[4]

Cassidy and Wilding are citizens of Ireland and England, respectively.[5] On April 14, 2022, they moved to dismiss the case against them on the basis that this court lacks personal jurisdiction over them.[6]

## STANDARD

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(2) if the court lacks personal jurisdiction over a defendant.[7] Plaintiff has the burden of showing that the court has personal jurisdiction over a defendant, but when there has been no evidentiary hearing on jurisdiction, the Plaintiff need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss.[8] The court must resolve all factual disputes in favor of the plaintiff regarding that prima facie showing and must treat well-pled ("that is plausible, non-conclusory, and non-speculative")[9] factual allegations in the complaint as true, unless they are disputed by a declaration.[10]

---

[3] *See* Complaint at ¶¶ 77–85.
[4] *Id.* ¶¶ 58–72.
[5] Motion to Dismiss at 1.
[6] *Id.*
[7] Fed. R. Civ. P. 12(b)(2).
[8] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).
[9] *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts Co.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).
[10] *Benton*, 375 F.3d at 1074.

## DISCUSSION

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts."[11] Utah's long-arm statute extends "jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment. . . ."[12] As such, the personal jurisdiction analysis here is a single inquiry under the due process clause.[13]

Due process requires that the defendant "purposefully established minimum contacts within the forum state" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"[14] "Depending on their relationship to the plaintiff's cause of action, an out-of-state defendant's contacts with the forum state may give rise to either general (all-purpose) jurisdiction or specific (case-linked) jurisdiction."[15]

### I. Trunk Archive concedes that the court does not have general jurisdiction over Cassidy and Wilding.

Trunk Archive concedes that the court does not have general jurisdiction over Cassidy and Wilding because Cassidy and Wilding's contacts with Utah are not so continuous and systematic such that they make Cassidy and Wilding "essentially at home" in Utah.[16] As such, the court proceeds to the question of whether it has specific personal jurisdiction over Cassidy and Wilding.

---

[11] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).
[12] Utah Code Ann. § 78B-3-201(3).
[13] *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).
[14] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).
[15] *Old Republic,* 877 F.3d at 903.
[16] Opposition to Motion to Dismiss ("Opposition") at 6, ECF No. 42, filed Apr. 28, 2022 (citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021)).

## II. The court may exercise specific jurisdiction over Cassidy and Wilding.

The minimum contacts test for specific personal jurisdiction requires: first, that the defendant has purposefully directed its activities at residents of the forum state; and second, that the plaintiff's injuries arose out of the defendant's forum-related activities.[17] Additionally, if the court finds that a defendant has minimum contacts with the forum state, it must determine if the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.[18] Accordingly, for this court to have personal jurisdiction over Cassidy and Wilding, Cassidy and Wilding must have purposefully directed their conduct at Utah, Trunk Archive's injuries must arise out of that conduct, and the exercise of personal jurisdiction over Cassidy and Wilding must not offend traditional notions of fair play and substantial justice.

### A. Purposeful direction

To satisfy the purposeful-direction prong of the test for specific personal jurisdiction, a defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum state."[19] The contacts must be the defendant's choice and not "random, isolated, or fortuitous."[20] In *Old Republic Insurance Co. v. Continental Motors, Inc.*, the Tenth Circuit outlined three of the frameworks for determining whether an out-of-state defendant's contacts with the forum state satisfy the purposeful-direction requirement: "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the

---

[17] *Old Republic*, 877 F.3d at 904.
[18] *Id.* at 908.
[19] *Ford*, 141 S. Ct. at 1024–25 (quoting *Hanson v. Denckla*, 357 U.S. 253, 253 (1958)).
[20] *Id.* at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

4

forum state ('harmful effects')."[21] Here, Trunk Archive argues that Cassidy and Wilding purposefully directed their conduct at Utah because there were "ongoing relationships . . . between Cassidy, Wilding, and CBM for Cassidy and Wilding to provide writing, editorial and administrative services to the CBM Website."[22] As such, the court will analyze the Cassidy and Wilding's contacts with Utah under the "continuing relationships" framework for purposeful direction.

The "continuing relationships" framework considers an out-of-state defendant's continuing relationships and obligations with citizens of the forum state.[23] The Supreme Court has upheld the exercise of jurisdiction over defendants who have "purposefully 'reached out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State."[24] Although a defendant's relationship with a forum-state resident, standing alone, is insufficient to confer personal jurisdiction, a court may have jurisdiction if the defendant has established minimum contacts with the forum state based on parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing."[25] "An out-of-state defendant's solicitations of or direct communications with forum state residents also provide 'some evidence' suggesting purposeful direction."[26]

In *Old Republic*, the Tenth Circuit held that an Alabama entity did not have continuing relationships with a Colorado entity sufficient to establish personal jurisdiction in Colorado

---

[21] *Old Republic,* 877 F.3d at 905.
[22] Opposition at 7.
[23] *Burger King*, 471 U.S. at 473.
[24] *Walden*, 571 U.S. at 285.
[25] *Old Republic*, 877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 479).
[26] *Id.*

where there was no communication between the entities prior to the Colorado company's enrollment in the Alabama company's fixed base operator program;[27] the parties had not "envisioned continuing and wide-reaching contacts" between one another;[28] the terms of the contract between the parties provided little indication that the Alabama company "reach[ed] out beyond one state and create[d] continuing relationships with" the Colorado company;[29] and the record did not show that the Alabama company sought out the Colorado company's business or engaged in any direct communications with it at all.[30]

Additionally, in *Dental Dynamics LLC v. Jolly Dental Group, LLC*,[31] the Tenth Circuit held that an out-of-state defendant had not purposefully directed its conduct at Oklahoma through continuing relationships with the in-state plaintiff where the parties' entire business relationship comprised three transactions over ten years and each transaction was a discrete occurrence that concerned a sale or prospective sale and did not include any long-term or continuing obligations involving Oklahoma.[32]

To determine whether Cassidy and Wilding purposefully directed their conduct at Utah, the court examines the well-pled allegations in the complaint and the declarations submitted by Trunk Archive, Cassidy, and Wilding. Trunk Archive alleges that CBM is a Utah LLC and defendant Nathan Best is a resident of Utah.[33] Cassidy and Wilding, on the other hand, reside in the UK and Ireland.[34]

---

[27] *Id.* at 910.
[28] *Id.* at 911.
[29] *Id.* (alterations in original).
[30] *Id.* at 912.
[31] 946 F.3d 1223 (10th Cir. 2020).
[32] *Id.* at 1230.
[33] Complaint at ¶¶ 2–3.
[34] *Id.* ¶¶ 3–4.

According to the complaint, Cassidy has contributed nearly 16,000 posts to the CBM website.[35] He listed himself on LinkedIn as the "Head Editor" of CBM[36]—Trunk Archive further alleges that Cassidy is a paid contributor to and editor of CBM and is expressly authorized by CBM to create and edit content for the website.[37]

Trunk Archive makes similar allegations about Wilding. It alleges that Wilding has contributed over 27,000 posts to the CBM website, that Wilding listed himself on his Twitter profile as the "Head writer" of CBM, that Wilding is a paid contributor to and editor of CBM, and that Wilding is expressly authorized by CBM to create and edit content for the website.[38] Trunk Archive also alleges that Wilding's personal website states that, during his time with CBM, Wilding has "helped manage the Twitter, Facebook, and Instagram accounts . . . and has used Google Analytics to track pageviews in order to best establish how to increase traffic to the website."[39]

In their declarations in support of their motion to dismiss, Cassidy and Wilding each state that they received payments from CBM[40] and communicated with Best[41] but that they did not know that Best or CBM resided or were based in Utah and that they did not ever have in-person contact with Best.[42]

Here, Cassidy and Wilding's contacts with Utah demonstrate sufficient continuing relationships with citizens of Utah such that the court can conclude that Cassidy and Wilding

---

[35] *Id.* ¶ 38.
[36] *Id.* ¶ 41.
[37] *Id.* ¶¶ 43–44.
[38] *Id.* ¶¶ 47, 50, 54–55.
[39] *Id.* ¶ 52.
[40] Cassidy Decl. at ¶ 7, ECF No. 38-2, Apr. 14, 2022; Wilding Decl. at ¶ 7, ECF No. 38-1, Apr. 14, 2022.
[41] Cassidy Decl. at ¶ 5; Wilding Decl. at ¶ 5.
[42] Cassidy Decl. at ¶ 6; Wilding Decl. at ¶ 6.

purposefully directed their conduct at Utah. Cassidy and Wilding hold themselves out as associated with CBM and have each contributed thousands of articles to the site; CBM is a Utah company and Best, the owner of CBM, is a Utah resident. Cassidy and Wilding have also both received payments from CBM for their submissions. Unlike the out-of-state defendants in *Old Republic* and *Dental Dynamics*, Cassidy and Wilding's relationships with Utah citizens or entities were not premised on one or three discrete transactions, but rather were forged over years of voluminous contributions to a Utah business' website and payments from that Utah business.

Cassidy and Wilding argue that the Tenth Circuit's decision in *Shrader v. Biddinger* compels a different result.[43] But this case is distinguishable from *Shrader*. There, the plaintiff argued that the defendants were subject to personal jurisdiction in Oklahoma based on defamatory material that was posted online and accessible in Oklahoma.[44] The Tenth Circuit concluded that the defendants were not subject to personal jurisdiction because there was no indication what the website targeted an Oklahoma audience and there were no "facts suggesting the [website] had some other connection to Oklahoma."[45] The Tenth Circuit stressed that, in the internet context, the personal-jurisdiction analysis must focus on an internet user or site "*intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there."[46] In this case, CBM—the website to which Cassidy and Wilding posted allegedly infringing articles—is a website and company that is based in Utah. It is not like the website in *Shrader*, which had no connection to the forum state. It is not simply that the allegedly infringing articles were accessible in Utah. Rather, the website and

---

[43] Motion to Dismiss at 11.
[44] *Shrader v. Biddinger*, 633 F.3d 1235, 1238, 1242 (10th Cir. 2011).
[45] *Id.* at 1242.
[46] *Id.* at 1240 (emphasis in original).

entity at issue are based in the forum state. By entering a long-standing relationship with CBM and by posting many thousands of articles to CBM, Cassidy and Wilding intentionally directed their conduct at the forum state.[47]

Cassidy and Wilding make one more argument—that they did not know at the time they submitted the allegedly infringing material that Best and CBM were located in Utah and that thus the court does not have personal jurisdiction over them.[48] In *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, the Tenth Circuit considered a case in which the defendants denied that they knew the plaintiff's business was located in Colorado and claimed that the court in Colorado could thus not exercise personal jurisdiction over them.[49] The Tenth Circuit held that, at the motion to dismiss stage, the plaintiffs had alleged that the defendants knew the location of their business because "[p]laintiffs' location is clearly disclosed on their eBay auction page, as is the fact that Colorado residents had to pay sales tax for any purchases from plaintiffs."[50] Accordingly, the court held that, while the defendants were free to pursue a defense that they did not know the plaintiffs were in Colorado in later stages of the litigation, the plaintiffs had provided sufficient evidence to show that the defendants purposefully directed their conduct at Colorado at the motion-to-dismiss stage.[51]

---

[47] None of the other case law that Cassidy and Wilding cite involves a website hosting infringing content that is located in the forum state. In *Larada Sciences, Inc. v. Skinner*, 147 F. Supp. 3d 1336, 1339 (D. Utah 2015), the court found that it lacked personal jurisdiction over a California defendant that operated a website that was not purposefully directed at Utah. *Id.* at 1339, 1341. Here, in contrast, the website that hosted the allegedly infringing content was owned and operated by a Utah citizen. Complaint at ¶¶ 2, 3.
[48] Motion to Dismiss at 12 (citing Cassidy Decl. at ¶ 6; Wilding Decl. at ¶ 6).
[49] *Dudnikov*, 514 F.3d 1063, 1076 (10th Cir. 2008).
[50] *Id.*
[51] *Id.* at 1076–77.

The same result is reached here for similar reasons. In this case, there are three reasons why Cassidy and Wilding's argument that they did not know Best and CBM were located in Utah does not preclude the court from exercising personal jurisdiction. First, Trunk Archive explains that contributors to CBM are required to agree to a terms-of-service agreement which states that Best Little Sites (operating as "Comic Book Movie" or "CBM") is "a company operating under the laws of Utah," is located in Vineyard, Utah, that "[a]ll claims arising out of or relating to these terms or the Service will be governed by Utah law," and that the user "consent[s] to personal jurisdiction in [federal or state] courts [in Utah]."[52] Cassidy and Wilding do not dispute that this terms-of-service agreement exists or that they were aware of it;[53] instead, they argue that Trunk Archive is not a party to the terms-of-service agreement and thus has "no standing to enforce any contracts between them and the co-defendants."[54] But Trunk Archive is not seeking to enforce the terms-of-service agreement. Instead, it is pointing to the terms-of-service agreement as evidence that Cassidy and Wilding knew that they were purposefully directing their conduct at Utah when they entered into a relationship with Best and CBM to write articles for the website. For any user, a terms-of-service agreement indicating that the company is located in Utah, that it is governed by Utah law, that the users' relationship with the company also is governed by Utah law, and expressly consenting to personal jurisdiction in Utah likely would be significant evidence supporting a prima facie showing of personal jurisdiction. And, as discussed later, Cassidy and Wilding were much more than typically users.

---

[52] Opposition at 3–4.
[53] The court does not conclude that Cassidy and Wilding knew about the terms-of-service agreement, but notes that this is presently undisputed.
[54] Reply by Defendants Mark Cassidy and Joshua Wilding to Plaintiff's Opposition to Dismiss Complaint for Lack of Personal Jurisdiction ("Reply") at 3, ECF No. 45, filed May 5, 2022.

Second, Trunk Archive provides a declaration that states that Nathan Best's email signature block included information that he was the owner of Best Little Sites LLC and that he lived in Utah.[55] Cassidy and Wilding both aver in their own declarations that they communicated with Nathan Best.[56] Drawing reasonable inferences in favor of Trunk Archive, this is some evidence that Cassidy and Wilding might have been on notice that Best and CBM were based in Utah.

Third, the long relationship between Cassidy, Wilding, and Best is evidence that Cassidy and Wilding knew they were directing their conduct at Utah. Trunk Archive alleges that Cassidy and Wilding have contributed 16,000 and 27,000 posts to CBM, respectively.[57] Cassidy and Wilding have been members of the CBM site since 2008 and 2009.[58] Additionally, Cassidy and Wilding have both communicated with Best and received payments from CBM.[59] Finally, Cassidy and Wilding each hold themselves out to the public as a "Head writer," or "Head editor," of the CBM website.[60] Drawing reasonable inferences about Cassidy, Wilding, and Best's long-standing relationship in favor of Trunk Archive, these facts are sufficient evidence that Cassidy and Wilding knew that Best and CBM were based in Utah.

This case is similar to *Dudnikov* in which the defendants claimed they had no knowledge that the plaintiffs lived in Colorado but the plaintiffs provided some evidence that the defendants might have known the location of their business. Here, Cassidy and Wilding claim that they did not know that Best or CBM were based in Utah, but Trunk Archive has provided some evidence

---

[55] Carreon Decl. at ¶¶ 5–6, ECF No. 42-1, filed Apr. 28, 2022.
[56] *See* Cassidy Decl. at ¶ 5; Wilding Decl. at ¶ 5.
[57] Complaint at ¶¶ 38, 47
[58] Complaint at ¶¶ 38, 47.
[59] Cassidy Decl. at ¶¶ 5, 7; Wilding Decl. at ¶¶ 5, 7.
[60] Complaint at ¶¶ 41, 50.

that Cassidy and Wilding might have been on notice of that fact. As such, although Cassidy and Wilding can raise this defense later in the litigation, Cassidy and Wilding's actual-knowledge defense does not compel dismissal at the motion-to-dismiss stage.

In sum, Trunk Archive has provided sufficient evidence to show that Cassidy and Wilding purposefully directed their activities at Utah through their continuing relationships and obligations with Utah citizens and entities.

### B.  Nexus between forum-state activities and injuries

Having determined that there is a prima facie showing that Cassidy and Wilding "purposefully directed" their activities at Utah, the next question is if Trunk Archive's injuries "arise out of" Cassidy and Wilding's contacts with Utah.[61] For the court to exercise specific jurisdiction over Cassidy and Wilding, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"[62]

Cassidy and Wilding argue that this prong of the specific-jurisdiction test is not satisfied because they "engaged in no conduct in Utah" and all of their activities giving rise to the case "took place from their homes in Ireland and England."[63] They assert there is "no nexus whatsoever between the accused conduct and the State of Utah."[64] But in this case, the accused conduct which led to Trunk Archive's alleged injuries was the publication of allegedly infringing material, which took place on a website operated by a Utah entity owned by a Utah citizen.[65]

---

[61] *Dudnikov*, 514 F.3d at 1078.
[62] *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017)).
[63] Motion to dismiss at 14.
[64] *Id.* at 15.
[65] *See* Complaint at ¶¶ 2, 3, 77–85.

That Cassidy and Wilding were physically located outside of Utah when they submitted the allegedly infringing articles is not dispositive. Instead, what matters is that Trunk Archive's alleged injuries "arise out of or relate to" Cassidy and Wilding's contacts with the forum—in other words, Cassidy and Wilding's contacts with Best and CBM.[66] Trunk Archive's alleged injuries from the publication of the articles arise out of or relate to Cassidy and Wilding's contacts with Best and CBM because Cassidy and Wilding published the articles to CBM as a part of their long relationship contributing articles to the site.[67] As such, this prong of the test for personal jurisdiction is satisfied.

### C. Traditional notions of fair play and substantial justice

The final step of the personal-jurisdiction inquiry is to determine if the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice."[68] With minimum contacts already established, the defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[69] Courts traditionally consider the following five factors in making this inquiry:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.[70]

The court addresses these factors in turn.

---

[66] *See Ford*, 141 S. Ct. at 1025.
[67] *See* Complaint at ¶¶ 43–55.
[68] *Dudnikov*, 514 F.3d at 1080 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[69] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).
[70] *Dudnikov*, 514 F.3d at 1080 (quoting *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1095 (10th Cir. 1998)).

      i)      <u>Burden on the defendant</u>

The burden on the defendant of litigating the case in a foreign forum is not dispositive but is the "primary concern" in determining the reasonableness of personal jurisdiction.[71] The factor is designed to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous.[72] And when the defendant is from another country, this concern is heightened.[73] In *OMI Holdings*, decided in 1998, the Tenth Circuit found that the burden on Canadian corporations litigating in Kansas were significant where the defendants had to travel outside their home country and litigate the dispute in a foreign forum.[74] But in *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, decided in 2007, the Tenth Circuit found that this factor did not weigh in favor of any party where the defendants were insurers located in Europe but modern advances in transportation and communication minimized the burden on the insurers litigating in Kansas.[75]

In this case, there is certainly a burden on Cassidy and Wilding because they are foreign nationals who would have to litigate a case in Utah. But, as the Tenth Circuit recognized in *TH Agriculture*, modern advances in transportation and communication have somewhat mitigated this burden. Indeed, since 2007, courts have made significant advances in holding hearings through video conferencing software. Additionally, the court notes that the Defendants would face a similar burden litigating in any state in the United States—there are no allegations that

---

[71] *OMI Holdings*, 149 F.3d at 1096.
[72] *Id.*
[73] *Id.*
[74] *Id.*
[75] 488 F.3d 1282, 1292–93 (10th Cir. 2007).

Cassidy and Wilding were unaware that they were dealing with a United States company. As such, this factor weighs slightly in favor of not exercising personal jurisdiction.

    ii)    <u>Forum state's interests</u>

The next factor is the forum state's interest in adjudicating the dispute.[76] "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[77] Additionally, "[a]lthough less compelling, a state may also have an interest in adjudicating a dispute between two non-residents where the defendant's conduct affects forum residents."[78]

This dispute does not fall into the first category because the plaintiff is not a Utah resident. But two of the defendants in this case are Utah citizens or entities and the publication of the allegedly infringing material occurred on a Utah website. Thus, the state of Utah has at least some interest in adjudicating the dispute because the defendant's conduct affects Utah residents. As such, this factor weighs slightly in favor of exercising personal jurisdiction.

    iii)    <u>Plaintiff's interest</u>

The third factor is whether the plaintiff may receive convenient and effective relief in another forum.[79] "This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."[80]

---

[76] *OMI Holdings*, 149 F.3d at 1096.
[77] *Id.*
[78] *Id.*
[79] *Id.* at 1097.
[80] *Id.*

15

In this case, neither party has made an effective showing that Trunk Archive may receive effective relief in another forum. Cassidy and Wilding argue that the laws of England and Ireland protect copyright and both countries are members of the Berne Convention protecting copyrights internationally.[81] But they provide no additional information about the intellectual-property enforcement regimes in those countries or how those regimes would cover publication on a U.S. website and grant Trunk Archive effective relief. The court has no reason to doubt that effective relief might be available for Trunk Archive in England and Ireland, but Cassidy and Wilding have provided no real information as to this point. Additionally, while it is possible that Trunk Archive might be able to obtain effective relief in Ireland and England, such relief would not be convenient as Trunk Archive would have to litigate in a foreign forum under foreign intellectual-property law. In sum, this factor slightly favors the exercise of personal jurisdiction.

    iv)    <u>Interstate judicial system's interest</u>

The fourth factor is whether the forum state is the most efficient place to litigate the dispute.[82] Key to this inquiry is the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation.[83]

In this case, neither party has presented information about the location of potential witnesses outside of the parties themselves. Utah is the only forum where multiple defendants reside. The wrong underlying the lawsuit was the publication of the allegedly infringing articles on CBM's website, which is based in Utah. United States federal law governs the case, which

---

[81] Motion to Dismiss at 18.
[82] *OMI Holdings*, 149 F.3d at 1097.
[83] *Id.*

favors jurisdiction in any U.S. state. Finally, allowing Trunk Archive to bring all its claims in Utah prevents piecemeal litigation across three different countries. There also is a related case already pending in this court.[84] This factor weighs in favor of the exercise of personal jurisdiction.

        v)    <u>Shared interest of the several states and foreign nations</u>

The final factor is the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies.[85] Here, this factor focuses on the extent to which jurisdiction in the forum state interferes with a foreign nation's sovereignty.[86] "Facts courts have relied on to determine whether the exercise of jurisdiction interferes with sovereignty include whether one of the parties is a citizen of the foreign nation, . . . whether the foreign nation's law governs the dispute . . . and whether the foreign nation's citizen chose to conduct business with a forum resident."[87]

In this case, although Cassidy and Wilding are citizens of foreign nations, they chose to conduct business with a resident of Utah. This contact was not fleeting but was continuous and spanned the course of at least 12 years.[88] In Both *OMI Holdings* and *TH Agriculture*, the Tenth Circuit found that the fifth factor weighed against exercising personal jurisdiction where the foreign defendants had entered into contractual relationships with foreign parties.[89] In contrast, Cassidy and Wilding chose to enter into a relationship with a Utah citizen and a Utah entity.

---

[84] *See Best Little Sites v. Great Bowery*, No. 2:19-cv-0039-DBB, filed May 9, 2019.
[85] *Id.*
[86] *Id.* at 1098.
[87] *Id.* (internal citations omitted).
[88] *See* Complaint at ¶¶ 38, 47.
[89] *OMI Holdings*, 149 F.3d at 1098; *TH Agriculture*, 488 F.3d at 1297.

Additionally, U.S. law, not foreign law, governs the dispute here. As such, this factor does not weigh strongly in favor of either party.

      vi)    <u>Conclusion</u>

In sum, the balance of the five factors weighs slightly in favor of exercising jurisdiction. Therefore, Cassidy and Wilding clearly have not "present[ed] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[90] The court may exercise personal jurisdiction over Cassidy and Wilding.

### III. In the alternative, even if Cassidy and Wilding did not have minimum contacts with Utah, the court could exercise jurisdiction over them under Federal Rule of Civil Procedure 4(k)(2)

Federal Rule of Civil Procedure 4(k)(2) provides that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."[91] Essentially, if a suit arises under federal law and a defendant is not subject to personal jurisdiction in any specific state, a court may still have personal jurisdiction over a defendant if the exercise of personal jurisdiction comports with due process based on the defendant's contacts with the United States as a whole.[92]

---

[90] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005).
[91] Fed. R. Civ. P. 4(k)(2)(A)–(B).
[92] *Copañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V*, 970 F.3d 1269, 1282 (10th Cir. 2020) ("In limited circumstances, Rule 4(k)(2) allows courts to examine a defendant's contacts with the United States as a whole, as opposed to contacts with a particular state.").

Here, Trunk Archive's suit arises under federal copyright law.[93] Assuming, arguendo, that Cassidy and Wilding are correct that they are not subject to personal jurisdiction in Utah,[94] the only remaining question would be whether Cassidy and Wilding have sufficient contacts with the United States as a whole to support the exercise of personal jurisdiction under the due process clause.

As outlined above, Cassidy and Wilding had a long-standing relationship with a U.S. resident and U.S. company in which they contributed tens of thousands of articles to a U.S. website over 12 years.[95] Trunk Archive has presented evidence that Cassidy and Wilding knew that they were doing business with a U.S. citizen.[96] Additionally, Trunk Archive is a U.S. corporation, so the injury in this case occurred in the United States.[97] In short, even if Cassidy and Wilding were unaware that CMB and Best were located in Utah, there is no dispute that they were aware and voluntarily engaged in long-term business relationship with a U.S. entity and resident.

Cassidy and Wilding argue that there is "virtually no connection between [them] and the United States" and that the "*sole* contacts between these Defendants and the U.S. related to the present lawsuit was the alleged submission of *nine* and *six* allegedly infringing articles, to a website owned by a U.S. resident."[98] Cassidy and Wilding describe this contact as "scant,

---

[93] *See* Complaint at ¶¶ 77–85.
[94] Cassidy and Wilding have not identified any other state in which the suit could proceed, which would preclude the use of Rule 4(k)(2) to establish jurisdiction. *See Copañía de Inversiones Mercantiles*, 970 F.3d at 1284 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).
[95] *See* Complaint at ¶¶ 38–55; Cassidy Decl. at ¶¶ 5–7; Wilding Decl. at ¶¶ 5–7.
[96] *See* supra at 9–11.
[97] Complaint at ¶ 1.
[98] Reply at 9 (emphasis in original).

fleeting and attenuated."[99] But in doing so, they ignore their decade-long relationship with Best and CBM in which they each submitted tens of thousands of articles to the CBM website and received payment for their work. Even more importantly, even a single contact giving rise to the case at bar can be enough to establish personal jurisdiction.[100] Cassidy and Wilding have cited no cases in which a court found multiple actions allegedly directly causing the injury at issue were insufficient to support personal jurisdiction. Accordingly, even if Cassidy and Wilding did not have sufficient contacts with Utah to support personal jurisdiction, they have sufficient contacts with the United States as a whole to support personal jurisdiction under Rule 4(k)(2).

## ORDER

For the reasons stated above, Cassidy and Wilding's Motion to Dismiss is DENIED.

Signed July 1, 2022.

BY THE COURT:

David Barlow
United States District Judge

---

[99] *Id.*
[100] *See Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996) ("Even a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact.") (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).