Mathew K. Higbee, SBN 11133
**HIGBEE & ASSOCIATES**
1504 Brookhollow Drive, Suite #112
Santa Ana, CA 92705
(714) 617-8373
mhigbee@higbeeassociates.com
*Attorneys for Plaintiff Trunk Archive*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE,<br><br>Plaintiff,<br><br>v.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:21-cv-00567-DBB<br><br>**MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES** |

Plaintiff Great Bowery, Inc., d/b/a Trunk Archive moves to strike pursuant 12(f) affirmative defenses 2-24, and 26-27, raised in Answers[1] filed by Defendants Mark Cassidy and Joshua Wilding. Trunk Archive's 12(f) motion seeks to strike affirmative defenses 2-24, and 26-27, as insufficient, redundant, impertinent, and immaterial. *See* Fed. R. Civ. Proc. 12(f). If these inapplicable defenses are not eliminated at this early stage, the parties will be forced to expend significantly more time and resources litigating legally insufficient or redundant defenses. Striking

---

[1] The affirmative defenses raised in the Answers filed be Defendants Cassidy (Dkt. #55) and Wilding (Dkt. #56) are identically worded and numbered. Thus, this Motion is consolidated to address both.

1

these defenses at this early stage will significantly narrow the scope of the case and will allow for more efficient and targeted litigation as to issue that go the heart of the merits of this case.

I.   **INTRODUCTION**

The instant litigation involves the serial infringement of 18 photographs for which Trunk Archive holds the exclusive licensing rights. *See generally* Complaint at Dkt. #2 ("Complaint"). Trunk Archive is a full-service photography licensing agency representing some of the most prominent photographers and iconic images in the world. *Id*. at ¶12. One of Trunk Archive's most prominent clients is American portrait photographer Annie Leibovitz. *Id.* at ¶14.

Between 2014 and 2019, Leibovitz took a series of photographs of the cast and crew of *Star Wars: The Last Jedi* and *Star Wars: The Rise of Skywalker*, 18 of which make up the subject matter of this lawsuit ("Star Wars Photographs"). *Id.* at ¶¶17-20. Trunk Archive alleges that the Star Wars Photographs were displayed in 15 separate editorial articles which were authored by Defendants Mark Cassidy ("Cassidy") and Joshua Wilding ("Wilding"). *Id.* at ¶¶57-76.

On July 15, 2022, Defendants Cassidy and Wiling each filed an Answer asserting 28 identical affirmative defenses. Dkts. #55-56.

II.   **TWENTY OF THE AFFIRMATIVE DEFENSES ARE LEGALLY INSUFFICIENT**

Under Fed. R. Civ. P. 12(f) a court may strike an affirmative defense that is "insufficient . . . redundant, immaterial, impertinent, or scandalous." Rule 12(f) permits striking an insufficient defense from a pleading where it "cannot succeed, as a matter of law, under any circumstances." *Tiscareno v. Frasier*, 2012 U.S. Dist. LEXIS 55553, 2012 WL 1377886, at *6 (D. Utah April 19, 2012). Rule 12(f) is intended to minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial. *Hayne v. Green Ford Sales, Inc*., 263 F.R.D. 647, 649 (D. Kan. 2009).

Since the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) several courts have addressed whether the new heightened pleading standard applies to affirmative defenses. *Hayne,* 263 F.R.D. at 649. The

2

majority of courts addressing the issue have applied the heightened pleading standard announced in *Twombly*, and further clarified in *Iqbal*, to affirmative defenses. *Id.* at 647, 649-50 (citing cases).

In *United States v. Quadrini*, 2007 U.S. Dist. LEXIS 89722, 2007 WL 4303213, at *4 (E.D. Mich. Dec. 6, 2007), the Eastern District of Michigan court specifically addressed whether Twombly's standard for pleading sufficiency applied to pleading affirmative defenses. It reasoned that:

> This clarification by the Supreme Court that a plaintiff must plead sufficient facts to demonstrate a plausible claim, or one that has a "reasonably founded hope" of success, cannot be a pleading standard that applies only to plaintiffs. It must also apply to defendants in pleading affirmative defenses, otherwise a court could not make a Rule 12(f) determination on whether an affirmative defense is adequately pleaded under Rules 8 and/or 9 and could not determine whether the affirmative defense would withstand a Rule 12(b)(6) challenge. Thus, a wholly conclusory affirmative defense is not sufficient. Like the plaintiff, a defendant also must plead sufficient facts to demonstrate a plausible affirmative defense, or one that has a "reasonably founded hope" of success.

*Ibid.*

Here, Cassidy and Wilding advance 28 separate affirmative defenses. However, all but three of these affirmative defenses, even if proven, fail as a matter of law. Because the vast majority of the affirmative defenses raised are legally insufficient, the Court should strike them so as to streamline the litigation by ridding the case of unnecessary junk pleading.

### **Affirmative Defense No. 2 – No Damages**

The second affirmative defense alleges that "Plaintiff's claims are barred because there is no damage which stems directly or indirectly from any conduct complained of in the Complaint."

"The existence of damages suffered is not an essential element of a claim for copyright infringement." *On Davis v. The Gap, Inc.*, 246 F.3d 152, 158 (2d Cir. 2001), as amended (May 15, 2001) (citing *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)); *see also* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.01, at 13-6 *159 (1999) ("Notably absent from this formulation of the prima facie case is damage or any harm to [the] plaintiff resulting from the infringement.").

3

Even if the allegations of this defense were accurate, it would not be an affirmative defense at all since damages, regardless of who may or may not have caused them, is not an element of Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

**Affirmative Defense No. 3 – Public Policy**

The third affirmative defense alleges that "Plaintiff's claims are barred because they run contrary to public policy."

Here, Cassidy and Wilding plead no facts regarding what alleged "public policy" reason exists to completely bar Trunk Archive's claims. Rather, American copyright law has its origins directly in the text of the Constitution itself which specifically enumerates to Congress the broad power "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8; *see also* 1 Patry on Copyright § 1:18 (setting forth the history of the copyright clause and its origins at the Constitutional Convention in 1787). Since its adoption, Congress has repeatedly chosen to exercise its Constitutional authority through copyright related legislation, the most recent of which is the Copyright Act of 1976. *See* 17 U.S.C. §§ 101 et seq.

Furthermore, the Supreme Court has definitively stated that the statutory policy of copyright is designed to "discourage wrongful conduct," as well as to provide "reparation for injury." *F.W. Woolworth Co. v. Contemporary Arts, Inc*., 344 U.S. 228, 233 (1952). Indeed, "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *Woolworth Co*., 344 U.S. at 233; *see also Nintendo of America, Inc. v. Dragon Pacific Intern*., 40 F.3d 1007, 1012 (9th Cir. 1994) (emphasizing punitive and deterrent goals).

Because this affirmative defense does not meet the requisite pleading standards, this defense must be stricken.

### Affirmative Defense No. 4 – Failure to Mitigate Damages

The fourth affirmative defense alleges that "Plaintiff's claims are barred by Plaintiff's failure to mitigate damages (should any damages exist)."

As explained above, damages are not an essential element of a copyright claim. Even so, "[f]ailure to mitigate damages" does not go to the heart of liability for copyright infringement and is not a proper affirmative defense. *See Interscope Records, Motown Record Co., L.P. v. Time Warner, Inc.*, 2010 U.S. Dist. LEXIS 151460, at *44-48 (C.D. Cal. June 28, 2010) (striking affirmative defense of "failure to mitigate damages" as implausible and at odds with purposes of the Copyright Act.).

Even if the allegation of this defense were accurate, it would not be an affirmative defense. Thus, this defense must be stricken.

### Affirmative Defense No. 5 – DMCA Safe harbor

The fifth affirmative defense alleges that "Plaintiff's claims are barred by the Safe Harbor provisions of the Digital Millennium Copyright Act because the CBM [sic] is a service provider and the accused content was posted, stored, transmitted, or otherwise made available at the direction of a user."

The Safe Harbor provision of the DMCA applies only to "service providers." *See* 17 U.S.C. § 512 (c). As defined in the statute "the term 'service provider' means a provider of online services or network access, or the operator of facilities therefor." 17 U.S.C. § 512(k)(1)(B). The section 512 (c) safe harbor only applies to shield service providers from "infringement of copyright by reason of the storage *at the direction of a user* of material that resides on a system or network *controlled or operated by or for the service provider*." 7 U.S.C. § 512 (c) (emphasis added).

Here, Cassidy and Wilding allege that "CBM is a service provider" however they do not allege that they themselves are service providers. Thus, while CBM may be protected by the safe harbor provision Cassidy and Wilding are not unless they qualify as service providers.

5

Under the statutory definition, Cassidy and Wilding are not "service providers" because they do not control or operate the system or network on which the infringing photographs were displayed, i.e. the CBM Website. Rather, the CBM Website which is owned and operated by co-Defendants Best Little Sites, LLC and Nathan Best. Additionally, as far as Defendants Cassidy and Wilding are concerned, the infringements alleged did not occur "at the direction of a user," rather Cassidy and Wilding are the individuals who are responsible for uploading the photographs at issue themselves.

Even if Cassidy and Wilding fir under the definition of "service providers", subsection 512(c) of the DMCA states that the statutory safe harbor applies "to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement described in paragraph (3), by making available through its service, including on its website in a location accessible to the public, *and by providing to the Copyright Office*" certain contact information for that designated agent. 17 U.S.C. § 512(c)(2) (emphasis added). Subsection 512(c) also requires the Register of Copyrights to maintain a directory of designated agents that is available to the public for inspection. *Ibid.*

Here, a search of the publicly available directory of agents maintained by the Copyright Office reveals that neither Cassidy nor Wilding appear in the designated public directory. *See* https://dmca.copyright.gov/osp/ . As other courts have recognized, the safe harbor statute expressly requires that the designated agent must be listed in the Copyright Office's directory. *BWP Media USA Inc. v. Hollywood Fan Sites LLC*, 115 F. Supp. 3d 397, 403 (S.D.N.Y. 2015) ("As stated above, the statutory scheme expressly requires two publicly available, parallel sources of a service provider's DMCA agent information (the service provider's website and the USCO directory) in order for that provider to be shielded by the § 512(c) safe harbor."); *Perfect 10, Inc. v. Yandex N.V.*, 2013 U.S. Dist. LEXIS 65802, 2013 WL 1899851, at *8 (N.D. Cal. May 7, 2013) ("The statute plainly specifies that a registered agent is a predicate, express condition—the safe harbor

will apply 'only if' such agent has been designated and identified to the Copyright Office for inclusion in the directory of agents.").

Thus, this defense must be stricken.

### **Affirmative Defense No. 6 – Collateral Estoppel**

The sixth affirmative defense alleges that "Plaintiff's claims are barred by the doctrine of collateral estoppel, res judicata, issue preclusion, claim preclusion, and claim splitting."

Here, Cassidy and Wilding plead no facts regarding how the doctrines of collateral estoppel, res judicata, issue preclusion, claim preclusion, and claim splitting apply to this case, or how these doctrines work to individually or collectively bar this action. Indeed, this Court has already addressed the "claim splitting" issue on a motion to dismiss and specifically found it to be inapplicable here. Dkt. #48.

Because this affirmative defense does not meet the requisite pleading standards, this defense must be stricken.

### **Affirmative Defense No. 7 – Lack of Actual Knowledge**

The seventh affirmative defense alleges that "Plaintiff's claims are barred because Defendant did not have actual knowledge of the alleged infringement or knowledge of facts or circumstances from which infringing activity is apparent."

Because infringement is a strict liability regime, a copyright holder need not demonstrate an infringer's intent to infringe or knowledge of the infringing acts in order to demonstrate copyright infringement. *UMG Recordings, Inc. v. Disco Azteca Distributors, Inc.*, 446 F. Supp. 2d 1164, 1172 (E.D. Cal. 2006); *see also Educational Testing Service v. Simon*, 95 F.Supp.2d 1081, 1087 (C.D. Cal.1999) (copyright infringement "is a strict liability tort"); *Pye v. Mitchell*, 574 F.2d 476, 481 (9th Cir. 1978) ("Even where the defendant believes in good faith that he is not infringing a copyright, he may be found liable.") *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 308 (2d. Cir. 1963) ("The imposition of liability upon the Green Company, even in the absence of an intention to infringe or knowledge of infringement, is not unusual. … courts have consistently

refused to honor the defense of absence of knowledge or intention."); *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 265 (4th Cir. 2019) ("As a basic matter, copyright infringement is a strict liability offense, in which a violation does not require a culpable state of mind."); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("[T]he innocent intent of the defendant constitutes no defense to liability.").

Even if the allegations of this defense were accurate, it would not be an affirmative defense at all since actual or constructive knowledge is not an element of Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

**Affirmative Defense No. 8 – Material Contribution**

The eighth affirmative defense alleges that "Plaintiff's claims are barred because Defendant did not materially contribute to any alleged infringement."

By its nature, an affirmative defense "does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven." *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2013) quoting *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011). Where a so-called "affirmative defense" does nothing more than rebut a plaintiff's claims directly, the defense should be stricken. *Ibid.*

The three primary theories of copyright infringement are theories of direct, contributory, and vicarious infringement. *See Alexander v. Take-Two Interactive Software, Inc.*, 2020 U.S. Dist. LEXIS 46713, at *10 (S.D. Ill. Mar. 18, 2020) (explaining the elements of each theory). Here, the eighth affirmative defenses essentially denies that Cassidy and Wilding engaged in a necessary element of contributory infringement.

Because the eighth affirmative defense is merely a denial, it is not a proper affirmative defense and must be stricken.

**Affirmative Defense No. 9 – Lack of Intent**

The ninth affirmative defense alleges that "Plaintiff's claims are barred Defendant did not know or intend for his actions to lead to infringement of any of Plaintiff's copyrights."

As stated in connection with the seventh affirmative defense, because infringement is a strict liability regime, Trunk Archive need not demonstrate Cassidy or Wilding's intent to infringe or knowledge of the infringing acts in order to demonstrate copyright infringement. Any knowledge or intent of Cassidy and Wilding is irrelevant and not an affirmative defense.

Even if the allegations of this defense were accurate, it would not be an affirmative defense at all since intent is not an element of Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

### Affirmative Defense No. 10 – Expeditious Removal

The tenth affirmative defense alleges that "Plaintiff's claims are barred because CBM acted expeditiously to remove and/or disable access to the photographs at issue upon obtaining knowledge or awareness of the alleged infringement."

While certainly appreciated, removing the infringing materials after the fact, does not constitute a defense to infringement. Rather, the Supreme Court has recognized that a claim for infringement accrues "[e]ach time an infringing work is reproduced or distributed." *Petrella v. MGM*, 572 U.S. 663, 671 (2014). If Cassidy and Wilding's argument were to be embraced, anyone could infringe with impunity and reap the benefits of their infringing conduct without penalty so long as the infringing content is removed once the infringer is caught. Such is not the law, nor is it in line with the strict liability nature of copyright.

Furthermore, Cassidy and Wilding specifically allege that "CBM acted expeditiously" not that they had anything to do with the removal of the photographs. It is unclear how Cassidy and Wilding can claim CBM's independent actions as a defense to their own conduct.

Regardless, even if the allegations of this defense were accurate, it would not be an affirmative defense at all since post infringement removal is not relevant to Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

### Affirmative Defense No. 11 – No Valid DMCA Takedown Notice

The eleventh affirmative defense alleges that "Trunk Archive's claims are barred because Trunk Archive did not submit a compliant DMCA take-down notice in connection to the photographs at issue."

For its fifth affirmative defense Cassidy and Wilding aver that they are protected by the Safe Harbor provision of the DMCA. As stated in connection with the fifth affirmative defense, Cassidy and Wilding cannot qualify for DMCA safe harbor. Thus, whether Trunk Archive submitted a DMCA takedown notification is irrelevant.

Thus, this defense must be stricken.

### Affirmative Defense No. 12 – Photographs Not On CBM's Server

The twelfth affirmative defense alleges that "Plaintiff's claims are barred because the photographs at issue were not stored and/or did not reside on a system or network controlled or operated by Defendant."

The Copyright Act reserves for the copyright holder the exclusive right to display the copyrighted work. 17 U.S.C. § 106. Nowhere does the Copyright Act suggest that possession of an image is necessary in order to display it or violate the display right. *Goldman v. Breitbart News Network, LLC,* 302 F. Supp. 3d 585, 593 (S.D.N.Y. 2018) (holding that photograph residing on a third-party server and embedded on defendant's website constituted unauthorized display). Indeed, the purpose and language of the Act support the opposite view. *Ibid.*[2] Simply put, to "show a copy" of a work is to display it. *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 441-48 (2014), citing 17 U.S.C. § 101; *see also The Leader's Inst., LLC v. Jackson*, 2017 U.S. Dist. LEXIS 193555, 2017 WL 5629514 (N.D. Tex. Nov. 22, 2017) (by "framing the defendant's copyrighted works, the plaintiffs impermissibly displayed the works to the public.").

---

[2] The Goldman reading is consistent with the Supreme Court's admonition that, to determine whether a work is infringed under the Copyright Act, a court must "focus on the [work] as presented to, and perceptible by" the public. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 499 (2001). For purposes of the display right, then, it is the viewer's experience that matters, not the internal mechanics of how the content is stored or retrieved.

Regardless, Trunk Archive alleges that Cassidy and Wilding are liable for direct infringement by causing the photographs to be displayed on the CBM website. It does not matter that Cassidy and Wilding do not control the CBM website. Indeed, if this argument were to be embraced, then direct infringers could never be held liable for facilitating infringement on websites they neither owned nor controlled.

Whether the photographs at issue were stored on a third-party server is irrelevant to determining whether Cassidy and Wilding infringed. Thus, this defense must be stricken.

### Affirmative Defense No. 13 – No Proximate Cause

The thirteenth affirmative defense alleges that "Plaintiff's claims are barred because the alleged damages, if any, were proximately caused by act or omissions, negligence, or intentional acts by third parties over whom Defendant had no control or right of control or, if Defendant had any right of control, were acting beyond the scope of any relationship with Defendant, or such damages were caused by conditions or events over which Defendant had no control or right of control."

As stated previously, damages are not an essential element of copyright infringement, and thus proximate causation of damages, or lack thereof, is irrelevant to Trunk Archive's copyright infringement case. Thus, this defense must be stricken.

### Affirmative Defense No. 14 – Bad Faith

The Fourteenth affirmative defense alleges that "Trunk Archive's claims are barred because of Trunk Archive's own bad faith or unlawful actions."

As an initial matter, Cassidy and Wilding have failed to specifically plead any facts related to Trunk Archive's alleged "bad faith" or "unlawful actions." Even if they had, that does not necessarily give rise to a valid affirmative defense. "Illegality" is typically not a valid defense to a copyright claim and should be raised only in rare circumstances when a party can show he or she has been directly injured by the opposing party's alleged illegal conduct. *Malibu Media, LLC v. Miller*, 2014 U.S. Dist. LEXIS 80803, at *9 (D. Colo. May 20, 2014) citing *Mitchell Bros. Film*

*Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) ("The alleged wrongdoing of the plaintiff does not bar relief unless the defendant can show that he has personally been injured by the plaintiff's conduct."); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 990-91 (9th Cir. 2009) ("illegal use or operation of a work by the copyright owner [does not] preclude[] the award of actual or statutory damages for copyright infringement"); *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 755 (7th Cir. 2012) ("the prevailing view is that even illegality is not a bar to copyrightability").

Because this affirmative defense is insufficiently pled, it must be stricken.

### Affirmative Defense No. 15 – Unjust Enrichment

The Fifteenth affirmative defense alleges that "Plaintiff's claims are barred under the doctrine of unjust enrichment."

Unjust enrichment is not a catch-all claim for anyone who believes that another has acted unjustly. *Shady Records, Inc. v. Source Enters.*, 351 F. Supp. 2d 74, 78 (S.D.N.Y. 2004) citing *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 20 (2d Cir. 1983). Rather, it is a specific equitable cause of action that can be asserted when one party, in the absence of contract, receives a benefit at the expense of another without providing adequate compensation, and equity and good conscience require restitution. *Ibid.* What arises is a quasi-contractual obligation to make restitution for such benefits. *Ibid.*

Setting aside the fact that damages have yet to be proven, Cassidy and Wilding do not sufficiently allege a quasi-contractual relationship with Trunk Archive or that Trunk Archive has received a benefit at the expense of Cassidy and Wilding without providing adequate compensation. Regardless, as stated previously, damages are not an essential element of copyright infringement and any alleged unjust enrichment is irrelevant to Trunk Archive's copyright infringement case.

Thus, this defense must be stricken.

### Affirmative Defense No. 16 – Lack of Bad Faith

The sixteenth affirmative defense alleges that "Plaintiff's claims are barred because Defendant's infringement, if there was infringement, was not malicious, deliberate, consciously wrongful, or done in bad faith."

As stated in connection with the seventh and ninth affirmative defenses, because infringement is a strict liability regime, Trunk Archive need not demonstrate Cassidy or Wilding's intent to infringe or knowledge of the infringing acts in order to demonstrate copyright infringement. Any knowledge or intent of Cassidy and Wilding is irrelevant and not an affirmative defense.

Even if the allegations of this defense were accurate, it would not be an affirmative defense at all since intent is not an element of Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

### Affirmative Defense No. 17 – Unclean Hands

The seventeenth affirmative defense alleges that "Plaintiff's claims are barred under the doctrine of unclean hands."

In copyright actions, the doctrine of unclean hands is only applied "where the wrongful acts 'in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication.'" *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979) (quoting *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933)). The elements of unclean hands include a showing that the party seeking equitable relief is "(1) guilty of conduct involving fraud, deceit, unconscionability, or bad faith, (2) directly related to the matter at issue, (3) that injures the other party, and (4) affects the balance of equities between the litigants." *Malibu Media, LLC v. Miller*, 2014 U.S. Dist. LEXIS 80803, at *7 (D. Colo. May 20, 2014). Because the alleged inequitable conduct "must be connected ... to the matters before the court for resolution," a court should "not refuse relief to a party merely because it has

engaged in misconduct which is unrelated to the claims before the court." *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999).

Cassidy and Wilding have failed to specifically plead any facts related to Trunk Archive's alleged "unclean hands" in this matter, nor have the pled any facts at all. Because this affirmative defense is insufficiently pled, it must be stricken.

### Affirmative Defense No. 18 – Good Faith

The eighteenth affirmative defense alleges that "Plaintiff's claims are barred because Defendant acted in good faith and was justified in his actions."

As stated in connection with the seventh, ninth, and sixteenth affirmative defenses, because infringement is a strict liability regime, Trunk Archive need not demonstrate Cassidy or Wilding's intent to infringe or knowledge of the infringing acts in order to demonstrate copyright infringement. Any knowledge or intent of Cassidy or Wilding is irrelevant and not an affirmative defense.

Even if the allegations of this defense were accurate, it would not be an affirmative defense at all since intent is not an element of Trunk Archive's copyright infringement claim. Thus, this defense must be stricken.

### Affirmative Defense No. 19 – Own Harm

The nineteenth affirmative defense alleges that "Plaintiff's claims are barred because Plaintiff inflicted its own harm and through its acts or omissions was the sole cause or the proximate cause of the damages complained."

As stated previously with respect to the similarly phrased thirteenth affirmative defense, damages are not an essential element of copyright infringement, and thus proximate causation of damages, or lack thereof, is irrelevant to Trunk Archive's copyright infringement case.

Thus, this defense must be stricken.

### Affirmative Defense No. 20 – Ability to Supervise and Control

The twentieth affirmative defense alleges that "Plaintiff's claims are barred because Defendant did not have the right and ability to supervise the allegedly infringing activity sufficient to confer vicarious liability for the allegedly infringing activity."

By its nature, an affirmative defense "does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven." *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2013) quoting *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011). Where a so-called "affirmative defense" does nothing more than rebut a plaintiff's claims directly, the defense should be stricken. *Ibid.*

The three primary theories of copyright infringement are theories of direct, contributory, and vicarious infringement. *See Alexander v. Take-Two Interactive Software, Inc.*, 2020 U.S. Dist. LEXIS 46713, at *10 (S.D. Ill. Mar. 18, 2020) (explaining the elements of each theory). Here, the twentieth affirmative defense essentially denies that Cassidy and Best engaged in a necessary element of vicarious infringement.

Because the twentieth affirmative defense is merely a denial, it is not a proper affirmative defense and must be stricken.

### Affirmative Defense No. 21 – No Direct Financial Interest

The twenty-first affirmative defense alleges that "Plaintiff's claims are barred because Defendant did not have a direct financial interest in the allegedly infringing activity sufficient to confer vicarious liability for the allegedly infringing activity."

By its nature, an affirmative defense "does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven." *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2013) quoting *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011). Where a so-called "affirmative defense" does nothing more than rebut a plaintiff's claims directly, the defense should be stricken. *Ibid.*

The three primary theories of copyright infringement are theories of direct, contributory, and vicarious infringement. *See Alexander v. Take-Two Interactive Software, Inc.*, 2020 U.S. Dist. LEXIS 46713, at *10 (S.D. Ill. Mar. 18, 2020) (explaining the elements of each theory). Here, the twenty-first affirmative defense essentially denies that Cassidy and Best engaged in a necessary element of vicarious infringement.

Because the twenty-first affirmative defense is merely a denial, it is not a proper affirmative defense and must be stricken.

### Affirmative Defense No. 22 – Laches and Waiver

The twenty-second affirmative defense alleges that "Plaintiff's claims are barred because of the equitable doctrines of laches and waiver."

The U.S. Supreme Court has done away with laches as an affirmative defense to copyright infringement since the copyright statute of limitations, 17 U.S.C. § 507(b) takes account of delay. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677.

To prove a waiver defense, a defendant is required to show, (1) that the copyright owner had knowledge of an existing right, and (2) an intentional relinquishment of that right by the copyright owner. *Boatman v. United States Racquetball Ass'n*, 33 F. Supp. 3d 1264, 1276 (D. Colo. 2014) citing *A&M Records v. Napster*, 239 F.3d 1004, 1026 (9th Cir. 2001).

Here, Cassidy and Wilding do not challenge that Trunk Archive has brought this claim within the relevant statute of limitations, which is the only available alternative to a laches defense. Nor do Cassidy and Wilding plead any facts supporting the elements of waiver. The very fact the Trunk Archive has brought these proceedings affirmatively demonstrates that it has *not* waived any of its rights.

Indeed, it would be nonsensical to claim that a copyright holder has waived a claim that was brought prior to the expiration of the statute of limitations. The Supreme Court has explicitly stated that there is "nothing untoward about a copyright holder waiting to see" whether an infringement case is worth pursuing, even if it is not brought until decades later. *See Petrella*, 134

at 1965-66; *see also UMG Recordings, Inc.*, 92 F. Supp. 2d at 353 ("[T]he admissible evidence of records shows only that plaintiffs have reasonably exercised their right to determine which infringers to pursue, and in which order to pursue them.").

Because this affirmative defense is insufficiently pled, it must be stricken.

**Affirmative Defense No. 23 – Copyright Misuse**

The twenty-third affirmative defense alleges that "Plaintiff is not entitled to any relief because it has engaged in copyright misuse, including for the purpose of stifling competition."

As an initial matter, some courts have flatly rejected the existence of the "copyright misuse" doctrine. *See, e.g., Rural Tel. Serv. Co., Inc. v. Feist Publications, Inc.*, 663 F. Supp. 214, 220 (D. Kan. 1987); *Orth-O-Vision, Inc. v. Home Box Office*, 474 F. Supp. 672, 686 (S.D.N.Y. 1979); *Reliability Research, Inc. v. Computer Assocs. Int'l, Inc.*, 793 F. Supp. 68, 69 (E.D.N.Y. 1992) ("Neither the Supreme Court nor the Second Circuit has addressed the issue of the existence and extent of a misuse of copyright defense.")

Assuming *arguendo* that the doctrine does exist, the defense of copyright misuse is based upon the principle that copyright holders may not leverage their copyright monopoly to allow them to control of areas outside the monopoly. *Bourne v. Walt Disney Co.*, 2003 U.S. Dist. LEXIS 2818, at *10; 2003 WL 721405, at *4 (S.D.N.Y. Mar. 3, 2003) citing *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). The Copyright Act sets forth a number of exclusive rights of a copyright holder. *See* 17 U.S.C. § 106 (enumerating exclusive rights of copyright holder to reproduction, adaptation, publication, performance, and display).

In *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516 (9th Cir. 1997) the American Medical Association ("AMA") licensed a copyrighted coding system to the Health Care Financing Administration ("HCFA"). *Id.* at 517-8. The agreement granted HCFA a royalty-free, non-exclusive license to use the AMA's coding system. *Ibid.* In return, HCFA promised not to use any other coding system and also promised to use its powers as a regulatory agency to require use of the AMA's system in programs administered by its agents. *Ibid.*

17

A separate dispute arose between Practice Management, the largest reseller of books of the AMA's coding system, and the AMA. *Id.* at 518. Practice Management argued in its action for declaratory relief that the AMA was misusing its copyrights because the licensing agreement between HCFA and the AMA was unduly restrictive. *Ibid.* The Ninth Circuit looked closely at the licensing agreement and sided with Practice Management. *Id.* at 521. In particular, the court held that the requirement that HCFA not use competing coding systems represented an expansion of the monopoly power of the AMA's copyright. *Ibid.* The court labeled this exclusivity clause the "controlling fact." *Ibid.* (copyright misuse is implicated by "the limitation imposed by the AMA licensing agreement on HCFA's rights to decide whether or not to use other forms as well").

In this instance, Cassidy and Wilding cannot allege a copyright misuse because Trunk Archive is not attempting to do anything other than enforce the exclusive rights granted to it by the Copyright Act. Indeed, Trunk Archive's claim merely attempts to restrict Cassidy and Wilding from their unauthorized copying, distribution, and display of the photographs at issue, all of which fall squarely within the scope of Trunk Archive's exclusive rights. *See* 17 U.S.C. § 106(1)-(3), (5). "The copyright misuse doctrine does not prohibit using conditions to control use of copyrighted material." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1159 (9th Cir. 2011).

Because Cassidy and Wilding cannot allege a copyright misuse, this defense must be stricken.

### **Affirmative Defense No. 24 – First Amendment**

The twenty-fourth affirmative defense alleges that "Defendant's actions and/or conduct are protected by the First Amendment of the United States Constitution."

Setting aside the fact that copyright protection itself is rooted in the text of the Constitution as the eighth of the eighteen enumerated powers granted to Congress, *see* U.S. Const. art. I, § 8, cl. 8, the "Supreme Court . . . has made it unmistakably clear that the First Amendment does not shield copyright infringement." *Universal City Studios, Inc. v. Reimerdes*, 82 F. Supp. 2d 211, 220 (S.D.N.Y. 2000); *see Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 568

(1985) (rejecting First Amendment challenge to copyright infringement action); *Zacchini v. Scripps-Howard*, 433 U.S. 562, 574-78 (1977).

Thus, this defense must be stricken.

### **Affirmative Defense No. 26 – Copyright Invalidity**

The twenty-sixth affirmative defense alleges that "Plaintiff's claim for copyright infringement is barred, in whole or part, because its alleged copyrights are invalid."

By its nature, an affirmative defense "does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven*.*" *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2013) quoting *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011). Where a so-called "affirmative defense" does nothing more than rebut a plaintiff's claims directly, the defense should be stricken. *Ibid.*

Ownership of a valid copyright is part of a copyright plaintiff's case in-chief. *See Feist Publ'ns, Inc.*, 499 U.S. at 361 ("To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). Thus, an attack on the validity of a copyright by asserting that the copyright is invalid is not an affirmative defense, but rather points out an alleged defect in the plaintiff's *prima facie* case. *Malibu Media, LLC v. Benson*, 2014 U.S. Dist. LEXIS 85003, at *8 (D. Colo. Apr. 11, 2014).

Because the twenty-sixth affirmative defense is merely a denial, it is not a proper affirmative defense and must be stricken.

### **Affirmative Defense No. 27 – Speculative Damages**

The twenty-seventh affirmative defense alleges that "Plaintiff is not entitled to any monetary relief because the damages sought by Plaintiff are entirely speculative."

As stated previously, damages are not an essential element of copyright infringement, and thus the nature of damages, speculative or not, is irrelevant to Trunk Archive's copyright infringement case.

Furthermore, the Copyright Act employs a statutory damages regime which allows the court to award any amount of damages within the statutorily defined limit "as the court considers just." 17 U.S.C. § 504(c)(1); *see Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 730 (S.D.N.Y. 1981), (holding that defendant's profits of $5,177 would "provide a basis for examining an appropriate amount of statutory damages," but in view of defendant's willfulness, awarded statutory damages of $40,000). The Supreme Court has definitively stated that "[e]ven for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within [the] statutory limits to sanction and vindicate the statutory policy" of discouraging infringement. *Woolworth Co.*, 344 U.S. at 233.

Thus, this defense must be stricken.

### III. CONCLUSION

In conclusion, Plaintiff Great Bowery Inc. d/b/a Trunk Archive respectfully requests that the Court strike affirmative defenses 2-24, and 26-27 raised in the Answers filed by Defendants Mark Cassidy and Joshua Wilding.

Dated: July 26, 2022                                Respectfully submitted,

**/s/ Mathew K. Higbee**
Mathew K. Higbee, SBN 11133
**HIGBEE & ASSOCIATES**
(714) 617-8373
mhigbee@higbeeassociates.com

**/s/ Ryan E. Carreon**
Ryan E. Carreon, *pro hac vice*
**HIGBEE & ASSOCIATES**
(714) 617-8373
rcarreon@higbeeassociates.com
*Attorneys for Plaintiff Trunk Archive*