Robert E. Aycock (#8878)
William B. Chadwick (#16416)
KIMBALL ANDERSON
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
Phone: (801) 359-3333
robert@kimballanderson.com
will@kimballanderson.com

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE<br><br>  Plaintiff,<br><br>vs.<br><br>BEST LITTLE SITES, d/b/a www.comicbookmovie.com; NATHAN BEST; MARK CASSIDY; JOSHUA WILDING; and DOES 1 through 10.<br><br>  Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:21-cv-00567-DBP<br><br>District Judge: David Barlow<br><br>Magistrate Judge: Jared C. Bennett |

Defendants Best Little Sites, d/b/a www.comicbookmovie.com ("CBM"), Nathan Best, Mark Cassidy, and Joshua Wilding (collectively, "Defendants") reply in support of their motion for judgment on the pleadings (Dkt. 80, "Motion") on the sole cause of action for copyright infringement alleged by Plaintiff Great Bowery, d/b/a Trunk Archive ("Plaintiff" or "Trunk Archive").

## INTRODUCTION

The Court must determine whether it can be reasonably inferred from Trunk Archive's Complaint (Dkt. 2) that Trunk Archive owns the exclusive right to publicly display the works at issue. For many reasons, Trunk Archive's Complaint does not permit this inference. Trunk Archive only pleads that it has the "exclusive right to license" but then only alleges infringement of the exclusive right to publicly display a work. In short, owning the exclusive right to grant licenses to a Section 106 exclusive right in copyright is not the same as owning the Section 106 exclusive right.

Trunk Archive cannot sue for copyright infringement without owning one of the exclusive rights in copyright set forth in 17 U.S.C. § 106. *See* 17 U.S.C. § 501(b); 17 U.S.C. § 201(d)(2). Trunk Archive has not pled that it has the exclusive right to display the works at issue and, therefore, cannot maintain its claim that Defendants infringed that right. In its Opposition (Dkt. 81), Trunk Archive does not dispute that its Complaint does not state that it owns one of the exclusive rights outlined in Section 106. Instead, Trunk Archive suggests that these statutory requirements do not apply to it because it has pled that it received the "exclusive right to license" certain works. As a result, Trunk Archive argues that it has standing to sue any party for any infringement of any of the enumerated Section 106 exclusive rights for these works that it did not create and for which it does not own any of the underlying exclusive rights. This unfounded position falls far outside the

1

Copyright Act's requirements for what constitutes copyright infringement and standing to bring claims.

What Trunk Archive calls "the exclusive right to license" is merely the "bare right to sue" anyone who exploits the exclusive rights owned by someone other than Trunk Archive without first paying Trunk Archive. This "bare right" cannot be transferred and cannot confer standing for a copyright infringement claim. *Righthaven LLC v. Hoehn*, 716 F.3d 1166, 1170 (9th Cir. 2013).

Put differently, displaying an unlicensed image is not a violation of the right to license but could potentially infringe the right to publicly display the work. Trunk Archive's "exclusive right to license the right to display" might permit it to prohibit others from <u>extending licenses to the right to display</u>. However, to exclude others from <u>displaying an unlicensed work</u>, Trunk Archive must possess the exclusive right to display that work (17 U.S.C. § 106(5)). Trunk Archive has not pled that it owns this right. Again, Trunk Archive's premise that, by itself, the "right to license" empowers it to sue for all unlicensed uses of the Section 106 rights is just another way of saying it only has the "bare right to sue" and none of the exclusive Section 106 rights.

Defendants do not dispute that it could be argued from the pleadings that Trunk Archive has a non-exclusive right to publicly display the works. However, a non-exclusive license does not permit a party to sue for infringement of that right. Moreover, because Trunk Archive pleads that at least one other entity besides the creator has the right to publicly display the works, it cannot be inferred that Trunk Archive owns this "exclusive" right or can sue to enforce it. Defendants also do not dispute that Trunk Archive could potentially hold the exclusive right to distribute the works. Even so, Trunk Archive pleads no allegations that Defendants have violated that right and distances itself from this position in its Opposition.

In summary, Trunk Archive alleges infringement of an exclusive right that it has not pled that it owns, and it has not pled that Defendants violated any right it might hold. There are no facts or reasonable inferences that would permit any recovery on Trunk Archive's claim as pled. As such, judgment on the pleadings is appropriate, and Trunk Archive's Complaint should be dismissed.

## ARGUMENT

### I. Trunk Archive must own an exclusive right set forth in 17 U.S.C. § 106 to sue for copyright infringement.

A claim for copyright infringement requires a violation of "any of the exclusive rights of the copyright owner . . . ." 17 U.S.C. § 501(a). "Section 106 sets forth an exhaustive list of those exclusive rights." *DRK Photo v. McGraw-Hill Global Education Holdings, LLC*, 870 F.3d 978, 983 (9th Cir. 2017). Under Section 106 (titled "Exclusive rights in copyrighted works"), a copyright owner has the "exclusive rights":

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
>
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

Copyright owners can license or transfer some or all of those exclusive rights to others. *See* 17 U.S.C. § 201(d)(2). "The legal or beneficial owner of an exclusive right under a copyright is

entitled, subject to the requirements of section 411, to instate an action for an infringement <u>of that particular right</u> committed while he or she is the owner of it." 17 U.S.C. § 501(b) (emphasis added). Similarly, under 17 U.S.C. § 201(d)(2), "[t]he owner of an exclusive right is entitled, <u>to the extent of that right</u>, to all of the protection and remedies accorded to the copyright owner by this title." (emphasis added).

    **II.**    **Trunk Archive's pleading cannot be interpreted to mean that it owns the exclusive right to display the works.**

Trunk Archive cannot sue Defendants for a violation of the exclusive right to publicly display the works (17 U.S.C. § 106(5)) because it has not pled that it owns or has been licensed that exclusive right in the subject works.

    A.    <u>Trunk Archive does not explicitly pled that it owns or has been licensed the exclusive right to publicly display the works.</u>

Trunk Archive's complaint must "sufficiently allege[ ] facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). Here, Trunk Archive has not expressly pled that it owns or has been assigned or licensed the exclusive right to publicly display the works. Instead, Trunk Archive pleads it has received the "exclusive right to license" and asks the Court to infer that this "means the right to grant licenses for exploitation of any of the six statutorily created exclusive rights including the right of public display." Opposition at 3. Even if Trunk Archive is granted this inference, it still will not have standing to maintain its claim. Owning the exclusive right to extend licenses to a Section 106 exclusive right is not enough. A plaintiff must own the actual Section 106 exclusive right itself to bring a claim. *See* 17 U.S.C. 201(d)(2); 17 U.S.C. § 501(a).

4

Trunk Archive does not argue that there is a reasonable inference that the exclusive right to license also includes the exclusive right to publicly display works—just that it can extend licenses to the right to display works. While Trunk Archive is entitled to reasonable inferences from the facts pled, it is not reasonable to infer that it owns the exclusive right to publicly display the works.

B.  <u>Trunk Archive pleads that Vanity Fair has at least some rights to display the works.</u>

The essence of an "exclusive" license is that "the copyright holder permits the licensee to use the protected material for a specific use and further promises that the same permission will not be given to others." *I.A.E., Inc. v. Shaver,* 74 F.3d 768, 775 (7th Cir. 1996); *see also Corbello v. DeVito*, 832 F.Supp.2d 1231, 1244 (D. Nev. 2011) ("[T]he difference between 'exclusive' and 'nonexclusive' licenses concerns the continuing ability of the grantor to use or further license to others the licensed property during the period the license is in effect.").

Here, Trunk Archive's pleading cannot be interpreted to mean that Trunk Archive owns the exclusive right to publicly display the works because, at a minimum, Vanity Fair has also been authorized to display the works. *See* Complaint at ¶ 21 ("The Star Wars Photographs were originally published exclusively by the publication *Vanity Fair* in print and online at the *Vanity Fair* website.") The Complaint also includes links where the images are still publicly displayed on Vanity Fair's website. *Id.* In its Opposition, Trunk Archive further concedes that "the publication Vanity Fair was chosen to be the exclusive publication through which the Star Wars photographs were first released," indicating that Vanity Fair—a third party—was authorized to display the photos. Opposition at 4. Because Vanity Fair is also authorized to display the works, Trunk Archive cannot own or enforce the exclusive right to publicly display the works.

5

Trunk Archive misunderstands Defendants' argument regarding Vanity Fair's rights to the works and the impact it has on Trunk Archive's standing. Vanity Fair did not need to receive the exclusive right to display the images to preclude Trunk Archive's suit. As long as Vanity Fair has rights from the creator to display the images, Trunk Archive cannot hold or enforce the exclusive right to display them. *See Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 646-47 (9th Cir. 2020) ("[B]ecause such a licensee has been granted rights only vis-à-vis the licensor, not vis-à-vis the world, he or she has no legal right to exclude others from using the copyrighted work, and thus no standing to bring an infringement suit."). That said, Trunk Archive affirmatively pleads that "[t]he Star Wars Photographs were originally published <u>exclusively</u> by the publication *Vanity Fair* in print and online at the *Vanity Fair* website." Complaint at ¶ 21 (emphasis added). Trunk Archive then pleads that it received a license from Leibovitz—not Vanity Fair—to the exclusive right to license the works. *Id.* at ¶ 24. Trunk Archive does not explain how it can enforce the right of public display that is owned either in part or in whole by Vanity Fair.

Without the exclusive right to display the works, and with that right already granted to at least one entity other than the creator, Trunk Archive cannot sue for a violation of the right to display. *See* 17 U.S.C. § 201(d)(2) (restricting ability to sue to the owner of an "exclusive right").

  C. <u>Being the exclusive licensing agent does not grant Trunk Archive the ability to exercise and enforce all exclusive rights in the works.</u>

Trunk Archive's central argument is that "the exclusive right to license allows Trunk Archive to enforce violations of any of the rights enumerate [sic] in § 106." Opposition at 2. This is incorrect, and Trunk Archive does not offer any authority to support its assertion. At most, Trunk Archive is merely the licensing agent for the works. A licensing agent who does not own a Section 106 exclusive right cannot sue for infringement of one of those rights, such as the right to publicly

display a work, particularly when there is no existing or breached license between the licensing agent and the alleged infringer. *See, e.g., Bourne Co. v. Hunter Country Club, Inc.,* 990 F.2d 934, 937 (7th Cir. 1993) ("A licensing agent is neither the legal nor the beneficial owners of the copyright and has no interest in the copyright."). Without the ability to exploit any of the "exclusive rights" under Section 106, a party is "left only with the bare right to sue, which is insufficient for standing under the Copyright Act and *Silvers*." *Righthaven*, 716 F.3d at 1170 (referencing *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 890 (9th Cir. 2005)).

Courts have also refused to find standing under the Copyright Act even where the plaintiff appeared to be the exclusive licensing agent. *See Plunket v. Doyle,* No. 99 CIV. 11006, 2001 WL 175252, at *5 (S.D.N.Y. Feb. 22, 2001) (plaintiff who claimed to have the "exclusive worldwide rights to manage, as well as to negotiate, license, and otherwise cause and permit the exploitation" of all rights in certain works lacked standing); *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co., Inc.,* 679 F. Supp. 1564, 1572 (N.D. Ga. 1987) (rejecting argument that the "exclusive right to authorize others to use OAA's copyright must in itself be a copyright within section 106 and, thus, protected by section 501").

Trunk Archive possibly has a <u>non</u>-exclusive right to display the works, although that is not supported in the pleadings. But again, "a mere 'nonexclusive license' does not constitute a 'transfer of copyright ownership' and therefore cannot confer standing to assert an infringement claim." *DRK Photo*, 870 F.3d at 983 (citing 17 U.S.C. § 101); *see also Viesti Assoc's., Inc. v. Pearson Educ., Inc.*, No. 11-cv-01687, 2014 WL 1053772, at *12 (D. Colo. Mar. 19, 2014) (quoting *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 382 (7th Cir. 2011)) ("[A] person holding a non-exclusive license is not entitled to complain about any alleged infringement of the copyright.").

Moreover, being a licensing agent implies that Trunk Archive extends licenses to third parties. Trunk Archive makes this argument in its Opposition: "the pleadings clearly demonstrate that Trunk Archive's exclusive rights include the right to issue licenses for the public display of the Star Wars Photographs . . . ." Opposition at 1. This indicates that Trunk Archive does not own the exclusive right to display the works because it is in the business of allocating that right to others.

Trunk Archive argues "it is clear that the 'exclusive right to license' transferred to Trunk Archive means the right to grant licenses for exploitation of any of the six statutorily created exclusive rights, including the right of public display" when the pleadings are construed in the light most favorable to Trunk Archive. Opposition at 3. Defendants do not dispute that this is a potential interpretation based on a favorable reading of the Complaint. Still, being an exclusive licensing agent cannot simply mean that Trunk Archive can sue any alleged infringer on behalf of the creator for any alleged violation of a Section 106 right. There must be something more to tie Trunk Archive to this case. *See Righthaven*, 716 F.3d at 1169 ("[T]he assignment of the bare right to sue for infringement, without the transfer of an associated exclusive right, is impermissible under the Copyright Act and does not confer standing to sue."). Without owning a Section 106 exclusive right, Trunk Archive cannot receive relief on its claim under the Copyright Act, and certainly not for an alleged violation of the right to publicly display a work.

**III.    Trunk Archive's pleadings do not permit recovery of a violation of the "right to license."**

A.    <u>The right to license is not an "exclusive right" in copyright.</u>

The "right to license" is not included in the "exhaustive" list of exclusive rights set forth in Section 106. *See DRK Photo*, 870 F.3d at 983. "If a right is not 'specified,' then it is not one of the exclusive rights granted by Congress." *Silvers*, 402 F.3d at 886-87. Because copyright infringement

8

requires a violation of one of these specifically enumerated exclusive rights, and because the "right to license" is not one of these exclusive rights, a violation of the right to license is not copyright infringement under the Copyright Act. *See* 17 U.S.C. § 201(d)(2); 17 U.S.C. § 501(a), (b); *see also Righthaven LLC v. Democratic Underground, LLC*, 791 F. Supp. 2d 968, 973 (D. Nev. 2011) ("One can only obtain a right to sue on a copyright if the party also obtains one of the exclusive rights in the copyright.").

  B. <u>Trunk Archive has not pled any violations of the exclusive right to distribute.</u>

As acknowledged in Defendants' Motion, the exclusive right to license might arguably be interpreted as the exclusive right to distribute found in Section 106(3). Motion at 3-4. Still, Trunk Archive disavows this interpretation: "the pleadings are silent as to the "right to distribute." Opposition at 3; *see also* Opposition at 4 (same). If "the exclusive right to license" is not the "right to distribute," then there is no argument that it is one of the defined exclusive rights in Section 106 required for standing to sue for copyright infringement.

Even if Trunk Archive's rights as the licensing agent are favorably interpreted to encompass the exclusive right to distribute, no allegations in the complaint constitute a violation of that right. Trunk Archive does not claim that Defendants sold, rented, leased, lent, transferred ownership, or transferred a file of any allegedly copyrighted work. *See* Complaint generally; Motion at 5 (analyzing what constitutes a violation of the exclusive right to distribute under 17 U.S.C. § 106(3). In its Opposition, Trunk Archive does not argue that it has pled a violation of the right to license or the right to distribute. Instead, the Complaint is directed to alleged violations of the right to publicly display the works.

C.  Trunk Archive has not pled any violation of the right to license.

Defendants maintain that a "right to license" does not provide standing for Trunk Archive's claim as pled. Even if this right was sufficient, Trunk Archive has not pled that Defendants allegedly violated this undefined right. Trunk Archive does not claim that Defendants offered a license, accepted a license, or otherwise entered into a license to anyone else regarding any rights in the works. Trunk Archive also does not allege that Defendants violated the scope of a license with Trunk Archive connected to these rights.

## CONCLUSION

Even if the allegations in Trunk Archive's Complaint are accepted as true, Trunk Archive lacks standing to assert a violation of the display right found in 17 U.S.C. § 106(5). Trunk Archive also has not pled facts that constitute a violation of the distribution right associated with the works. At most, Trunk Archive is the licensing agent for the copyrighted works created, registered, and owned by someone else. This position, however, does not confer on Trunk Archive the ability to sue for infringement of an exclusive right that it does not own, has not received, and that has already been granted (at least in part) to a third party. Trunk Archive cannot have standing through receipt of the "bare right to sue" without something more. As such, Defendants' Motion for Judgment on the Pleadings should be granted, and Trunk Archive's claim for copyright infringement should be dismissed with prejudice.

DATE: February 9, 2023

KIMBALL ANDERSON

*/s/ Robert E. Aycock*
Robert E. Aycock
William B. Chadwick
*Attorneys for Defendants*

10

## CERTIFICATE OF SERVICE

I certify that on February 9, 2023, I filed a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** via the Court's CM/ECF system, which directed service by email on all counsel of record.

/s/ Stephanie Hamilton