Robert E. Aycock (#8878)
Tanner G. Reber (#19056)
KIMBALL ANDERSON
649 E. South Temple, 2nd Floor
Salt Lake City, UT 84102
Phone: (801) 359-3333
robert@kimballanderson.com
tanner@kimballanderson.com

*Attorneys for Defendants*
*ComicBookMovie.com and Nathan Best*

---

### IN THE UNITED STATES DISTRICT
### COURT FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| GREAT BOWERY, d/b/a TRUNK ARCHIVE<br><br>    Plaintiff,<br><br>vs.<br><br>BEST LITTLE SITES, d/b/a<br>www.comicbookmovie.com; NATHAN BEST;<br>MARK CASSIDY; JOSHUA WILDING; and<br>DOES 1 through 10.<br><br>    Defendants. | **DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br>Case No. 2:21-cv-00567-DBP<br><br>District Judge: David Barlow<br><br>Magistrate Judge: Jared C. Bennett |

---

Defendant Best Little Sites, d/b/a www.comicbookmovie.com ("***CBM***"), Defendant Nathan Best ("***Best***"), Defendant Mark Cassidy ("***Cassidy***") and Defendant Joshua Wilding ("***Wilding***") (collectively, the "***Defendants***") hereby submit their Opposition to Plaintiff Great Bowery's, d/b/a Trunk Archive ("***Plaintiff***" or "***Trunk Archive***") Motion for Summary Judgment (the "***Motion***").

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................... 1

II.    RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS ..................... 2

III.   DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS ................... 2

IV.   ARGUMENT .......................................................................................................... 9

      a.  The Court Has Already Determined that Embedding is a Defense. ................................ 10

      i.   Plaintiff's Renewed Attack on Embedding Adds Nothing More to its Previously Rejected Arguments. ........................................................................................................................... 10

      ii.  The Motion Should Be Denied as it Relies on Facts Not Included in its SUMF. ............. 11

      b.  Defendants CBM and Best Are Not Vicariously Liable. .................................................. 12

      i.   Even If There Were Direct Infringement, Factual Disputes Exist As To Whether Defendants CBM And Best Are Vicariously Liable. .................................................................. 12

      ii.  CBM And Best Did Not Have The Right And Ability To Supervise All Content. ........... 14

      iii. CBM and Best Did Not Have A Direct Financial Interest In The Alleged Infringing Activity. ..................................................................................................................................... 15

      c.  Defendants' Counterclaim Should Not be Dismissed. ..................................................... 17

      d.  Defendants Are Not Liable for Creating Derivative Works. ............................................ 17

      i.   It is Disputed that Embedding Created An Unauthorized Derivative Work. ................... 18

      ii.  The Embedded Photographs Are Not An Unauthorized Derivative. ............................... 20

      e.  The Photographs Were Used In Accordance With Fair Use. ........................................... 21

      i.  Whether the Doctrine of Fair Use Applies Is Not An Undisputed Fact. ......................... 22

      ii.  The Purpose And Character Of The Use Weighs In Favor Of Fair Use. ......................... 23

      iii. The Nature Of The Copyrighted Work Weighs In Favor Of Defendants. ....................... 25

      iv. The Substantiality Of The Portions Used Weighs In Favor Of Fair Use. ........................ 26

      v.  The Effect On The Marketplace Weighs In Favor Of Fair Use. ....................................... 27

      f.  Plaintiff Has Not Established That Defendants' Defenses Should Fail. ........................... 28

      i.  Failure To State A Claim. ................................................................................................ 28

      ii.  No Damages. .................................................................................................................... 30

      iii. Public Policy. ................................................................................................................... 31

      iv. Failure To Mitigate. ........................................................................................................ 31

      v.  DMCA Safe Harbor ....................................................................................................... 31

vi.     Res Judicata. ................................................................................................... 31

vii.    Lack Of Actual Knowledge. ............................................................................. 31

viii.   Lack Of Material Contribution. ....................................................................... 32

ix.     Lack Of Intent. ................................................................................................. 32

x.      Expeditious Removal. ...................................................................................... 32

xi.     No DMCA Takedown Notification. ................................................................. 33

xii.    Embedding. ....................................................................................................... 33

xiii.   No Proximate Damages. .................................................................................. 33

xiv.    Bad Faith. .......................................................................................................... 33

xv.     Unjust Enrichment. .......................................................................................... 34

xvi.    Lack Of Malice. ................................................................................................ 34

xvii.   Unclean Hands. ................................................................................................ 34

xviii.  Good Faith. ....................................................................................................... 34

xix.    Infliction Of Own Harm. ................................................................................. 35

xx.     No Ability To Supervise Or Control. ............................................................. 35

xxi.    No Financial Benefit. ....................................................................................... 35

xxii.   Laches And Waiver. ......................................................................................... 35

xxiii.  Copyright Misuse. ........................................................................................... 35

xxiv.   First Amendment. ............................................................................................ 36

xxv.    Fair Use. ............................................................................................................ 36

xxvi.   Invalid Copyrights. ......................................................................................... 36

xxvii.  Speculative Damages. ..................................................................................... 36

xxviii. De Minimis Use. .............................................................................................. 36

g. STATUTORY DAMAGES SHOULD NOT BE AWARDED ........................................ 36

**V.    CONCLUSION** ..................................................................................................... 37

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Little Am. Ref. Co. v. Leyba*, 641 P.2d 112 (Utah 1982)…………….………………………….9

*Est. of Beauford v. Mesa County,* 35 F.4th 1248 (10th Cir. 2022)…………..……………….....9,10

*Anderson v. Liberty Lobby,* 477 U.S. 242 (1986)……………………………………………....10

*GeoMetWatch Corp. v. Behunin,* 38 F.4th 1183 (10th Cir. 2022)………………………………...10

*Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108 (10th Cir. 2007)………………..……………….10

*Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188 (S.D.N.Y., July 30, 2021)……………...11

*Bowers v. Reece & Realtors, Inc.*, Case No. 19-2094-JAR, 2020 WL 2992086 (D. Kan. 2020)…………………………………………………………………………………..12, 15

*Gershwin Pub. Corp. v. Columbia Artists Mgmt.*, Inc., 443 F.2d 1159 (2nd Cir. 1971)……..….12, 13

*WB Music Corp. v. Once and For All, Inc.*, Case No. 2:06-CB-282, 2008 WL 2381732 (D. Utah 2008)……………………………………………………………………………………14

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F.Supp 543 (N.D. Tex. 1997)……………….14

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764 (U.S. 2005)………..…….15

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)…………..………………16

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996)…..........…………………16

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)……..…………………………………16

*A&M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896 (N.D. Cal. 2000)……..……………….17

*Lewis Galoob Toys, Inc., v. Nintendo of America, Inc.*, 964 F.2d 965 (9th Cir. 1992)………..……..20

*Perfect 10, Inc.*, 508 F.3d 1146 (9th Cir. 2007)…………………………………….…..…..……..20, 24, 26

*Dun & Bradstreet Software Servs. V. Grace Consulting, Inc.*, 307 F.3d 197 (3rd Cir. 2002)....…20, 21

*Midway Mfg. Co. v. Artic International, Inc.*, 704 F.2d 1009 (7th Cir. 1983)…………..……….21

*Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir. 1988)…………………..21

*Greenberg v. Nat'l Geographic Soc'y.*, 244 F.3d 1244 (11th Cir. 2001)…………………………….21

*Jarvis v. K2 Inc.*, 486 F.3d 526 (9th Cir. 2007)…..…………………………………………………21

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (U.S. 1994)…………………………....……23, 27

*Werner v. Red Blue Media Inc.*, Case No. 2:20-CV-01024, 2021 WL 3560588 (C.D. Cal. 2021)….24

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009)………………………….24

*Philpot v. Media Research Center Inc.*, 279 F.Supp.3d 708 (E.D. Va. 2018)………...............…...24, 25

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000)……………...……………24, 32

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)……………….…………………………...26

*Batjac Prod. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223 (9th Cir. 1998)………………..26

*Tresona Multimedia, LLC v. Burbank High School Vocal Music Ass'n.*, 953 F.3d 638 (9th Cir. 2020)…………………………………………………………………………………………………..27

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)……………...……………..27

*Starz Entm't, LLC v. MGM Domestic Television Distrib.*, LLC, 39 F.4th 1236 (9th Cir. 2022)….29

*America West Bank Members, L.C. v. State*, 342 P.3d 224 (Utah 2014)……...…………………….30

*BC Technical, Inc. v. Ensil Int'l Corp.*, 464 Fed. App'x 689 (10th Cir. 2012)...…………………….30

Statutes

17 U.S.C. § 501…………………………………………...……………………………………….18

17 U.S.C. §106…………………………………………………………………………………….18

17 U.S.C. § 101…………………………………………………………………………………18, 19

17 U.S.C. § 107……………………………………………………………….....…22, 24, 26

17 U.S.C. § 507…………………………………………...…………………………………….29

17 U.S.C. § 504…………………………...……………………………..………………….30, 32, 33,

## I.      INTRODUCTION

Plaintiff's Motion must be denied for its failure to prove there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Most apparent is Plaintiff's disregard of the Court's Order Denying in Part and Granting in Part Plaintiff's Motion for Partial Judgment on the Pleadings (the "***Order***"). Dkt. 85. That Order recognized that an "embedding" defense is valid, "the court cannot find the CBM Defendants are barred from asserting the 'embedding' defense." Dkt. 85 at 14. Plaintiff includes as an undisputed fact in its Statement of Undisputed Material Facts ("***SUMF***"):

> that Star Wars Photographs contained in the Infringing Articles[1] 'were displayed on CBM's website by embedding the image and linking back to a third-party server that was not owned or controlled by CBM' and that the Star Wars Photographs 'are not and were not stored on servers belonging to or controlled by CBM or Nathan Best.

Dkt. 102 at 6-7. Nowhere in the Motion does Plaintiff dispute this fact. Dkt. 102. Because Plaintiff concedes that all Star Wars Photographs ("***Photographs***") were embedded and because the court has already recognized embedding as a valid defense to copyright infringement, Plaintiff's Motion must be denied. It must be further recognized that because embedding is a valid defense to copyright infringement there is nothing left to be tried under Plaintiff's Complaint. The Motion should be denied even if the embedding defense would not defeat all the issues raised because there exists independent factual disputes that when viewed in the light most favorable to the Defendants, and all reasonable inferences are drawn in their favor, that a reasonable jury would find for Defendants.[2]

---

[1] Although Defendants dispute the articles include infringing content, they will adopt Plaintiff's use of "Infringing Articles" for purposes of their Opposition.

[2] Until Plaintiff re-filed its Motion (*see* Order Dkt. 101) identifying the Photographs as embedded as an undisputed fact in its SUMF, it was uncertain whether Plaintiff disputed this fact. Had Defendants known Plaintiff would concede to this fact as undisputed, Defendants would have moved for summary judgment on this issue.

## II.     RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff set out the facts included in its SUMF section in paragraph form without numbering. In an attempt to better track what facts are disputed Defendants have created a table that is included in the Appendix as Exhibit R. The left column of this table contains Plaintiff's facts that Defendants object to and dispute. Defendants have numbered Plaintiff's facts to hopefully and more clearly identify what facts are in dispute. The right column contains Defendants' corresponding bases of objections and disputes.

Plaintiff's Motion should also be denied because it has failed to comply with DUCivR 56-1(b) and this Court's Order (Dkt. 101) as some of its arguments rely on "facts" that it did not include in its SUMF. Defendants will address these improper facts within its rebuttal arguments below.

## III.     DEFENDANTS' STATEMENT OF ADDITIONAL MATERIAL FACTS

1.      On or about March 13, 2019, Plaintiff's counsel sent a "Settlement Communication" to Best wherein Plaintiff alleged certain "Star Wars" photographs were found on CBM's Website and stated the matter could be resolved outside of court for $8,000.00 in total or "[i]f this matter is litigated, the demand amount will likely quadruple or more, and then you will likely also have to pay attorneys [sic] fees." Ex. A, Declaration of Nathan Best in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("**Best Decl.**") ¶ 8; Ex. J. The letter identified four photographs that were found on the Website. *Id*. These photographs are not included in the current action.

2.      On or about March 27, 2019, Best sent a response notifying Plaintiff counsel that he understood their letter to be a "Take Down Request" and that he had immediately removed all images referenced in Plaintiff's letter. Ex. A, Best Decl. ¶ 9; Ex. K. Best also notified that the images were not stored on CBM's servers but on 3rd party websites not owned or operated by Defendants. *Id*.

2

3.      On or about April 10, 2019, Plaintiff's counsel sent another "Settlement Communication" to Best wherein it alleged certain photographs were found on CBM's Website and stated the matter could be resolved outside of court for $12,000.00 or threatened for exponentially more plus "attorneys [sic] fees" if "litigated." Ex. L. This letter identified the four photographs from the March 13th letter, and also identified four additional photographs. *Id*. Among the four additional photographs were the "Holdo" photograph, the "DJ" photograph, and the "Skywalker" photograph which are all included in the current action. *Id*.

4.      On or about May 9, 2019, CBM filed a Declaratory Judgment Complaint in this Court, Case No. 2:19-CV-00319 (the "***First Case***"), seeking relief that it did not infringe Plaintiff's copyrights including the Holdo, DJ, and Skywalker photographs. *see* First Case Dkt 2.

5.      On or about July 12, 2019, Plaintiff in the First Case filed its Answer and Counterclaim, asserting infringement for the use of certain photographs including the Holdo, DJ, and Skywalker photographs. First Case Dkt. 7, Dkt. 7-1 Exhibit A at 5 (Holdo photograph), at 6 (DJ photograph) and at 9 (Skywalker photograph).

6.      Plaintiff filed its Complaint in this case on September 27, 2021, identifying the fifteen Infringing Articles on CBM's Website containing the Photographs. Dkt 2 pages 7-9. Included in these Photographs are the Holdo, DJ, and Skywalker photographs that are the same photographs Plaintiff included in its counterclaim in the First Case. *see* First Case Dkt. 7, Dkt. 7-1 Exhibit A at 5 (Holdo photograph), at 6 (DJ photograph) and at 9 (Skywalker photograph).

7.      Comicbookmovie.com's articles and content are all user-generated by its own community of readers, termed "Contributors." Ex. A, Best Decl. ¶ 5; Ex. G.

8.      Comicbookmovie.com does not charge for access to the website and the articles and

content are free to everyone. Ex. A, Best Decl. ¶ 23.

9.    Cassidy and Wilding are freelance journalists and users of CBM's Website that do not receive direct supervision or feedback from Best prior to publishing content. Ex. A, Best Decl. ¶ 10; Ex. B, Declaration of Mark Cassidy in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("***Cassidy Decl.***") ¶ 3-4; Ex. C, Declaration of Josh Wilding in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment ("***Wilding Decl.***") ¶ 3-4; *see also* Dkt 102-1 Exs. 19 and 20.

10.    On or about October 20, 2023, Best conducted a Google search for the Lightsaber and Millennium Falcon photographs at issue in this case. That search returned numerous websites, including Etsy.com, eBay.com, IMDB.com, IGN.com, YouTube, Twitter, Facebook, LinkedIn and more, that are currently using and monetizing them. Ex. A, Best Decl. ¶ 24, Exs. M and N.

11.    Users of Comicbookmovie.com can immediately publish or post their content on the website without Best's or CBM's prior approval or editing the content of their post. Ex. A, Best Decl. ¶ 5. Although a user can queue their article for a later postdated publication the queue is not used to approve or review the article before it is published. Ex. A, Best Decl. ¶ 5.

12.    Best's responsibilities do not include overseeing or supervising users or contributors. Dkt. 102-1 Ex. 37 No. 7. Best did not review any of the allegedly infringing articles prior to their publication on the website. Dkt. 102-1 Ex. 39 Nos. 3-18. Best does not have the absolute right to reject any content appearing on the Website prior to its publication. Dkt. 102-1 Ex. 39 No. 25.

13.    The article titled "STAR WARS: THE LAST JEDI Actress Laura Dern Shares New Image Of Vice Admiral Amilyn Holdo" shows that the Holdo photograph was used and displayed

by Laura Dern on The Ellen Show. Dkt. 102-1 Ex. 21. Plaintiff failed to produce any license agreement with Ms. Dern for this use and display. Ex. H Resp. Nos. 9.

14.     The article titled "STAR WARS: THE LAST JEDI's Mark Hamill Shares A Lovely Tribute To Carrie Fisher One Year After Her Passing" shows that the use of the Skywalker Photograph was used and displayed by Mark Hamill on Twitter. Dkt. 102-1 Ex. 23. Plaintiff failed to produce any license agreement with Mr. Hamill. Ex. H Resp. No. 11.

15.     Plaintiff allows Vanity Fair and Disney to publicly display the Photographs without Plaintiff's authorization and without Plaintiff receiving royalties. Ex. I Resp. Nos. 23-48.

16.     At the time Wilding and Cassidy published the Infringing Articles the Photographs were widely used/shared all over the internet including on Twitter, Instagram, and Google images. Ex. B, Cassidy Decl. ¶ 10; Ex. C, Wilding Decl. ¶ 17; Ex. P. The HTML code used by Cassidy and Wilding to embed the images could have come from any one of these sources. *Id*. Because of this widespread use in sharing, Cassidy and Wilding believed the images were free to use. *Id*.

17.     The purpose of articles published on CBM's Website is to "cover[] breaking news and provid[e] unique content about current Hollywood projects that bring characters and storylines to the big screen" and other related Hollywood and pop culture content. Ex. G CBM's "About" page; Ex. A, Best Decl. ¶ 17.

18.     The purpose of the Infringing Articles was to provide breaking news, social commentary, reporting, and unique content regarding soon to be released Star Wars films. Ex. B, Cassidy Decl. ¶ 23; and, Ex. C, Wilding Decl. ¶ 20.

19.     The purpose of including the links with the associated photographs in the Infringing Articles was to add a visual element to the content. Ex. B, Cassidy Decl. ¶ 24; Ex. C, Wilding Decl.

¶ 21. Their inclusions were not to act as a "draw" to attract readers to the site. *Id*. Rather, Cassidy and Wilding crafted interesting and eye-catching titles to draw readers to the substance and content of the articles rather than the photographs. *Id*.

20. Best is unaware of any evidence to show a correlation between the use of the Photographs in the Infringing Articles on CBM's Website and the monetization of CBM's Website. Ex. A, Best Decl. ¶ 18. Best believes that the literary content of the articles acts as the draw. *Id*.

21. Best is unaware of any evidence that would show a correlation between the Photographs and CBM's site views, page views, site revenue, or article revenue. Ex. A, Best Decl. ¶ 20. Linked and embedded photographs used in published articles on the website are not considered in the calculation of the article and website monetization. Ex. A, Best Decl. ¶ 21.

22. CBM's "Analytics Reports" provides where CBM's Website readers begin their viewing experience. Ex. U. This report shows that less than one percent of CBM's Website readers began their viewing experience on an Infringing Article. *Id*.

23. CBM has strict policies regarding the use of copyrighted material. Ex. A. Best Decl. ¶ 6; Ex. D. Any contributed content found to contain copyrighted material, including copyrighted photographs, is removed immediately. *Id*.

24. Defendant Best and CBM have made reasonable efforts to limit infringement on CBM's Website including:

- Enacting Copyright Policies which provide in part, "It is ComicBookMovie.com's policy, in appropriate circumstances and at its discretion, to disable and/or terminate the accounts of users who repeatedly infringe or are repeatedly charged with infringing the copyrights or other intellectual property rights of others. Ex. D.
- Enacting Terms of Service which provide in part, "if we reasonably believe that any Content is in breach of this Agreement or may cause harm to ComicBookMovie.com, our users, or third parties, we may remove or take down that Content in our discretion." Ex. A, Best Decl. ¶ 6; Ex. F.

- Complying with the DCMA Safe Harbor provisions (Motion we filed on DCMA) Allowing owners of copyrighted materials to notify CBM stating, "To contact CBM for removal of copyrighted images or to report plagiarism, CLICK HERE for a Contact Form." Ex. A, Best Decl. ¶ 7; Ex. F.

25.     Plaintiff's Complaint does not identify or provide any notice for a claim for unauthorized derivative work. Dkt. 2.

26.     In its Motion, Plaintiff states that "the evidence clearly demonstrates, the entirety of the unaltered Photographs was visible in the Infringing Articles." Dkt. 102 at 26 (emphasis added). Also, that "the use of the Photographs was not transformative in any material way" and "it is undisputed that complete versions of the Photographs were incorporated into the Infringing Articles on CBM Website." Dkt. 102 at 35-36.

27.     Plaintiff failed to provide any computation of its alleged damages or any evidence to support its claimed losses in response to Defendants' Interrogatory No. 2 that asked Plaintiff to "provide a full computation of the monetary amounts that Trunk Archive believes it is entitled to as a result of Defendants' alleged unauthorized use of the Star Wars Photographs" Ex. H Resp. No. 2.

28.     Plaintiff has not identified any missed additional licenses, any lost licensing fees, or evidence of the market for paid licensing being devalued. Ex. H Resp. Nos. 2-3. Plaintiff has failed to provide any evidence of actual damages or lost revenue from Defendants' actions. *Id*.

29.     At the time the Infringing Articles were published, Defendants were aware of the legal concept of what is called the "server test." Ex. A, Best Decl. ¶ 12; Ex. B, Cassidy Decl. ¶ 16; Ex. C, Wilding Decl. ¶ 13. Defendants understood that images which are "embedded" onto a webpage rather than "uploaded" onto a webpage would not constitute infringement under this test. *Id*. Defendants reasonably believed that using Hypertext Markup Language to retrieve images from a third-party

server rather than storing copies of the images on CBM's would not constitute copyright infringement. Ex. A, Best Decl. ¶ 14; Ex. B, Cassidy Decl. ¶ 17; Ex. C, Wilding Decl. ¶ 14.

30. Best relied on the server test and attempted to create an easy method for CBM's users to embed images rather than to upload images. Ex. A, Best Decl. ¶ 16.

31. Defendants understood that embedding images is a standard method for showing images on the internet that has been widely used for decades. Ex. A, Best Decl. ¶ 15; Ex. B, Cassidy Decl. ¶ 18; Ex. C, Wilding Decl. ¶ 15.

32. Best and CBM are unaware of any evidence that would show that website traffic increased or decreased with the publication or the removal of the subject photographs. Ex. A, Best Decl. ¶ 19; Ex. Q.

33. Defendants are unaware of any evidence produced or identified by Plaintiff to show that it has taken steps to protect itself, or the artists it represents, including Ms. Leibowitz, from any use it deems an infringement such as by employing paywalls, utilizing metadata tagging or adding digital watermarks. Dkt. 85 at 14.

34. On or about December 22, 2023, Best went to Vanity Fair's website and conducted a test to determine whether Vanity Fair has placed restrictions on its website, specifically on the Photographs at issue in this case, to prevent their images from being embedded. Ex. A, Best Decl. ¶ 22; Ex. O. Without publicly displaying the images, Best was able to copy the HTML code from the Vanity Fair site and embed them into a draft article demonstrating that Vanity Fair has not placed restrictions on its work. *Id.*

## IV.    ARGUMENT

There are distinct disputes of material fact in the record that should be resolved by a jury. The parties disagree, and questions of fact exist, at least as to 1) whether Defendants Cassidy and Wilding are liable as direct infringers; 2) whether Defendants CBM and Best are liable as vicarious infringers; 3) whether "embedded" images constitute copyright infringement; 4) whether Defendants can be liable for creating a derivative work; 5) whether Defendants uses of the Photographs constitute fair use; 6) whether Defendants' affirmative defenses fail; and 7) statutory damages. These genuine disputes depend on a fact-intensive analysis of the documents produced, interrogatory responses, the testimony of the parties[3], the actions of the parties, and other related records. As described herein, Defendants have provided substantial evidence as to every issue raised in Plaintiff's Motion. The Court should not weigh this evidence, however, because "[t]he jury is entrusted to resolve all relevant questions of fact presented to the court." *Little Am. Ref. Co. v. Leyba*, 641 P.2d 112, 114 (Utah 1982).

"A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa County,* 35 F.4th 1248, 1261 (10th Cir. 2022) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986)).   Summary judgement "requires [the Court] to construe the facts in the light most favorable to the nonmovant [Defendants] and to draw all reasonable inferences in [their] favor." *Id.* "To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *GeoMetWatch Corp. v. Behunin,* 38 F.4th 1183, 1200-01 (10th Cir. 2022). In reviewing

---

[3] Plaintiff chose not to take the deposition of any Defendant.

the facts, at summary judgment, the party who bears a burden of proof on an issue bears the burden of production rather than the burden of persuasion. *Riggs v. AirTran Airways, Inc.,* 497 F.3d 1108, 1115 (10th Cir. 2007).

Plaintiff's Motion has not met this high burden as there are considerable disputes as to the material facts that could lead reasonable jurors to different conclusion. As such, Defendant's Motion should be denied.

### a.   The Court Has Already Determined that Embedding is a Defense.

Plaintiff has not met its burden in proving defendants Cassidy and Wilding are liable as direct infringers as the alleged violation occurred through embedding and its Motion, on this point, relies on facts that it did not include, or identify, in its SUMF. The Motion should be denied because the Court has already ruled that embedding is a valid defense to copyright infringement and Plaintiff has not disputed the fact the Photographs were embedded. Dkt. 85 at 14; and Dkt. 102 at 6-7. Plaintiff includes in its SUMF that all Photographs at issue in this case were embedded. Dkt. 102 at 6-7. Therefore, Defendants Cassidy and Wilding are not liable as direct infringers. *Id.*

### i.   *Plaintiff's Renewed Attack on Embedding Adds Nothing More to its Previously Rejected Arguments.*

In section V(A) of its Motion, Plaintiff incorrectly contends that embedding is not a defense to a violation of the display right. Dkt. 102 at 17. This argument directly contradicts and ignores this Court's Order (Dkt. 85) that already denied Plaintiff's previous attempt in its Motion for Partial Judgment on the Pleadings (Dkt. 72) to prevent Defendants from asserting this defense. Dkt. 85. In that Order the Court stated, "if the Subject Images were not stored on CBM Defendants' servers or on servers that they controlled, then CBM Defendants have a possible defense to infringement." *Id*. at 11.

10

Plaintiff does not dispute and even asserts in its SUMF that the Photographs were not stored on Defendants' servers but were instead embedded onto the webpages. Dkt. 102 at 6-7.

Although the Court has already recognized the "embedding" defense, Plaintiff attempts to attack this defense's validity through arguments identical to the ones made in its previous motion for judgment on the pleadings. The Court provided in its Order that "without more, the court cannot find that CBM Defendants are barred from asserting the 'embedding' defense." Dkt. 85 at 14. Plaintiff's Motion provides <u>nothing</u> more to support its renewed argument. Instead, it uses nearly the exact argument from its Motion for Partial Judgment on the Pleadings (Dkt. 72) as it does here. It appears that Plaintiff simply copied and pasted its exact first argument with just a few minor grammatical changes. Compare Dkt. 72 at 4-8 with Dkt. 102 at 17-22. The only addition to its argument here is Plaintiff's reference to *Nicklen v. Sinclair Broad. Grp., Inc.*, 551 F. Supp. 3d 188 (S.D.N.Y., July 30, 2021). Dkt. 102. However, the Court in its Order (Dkt. 85) addressed *Nicklen* finding that "notwithstanding those decisions, the parties have not cited, and the court cannot find any appellate authority rejecting the Ninth Circuit's 'server' test." Dkt. 85 at 10. Therefore, it should be simply recognized that "embedding" is a valid defense and deny the Motion.

        *ii.   The Motion Should Be Denied as it Relies on Facts Not Included in its SUMF.*

Plaintiff's Motion should also be denied because its argument relies on facts that it failed to include in its SUMF. *See* Dkt. 85, Order requiring Plaintiff to comply with DUCivR 56-1(b)(3). Below are facts Plaintiff attempts to rely upon in its argument that it did not include in its SUMF:

1. "At issue in this case are fifteen Infringing Articles posted on the CBM Website which utilized copies of the Star Wars Photographs." Dkt. #102 at 11.

**Disputed**. CBM's servers do not store the embedded images, and so CBM did not utilize copies of the Photographs under the plain language of the Copyright Act. Ex. A, Best Decl. ¶ 12.

2. "Cassidy and Wilding have admitted that each of the Infringing Articles that they authored contained various iterations of the Star Wars Photographs and have also admitted that their actions 'caused a version of the image to be viewable from within th[e] article' on the CBM Website. *See* Exhibits 40-41" Dkt. #102 at 13.

**Disputed**. Plaintiff mischaracterizes defendant Cassidy's and Wilding's discovery responses. *See* Dkt. 102-1 Exs. 40-41. Further, embedded images interact with the server storing the images, in this case Vanity Fair's servers, to produce the exact image rather than "iterations" or "versions" of the image. *Id*. and Ex. B, Cassidy Decl. ¶ 22; Ex. C Wilding Decl. ¶ 19.

### b. Defendants CBM and Best Are Not Vicariously Liable.

Plaintiff cannot establish vicarious infringement against defendants CBM and Best because, as discussed above, defendants Cassidy and Wilding are not direct infringers. "In order to establish the right and ability to supervise the infringing activity, a plaintiff must also show a third party's direct infringement." *Bowers v. Reece & Realtors, Inc.*, Case No. 19-2094-JAR, 2020 WL 2992086, at 7 (D. Kan. 2020). Plaintiff's Motion must fail on this ground alone.

Even if there were a finding of direct infringement, numerous factual disputes exist as to CBM's and Best's ability to have supervised and/or received a direct financial benefit from the alleged direct infringement. "One may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Pub. Corp. v. Columbia Artists Mgmt.*, Inc., 443 F.2d 1159, 1162 (2nd Cir. 1971). Plaintiff has not met its burden in proving this two-prong test for vicarious liability by undisputed fact.

### i. Even If There Were Direct Infringement, Factual Disputes Exist As To Whether Defendants CBM And Best Are Vicariously Liable.

Some of the facts relied upon by Plaintiff to support its argument that CBM and Best are vicariously liable were not included in its SUMF. Instead, Plaintiff makes unsupported claims without

citing to the Appendix as required by DUCivR 56-1 and bases its argument on speculation. Plaintiff's

Motion should fail on these grounds alone. Plaintiff's unsupported facts include:

1. "It is clear that the availability of the Star Wars Photographs in the Infringing Articles were meant to act as a 'draw' for Internet users to visit the CBM Website." Dkt. 102 at 15.

2. "Not only would the views of the Infringing Articles themselves generate revenues, but once Internet users were drawn to the CBM Website, it is likely that they would view additional content on the Website resulting in even more revenue flowing directly into CBM's coffers." Dkt. 102 at 16.

3. "Because Defendant Best is compensated directly from the revenues generated by the Website (see Exhibit 38, RFA No. 2) he also stood to benefit financially from the successful monetization of the Infringing Articles." Dkt. #102 at 16.

**Disputed**. Plaintiff does not provide a citation or identify any facts or evidence to support these

statements. The Photographs did not act as a draw to the Infringing Articles, evidenced by the data on

the Analytics Reports which shows less than one percent of CBM's Website visitors entered or began

their viewing experience on an Infringing Article. Ex. Q. Defendants are unaware of any evidence that

would show the Photographs acted as a "draw" and the authors did not intend for the Photographs to

act as a "draw." Ex. A, Best Decl. ¶ 18; Ex. B, Cassidy Decl. ¶ 24; Ex. C, Wilding Decl. ¶ 21; Ex. U.

Defendants are unaware of any evidence that would show that website traffic increased or decreased

with the publication or the removal of the subject photographs; there is no correlation between the

use of the Photographs in the Infringing Articles and monetization of CBM's Website; and embedded

photographs in published articles are not considered in the calculation website monetization. Ex. A,

Best Decl. ¶¶ 18-21.

By not including these material facts in its SUMF, Plaintiff concedes that these facts are

disputed, and its Motion should be denied.

ii.   *CBM And Best Did Not Have The Right And Ability To Supervise All Content.*

Plaintiff's undisputed facts and arguments do not establish that CBM and Best have the right and ability to supervise all content. "The test for right and ability to control is highly fact-specific, and courts have used a variety of factors to evaluate that prong." *WB Music Corp. v. Once and For All, Inc.*, Case No. 2:06-CB-282, 2008 WL 2381732, at 4 (D. Utah 2008). In *WB Music Corp*, the defendant, who managed a bar at a club, acknowledged he had some control over the music played at the club. *Id*. Even so, the defendant was found not to have the right and ability to control the infringing music because the defendant did not supervise the DJ's responsible for playing the songs. *id*. Similarly, in *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F.Supp 543, 554 (N.D. Tex. 1997) the defendant "had the right, authority and ability to control the operations of the Netpics website" but was found not to have the necessary "supervision over the actual infringing activities."

Here, CBM and Best do not have the ability to view all content that is posted on the website before it is published. Ex. A, Best Decl. ¶ 5; Dkt. 102-1 Ex. 37 No. 7. Defendants CBM and Best do not directly supervise or proofread the work of the freelance users Cassidy and Wilding. Ex. A, Best Decl. ¶ 10. Defendant Best did not review any of the allegedly infringing articles prior to their publication on the website. Dkt. 102-1 Ex. 39 Nos. 3-18. As such, Defendants Best and CBM do not have the requisite supervision to be held vicariously liable.

Although CBM and Best are not capable of preventing all infringing activity on the website because users can publish without authorization or approval from them, CBM and Best have made reasonable efforts to prevent infringement. Ex. A, Best Decl. ¶ 4. Here, Plaintiff has not shown that CBM and Best "decline[d] the right to stop or limit" the alleged infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2767 (U.S. 2005). CBM has enacted strict

policies regarding copyrighted images or content. Ex. A, Best Decl. ¶ 6; Ex. D. Any content found

to contain copyrighted content is immediately removed. *Id*. These policies were enforced in this

case as the accused links were immediately removed upon notice. Ex. A, Best Decl. ¶ 9.

      *iii.   CBM and Best Did Not Have A Direct Financial Interest In The Alleged*
            *Infringing Activity.*

      Plaintiff's vicarious liability claim fails as it has not identified any undisputed facts that

show "a causal relationship between the infringing activity and any financial benefit" to CBM and

Best. *Bowers* Case No. 19-2094-JAR, 2020. Plaintiff's argument is at best based on its speculation

that Cassidy's and Wilding's articles generate revenue because of the alleged use of the Photographs

and not on the literary content of the articles. There is no evidence to show a correlation between

the alleged infringing photographs on CBM's Website and the monetization of CBM's Website.

Best Decl. ¶ 18. Defendants' evidence shows that it is the literary content of the articles themselves

which generate revenue rather than the images. Ex. B, Cassidy Decl. ¶ 4; Ex. C, Wilding Decl. ¶

21; Dkt. 102-1 Ex. 36. Plaintiff's mere speculation that revenue generated from the Infringing

Articles is directly related to Photographs is insufficient to prove CBM and Best have a direct

financial interest in the infringing activity.

      A causal relationship between the infringing activity and the financial benefit exists "where

the availability of infringing material 'acts as a draw for customers.'" *A&M Records, Inc. v.*

*Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) *citing Fonovisa, Inc. v. Cherry Auction, Inc.*, 76

F.3d 259, 263 (9th Cir. 1996). Plaintiff has not cited to or provided any evidence in its SUMF that

the Photographs acted as a draw for customers. Dkt. 102 at 15. *See* argument above IV(c)(i).

      The Ninth Circuit case *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004), is instructive

on determining whether the infringing activity acts as a draw for customers. In that case the

defendant made infringing copies of plaintiff's fictional short stories and uploaded them to servers accessible to America Online, Inc.'s (AOL) subscribers. *Id*. at 1075. The court inquired "whether the infringing activity constitute[d] a draw for subscribers, not just an added benefit." *Id*. at 1079. Because there was no evidence showing an increase in subscriptions due to the infringement, or evidence showing a loss in subscriptions after the destruction of the infringement, "no jury could reasonably conclude that AOL received a direct financial benefit from providing access to the infringing material." *Id*.  In this case, Plaintiff merely relies on speculation. The evidence shows no correlation that website traffic, site views, page views, site revenue, or article revenue increased or decreased as a result of the Photographs inclusion or removal. Ex. A, Best Decl. ¶ 19-20; Ex. U; and Dkt. 102-1 Ex. 36.

This case is not similar to the case of *Fonovisa*, cited by in the Motion*,* where a financial benefit was found because customers went to the auction swap meet specifically to purchase pirated music. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). Or in *Napster*, where "virtually all" of the draw for users resulted from *Napster* providing copyright infringing music. *A&M Records, Inc. v. Napster, Inc.*, 114 F.Supp.2d 896, 902 (N.D. Cal. 2000). This case is more like *Ellison*. Plaintiff has mistaken the draw of the non-infringing literary content of the articles with the Photographs. CBM's users come to the website for its breaking news, social commentary, reporting, and unique content regarding superhero movies, sci-fi movies, comics, and other related Hollywood and pop culture content. Ex. A, Best Decl. ¶ 17. Ex. B, Cassidy Decl. ¶ 23; Ex. C Wilding Decl. ¶ 20. The Photographs played no role in attracting internet users to CBM's website. Ex. A, Best Decl.¶ 18; and Dkt. 102-1 Ex. 36.

Plaintiff has cited no "undisputed fact" that the Photographs had any impact on the appeal

of the articles. Instead, Cassidy and Wilding both used catchy titles to draw readers to the substance of the articles. Ex. B, Cassidy Decl. ¶ 24; Ex. C Wilding Decl. ¶ 21. For example, the article STAR WARS: THE RISE OF SKYWALKER's Oscar Isaac Blames "Disney Overlords" For No Poe/Finn Romance, provides commentary on quotes made by the Star Wars actor Oscar Issac regarding the relationship of two Star Wars characters. Dkt. 102-1 Ex. 32. The image played no role in the substance of the article and could have been replaced with various images. *Id*. The article STAR WARS: THE RISE OF SKYWALKER Remains #1 At The Box Office As It Passes $900M Worldwide, discusses the financial success of the Star Wars film. Dkt. 102-1 Ex. 33. Arguably, the title is the draw rather than the image and the jury should be afforded the opportunity to decide. The article Luke Skywalker's Big STAR WARS: THE RISE OF SKYWALKER Scene Was The Result Of Reshoots, discusses some of the production issues and edits that took place in the making of the movie. Dkt. 102-1 Ex. 34. Again, the photograph used was irrelevant as the substance of the article was the sole draw for readers. Thus, it cannot be shown that CBM and Best received a direct financial benefit from the allegedly infringing content.

### c. Defendants' Counterclaim Should Not be Dismissed.

For the same reasons in Section IV(b) that the Court has recognized embedding as a defense to copyright infringement, Plaintiff's Motion on this issue should also be denied.

### d. Defendants Are Not Liable for Creating Derivative Works.

Plaintiff's Motion as to derivative works should be denied because Plaintiff failed to plead this claim in its Complaint. Dkt. 2. The only act of infringement plead in the Complaint is for the right to "display." Dkt. 2 at ¶¶ 57-59, 60-67. In paragraph 80 of its Complaint, Plaintiff stated, "Defendants have directly, vicariously, contributorily and/or by inducement willfully infringed the copyrights to

the Star Wars Photographs <u>by causing them to be displayed</u> as part of the Infringing Article on the

Website without authorization in violation of 17 U.S.C. § 501 *et seq*." Dkt. 2 (emphasis added). 17

U.S.C. §106 sets forth the "exclusive rights in copyrighted works" that include, among others, the

rights "(2) to prepare derivative works," and "(5) … to display." Plaintiff's Motion should be denied

for failure to plead a claim for derivative works. 17 U.S.C. §106 (2 and 5). Plaintiff failed to identify

or provide notice that it believed any Defendants had violated its right to "prepare derivative

works." Plaintiff should not now be allowed to amend its Complaint to include a claim for derivative

infringement in its Motion. The time to amend pleadings and to conduct fact discovery has passed

and the Motion should be denied on this ground.

Even had Plaintiff properly plead a claim for derivative works, embedding the HTML code

does not create a derivative work. As 17 U.S.C. § 101 sets forth, "[a] 'derivative work' is a work based

upon one or more preexisting works, such as a translation, musical arrangement, dramatization,

fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation,

or any other form in which a work may be recast, transformed, or adapted. A work consisting of

editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an

original work of authorship, is a 'derivative work'." 17 U.S.C. § 101. By this definition alone,

embedded images would not constitute a derivative work.

i. *It is Disputed that Embedding Created An Unauthorized Derivative Work.*

Plaintiff did not include or identify any facts in its SUMF that support its derivative works

claim. Plaintiff merely attempts to make this argument by its own accord without citing to the

Appendix as required by DUCivR 56-1. Plaintiff's Motion should fail on this ground alone. Plaintiff's

unsupported facts not cited in its SUMF include:

18

1. "the Star Wars Photographs were clearly used by Defendants to illustrate the Infringing Articles. *See* Exhibits 21-35" Dkt. 102 at 24.

**Disputed**. Reference to the Infringing Articles themselves does nothing to prove or show Defendants intentions or how Defendants maintain the Photographs used had no illustrative purpose and could have been replaced with other photographs. Ex. B Cassidy Decl. ¶ 24; Ex. C, Wilding Decl. 21.

2. "the Infringing Articles themselves constitute unauthorized derivative works because they recast the Star Wars Photographs without authorization as a means of illustration." Dkt 102 at 25.

**Disputed**. Plaintiff provides no reference to support or explain how Defendants "recast, transformed, or adapted" or were a "means of illustration." The Photographs were embedded HTML code providing the exact images. Ex. B, Cassidy Decl. ¶ 22; Ex. C, Wilding Decl. ¶ 19. From its other arguments in support of its non-derivative claims, Plaintiff agrees that the Photographs were not altered or "recast" arguing that "as the evidence clearly demonstrates, the entirety of the unaltered [] Photographs was visible in the Infringing Articles." Dkt. 102 at 26.

Plaintiff's argument that even if embedding is a defense to direct infringement the use would still constitute an unauthorized derivative is incorrect.  "A derivative work must incorporate a protected work in some concrete or permanent form." *Lewis Galoob Toys, Inc., v. Nintendo of America, Inc.*, 964 F.2d 965, 969 (9th Cir. 1992). *Perfect 10* expands upon this stating, "the claimant must be able to claim infringement of its reproduction right in order to claim infringement of its right to prepare derivative works*." Perfect 10, Inc.*, 508 F.3d at 1161. In *Perfect 10*, Perfect 10 was not able to succeed "in showing that a cached webpage that in-line links to full-size infringing images violates such rights." *Id*. at 1162. "It is the website publisher's computer, rather than Google's computer, that stores and displays the infringing image." *id*. Similarly, Defendant's embedding defense would defeat this claim. Plaintiff cannot show Defendants in-line links to the full-size Photographs stored on a third-party server

and not Defendant's server infringes Plaintiff's reproduction rights.

*ii.   The Embedded Photographs Are Not An Unauthorized Derivative.*

By definition, a derivative work is "based upon a preexisting work" and is "recast, transformed, or adapted." 17 U.S.C § 101. Plaintiff does not dispute that "the <u>entirety of the unaltered</u> [] Photographs was visible in the Infringing Articles." Dkt. 102 at 26, emphasis added. As such, the Photographs were not "based" upon a preexisting work, as they were the exact work. The Photographs were not recast, transformed, or adapted, as they were left in their "unaltered" state. *Id*.

To constitute a derivative work, some alteration must be made to the preexisting work. Throughout its Motion, Plaintiff states that Defendants did not alter or transform the photographs but that "as the evidence clearly demonstrates, the entirety of the unaltered [] Photographs was visible in the Infringing Articles." Dkt. 102 page 26. This is because Defendants copied the HTML code and not the Photograph. This is a factor found in all derivative cases. In a 3rd Circuit case, the defendant's modification of a copy of plaintiff's software, including fixing bugs and adding features, created an infringing derivative work. *Dun & Bradstreet Software Servs. V. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3rd Cir. 2002). In a 7th Circuit case, the defendant's addition of circuit boards created a sped-up video game that was a substantially different product from the original game and was thus a derivative work. *Midway Mfg. Co. v. Artic International, Inc.*, 704 F.2d 1009, 1014 (7th Cir. 1983). In a 9th Circuit case, a derivative work was created when the appellant purchased art prints, encased them in a black plastic border, glued them onto ceramic tiles and then sold the resulting products. *Mirage Editions, Inc. v. Albuquerque A.R.T. Co.*, 856 F.2d 1341 (9th Cir. 1988). Even Plaintiff surely recognizes the alteration requirement as Plaintiff cites *Greenberg v. Nat'l Geographic Soc'y.*, 244 F.3d at 1274 (11th Cir. 2001) where magazine covers were found to be unauthorized derivatives when

morphed into a moving visual sequence, and also *Jarvis v. K2 Inc.*, 486 F.3d 526, 527 (9th Cir. 2007), where infringing ads were combined with additional graphics, slogans, and photos.

Notably, in *Jarvis*, images used in college advertisements that transformed original images into new promotional posters were found to be derivative works. *Jarvis,* 486 F.3d at 527. The significant distinction between the case at hand and *Jarvis*, is the transformation of the original images. In *Jarvis*, "the ads shrank, expanded, distorted, overlaid and otherwise edited the original images, while also combining them with photos taken by other photographers, adding graphics, the K2 logo and marketing slogans." *Id*. at 531. The ads also placed logos over the images, overlaid slogans, added frames, changed the color, added additional drawings, and made various other changes to the original images. *Id*. at 532. "The ads did not simply compile or collect Jarvis' images, but rather altered them in various ways and fused them with other images and artistic elements into new works." *Id*. In this case, the exact Photographs are embedded onto the webpages by HTML coding without alteration from its source.

### e.   The Photographs Were Used In Accordance With Fair Use.

Defendants use of the Photographs was used in accordance with the doctrine of fair use. Works used for purposes such as "criticism, comment, news reporting, teaching, scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The factors to consider in determining whether fair use applies is (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Under this standard, Defendants defense prevail.

*i.   Whether the Doctrine of Fair Use Applies Is Not An Undisputed Fact.*

Plaintiff's argument against Defendant's fair use defense relies on facts not identified or cited in its SUMF as required by DUCivR 56-1. Plaintiff's Motion should be denied for failure to properly include these facts in its SUMF. These include:

1. "Defendants clearly sought to use the Star Wars Photographs to monetize the CBM Website." Dkt. 102 at 35.

**Disputed**. The content of the articles is the draw to the readers and is what generates the advertising revenue, not the images. Ex. A, Best Decl. ¶ 18-21; Ex. B, Cassidy Decl. ¶ 24; and, Ex. C, Wilding Decl. ¶ 21.

2. "The Star Wars Photographs were used solely for illustrative purposes without adding new information, new aesthetics, new insights and new understandings." Dkt. 102 at 35.

**Disputed**. The Photographs were used in connection with news-worthy articles and reporting which provided speculation, theories, and insights to CBM's users/readers. Ex. A, Best Decl. ¶ 17; Ex. B, Cassidy Decl. ¶ 23; and, Ex. C, Wilding Decl. ¶ 21.

3. "If this practice of Internet publications using photographs without licensing were to become widespread, it is intuitive that the market for such images would diminish correspondingly." Dkt. 102 at 37.

**Disputed**. Plaintiff has provided no evidence of diminished marketing or licensing due to Defendants alleged acts. Ex. H, Plaintiff's Resp. Nos. 2 and 3. Further, "embedding redirects a user to the source of the content—in this case, an image hosted by a third-party server." Dkt. 85 at 13. The copyright holder could still seek relief from that server. In no way has the holder "surrender[ed] control over how, when, and by whom their work is subsequently shown." *Id*. To guard against infringement, the holder could take down the image or employ restrictions such as paywalls. Similarly, the holder

could utilize "metadata tagging or visible digital watermarks to provide better protection." *Id*, at 13-14 (citations omitted).

Without undisputed facts to support these claims, and where material facts remain in question as to whether fair use applies, Plaintiff's Motion cannot survive.

> ii.   *The Purpose And Character Of The Use Weighs In Favor Of Fair Use.*

Under the first fair use factor, the purpose and character of the use, "the enquiry focuses on whether the new work merely supersedes the objects of the original creation, or whether and to what extent it is 'transformative,' altering the original with new expression, meaning, or message. The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 569 (U.S. 1994). The reason, the more transformative a work the more beneficial the work is to furthering copyright's purpose in promoting science and the arts. *Id*. at 579. A work is transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Id*.

News reporting is an example of fair use expressly listed in the fair use statute. 17 U.S.C. § 107. "The purpose of news reporting is weighed in light of the degree of transformation and commercial nature of its use." *Werner v. Red Blue Media Inc.*, Case No. 2:20-CV-01024, 2021 WL 3560588, at 3 (C.D. Cal. 2021). The use of copyrighted work "can be transformative in function or purpose without altering or actually adding to the original work. *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009). The court in *Perfect 10* held Google's use of copyrighted images in the thumbnail search index was "highly transformative" even though the images themselves were not altered, in that the use served a different function than the images served. *Perfect 10, Inc.*,

508 F.3d at 1165. In *Philpot v. Media Research Center Inc.*, 279 F.Supp.3d 708, 716 (E.D. Va. 2018), the defendants use of two high profile musicians' photographs in the defendant's articles were found transformative for providing a social benefit to readers by discussing the musician's political views. In *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 22-23 (1st Cir. 2000) the republication of photographs taken from a modeling portfolio in a newspaper were found transformative because the photographs informed while also serving an entertainment function.

Here, the purpose of the Photographs is transformative from their original purpose. Trunk Archive's intended purpose is to monetize the Photographs by obtaining licensing fees. Dkt. 102 at 37. The Photographs were added to Defendant's Cassidy and Wildings articles for news, informative, and entertainment function. Ex. A, Best Decl. ¶ 17; Ex. B, Cassidy Decl. ¶ 24; and, Ex. C, Wilding Decl. ¶ 20. Each Infringing Article provides news-worthy content with social commentary, insights, speculation, and facts, about the Star Wars universe, its actors, and its upcoming films. For example, the article STAR WARS: THE LAST JEDI Actress Laura Dern Shares New Image Of Vice Admiral Amilyn Holdo, referenced by Plaintiff, discusses the Star Wars actress' interview on the Ellen Show. Exhibit 21. The purpose of the article is to inform readers of the interview and any spoilers that could be derived from the interview. Ex. 21. Also, this article used the embedded link associated with the same photograph that Ms. Dern displayed on the Ellen Show.

Another example, the article STAR WARS: THE LAST Jedi International TV Spot Features Benicio Del Toro As The Mysterious DJ arguably provides readers with insight into another Star Wars character that would be debuted in the new movie. Clearly the purpose of each Infringing Article goes beyond the purpose of the Photograph alone. At a minimum, the jury should be provided the opportunity to weigh this competing evidence.

The purpose and character of the use weighs heavily in favor of Defendants especially when comparing its transformative value versus its commercial nature. This case follows *Philpot* which determined the defendant's use of the copyrighted photographs in defendant's online news articles was not commercial because the publisher did not charge readers for access to the articles nor were the photographs sold to other parties. *Philpot,* 279 F.Supp.3d at 717. "At most, defendant's use of the Photographs might be considered commercial only insofar as defendant received very small amounts of revenue ($26.57) through advertisements on the webpages associated with the articles and may have received minor donations ($50) through links on the webpages associated with the articles." *Id*.

Similarly in this case, Defendants do not charge internet users for access to the CBM Website, and the Infringing Articles are available for free to anyone accessing the internet. Ex. A, Best Decl. 23. The estimated revenue generated from the advertisements on the Infringing Articles has a median value of just $77.80. Dkt. 102-1 Ex. 36. Furthermore, Plaintiff has not identified any portion of this amount attributable to the embedded Photograph. Because the transformative nature of the Infringing Articles far exceeds its commercial nature, the first factor of fair use must weigh in favor of Defendants.

### iii.   The Nature Of The Copyrighted Work Weighs In Favor Of Defendants.

Although the Photographs may be considered creative works in nature, it is undisputed that the Photographs had been previously published by Vanity Fair. Exhibits 15-16. "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). Once a work is published in any medium, the copyright holders right of first publication is exhausted. *Batjac Prod. Inc. v. GoodTimes Home Video Corp.*, 160 F.3d 1223, 1235 (9th Cir. 1998). It was found in *Perfect 10* that "[o]nce Perfect 10 has exploited this commercially valuable right of first publication by putting its images on the Internet

for paid subscribers, Perfect 10 is no longer entitled to the enhanced protection available for an unpublished work." *Perfect 10*, 508 F.3d 1146, at 1167. In *Kelly,* because the photos in question had already been posted on the internet the second fair use factor only weighed "slightly" in favor of the photographer. *Kelly*, 336 F.3d at 820.

Here, Ms. Leibowitz before Plaintiff had any rights to the Photographs, not only exhausted the right of first publication when the images were used in Vanity Fair, Plaintiff has since then allowed for the widespread dissemination of the Photographs across the internet. Ex. I, Resp. Nos. 23-48; Ex. A, Best Decl. ¶ 24; Ex. B, Cassidy Decl. ¶ 20; Wilding Decl. ¶ 17; Exs. Q, R, and T. A simple Google search for any of the Photographs will pull up hundreds of results. *Id*. Plaintiff's photos appear on sites such as Etsy.com, eBay.com, IMDB.com, IGN.com, YouTube, Twitter, Facebook, LinkedIn, and more. Ex. A, Best Decl. ¶ 24. Because the Photographs had already been published and Plaintiff has allowed for their widespread dissemination, this factor should weigh in favor of Defendants.

> *iv. The Substantiality Of The Portions Used Weighs In Favor Of Fair Use.*

"The third § 107 factor asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' are reasonable in relation to the copying's purpose." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 570 (U.S. 1994). The question to ask is whether the Infringing Articles took "no more than was necessary." *Id*. at 573. If the secondary user only copies as much as necessary for its intended use, then this factor will not weigh against it. *Kelly*, 336 F.3d at 820. Cassidy and Wilding did not copy and display the actual images in the Infringing Articles. Dkt. 102 at 6-7. They only used the associated HTML code. *Id*.

Further, this factor overlaps with the first factor, comparing the substantiality of its use to its purpose. "As the Supreme Court has explained in discussing both parody and news reporting, 'context

is everything, and the question of fairness asks what else the [copier] did besides go to the heart of the original. *Tresona Multimedia, LLC v. Burbank High School Vocal Music Ass'n.*, 953 F.3d 638, 650 (9th Cir. 2020) citing *Campbell*, 510 U.S. at 589. "Even entire verbatim reproductions are justifiable where the purpose of the work differs enough from the original." *Tresona Multimedia, LLC*, 953 F.3d at 638 citing *Mattel, Inc. v. Walking Mountain Prods*., 353 F.3d 792, 803 n.8 (9th Cir. 2003). This factor weighs in favor of fair use.

### v.   The Effect On The Marketplace Weighs In Favor Of Fair Use.

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). Plaintiff argues, "Trunk Archive's business depends on its ability to convince publications to pay a licensing fee to use its photographs" and that "[i]f this practice of Internet publications using photographs without licensing were to become widespread, it is intuitive that the market for such images would diminish correspondingly." Dkt. 102 at 37." Dkt. 102 at 37. Again, Plaintiff failed to identify these facts in its SUMF or provide any citation to supporting evidence. This failure alone renders this factor in Defendants' favor. Even if these statements were undisputed, Defendants' informative news articles do not infringe on Plaintiff's ability to obtain licensing fees.

Plaintiff's concern for the effect on the market is troubling as Plaintiff has allowed for the widespread dissemination of the Photographs at issue in this case. In response to Defendants' Request for Admissions, Plaintiff admitted that various Photographs were publicly displayed by Vanity Fair without Plaintiff's authorization. Ex. I, Resp. Nos. 34, 41, and 42. Plaintiff also admits various other Photographs were publicly displayed by Disney without Plaintiff's authorization. Ex. I, Resp. Nos. 23-48. And as previously noted, hundreds of these same Photographs can be found on websites such as

Etsy.com, eBay.com, IMDB.com, IGN.com, YouTube, Twitter, Facebook, LinkedIn, and more. Ex. A, Best Decl. ¶ 24; Exs. Q and R.[4]

Further, as the Court has previously found, Plaintiff has the full ability to protect its work but has taken no steps in doing so. *See* Dkt. 85 at 13-14. To guard against infringement, Trunk Archive could simply take down the images or employ restrictions such as paywalls or utilize metadata tagging or place visible digital watermarks over the images to protect its work. *Id*. Because Defendants embedded the images from a third-party server, Plaintiff could also seek relief from that server. *Id*. "In no way has the holder 'surrender[ed] control over how, when, and by whom their work is subsequently shown.'" *Id*. Because Plaintiff may protect its work, Defendants' use does not add to market harm. Thus, this fourth factor should weigh in favor of Defendants.

In conclusion, all four of the fair use factors weigh in favor of a finding of fair use.

### f.   Plaintiff Has Not Established That Defendants' Defenses Should Fail.

#### i.   *Failure To State A Claim.*

Plaintiff's only basis that this defense should be dismissed is a reliance upon its argument that the embedding defense should be ignored. Dkt. 102 at 26. Embedding has already been found to be an available defense to Defendants. Dkt. 85. Because Plaintiff has admitted in its SUMF that all the subject Photographs in the Infringing Articles were embedded, Plaintiff is left without a claim of infringement and both its Motion and Complaint should be dismissed.

Also, Plaintiff's claims of infringement for at least the first three Infringing Articles, published more than four years before it filed its Complaint, should be dismissed as barred by the statute of

---

[4] Plaintiff's dispute with Defendants maybe that it does not recognize or consider Defendants website and news reporting as valid on the same level as news outlets it does recognize and value and that it has allowed to use the Photographs.

limitations. 17 U.S.C. § 507(b) provides "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." The "discovery rule" applies to claims of copyright infringement as an exception to the three-year statute of limitations. *Starz Entm't, LLC v. MGM Domestic Television Distrib.*, LLC, 39 F.4th 1236, 1246 (9th Cir. 2022). Thus, "the three-year limitations period begins only when the copyright holder knows or <u>should know</u> of the infringing act. *Id*. (emphasis added). Plaintiff should have known of at least the first three Infringing Articles in 2017 when the Infringing Articles were published. Plaintiff did not file its Complaint against these first three Infringing Articles that used the Holdo, DJ, and Skywalker Photographs ("***Barred Photographs***") until September 27, 2021. Dkt. 2 and 102 at 5. The Holdo photograph was found in the first Infringing Article "STAR WARS: THE LAST JEDI Actress Laura Dern Shares New Image Of Vice Admiral Amilyn Holdo" dated October 18, 2017. Dkt. 102 at 5. The DJ photograph was found in an article titled "STAR WARS: THE LAST JEDI International TV Spot Features Benicio Del Toro As The Mysterious DJ" dated November 20, 2017. Dkt. 102 at 5. And the Skywalker photograph was found in an article titled "STAR WARS: THE LAST JED's Mark Hamill Shares A Lovely Tribute To Carrie Fisher One Year After Her Passing" dated December 27, 2017. Dkt. 102 at 5.

On April 10, 2019, Plaintiff's Counsel sent Best a "Settlement Communication" identifying the Barred Photographs as being used in connection with content on CBM's Website, which led to the First Case being filed seeking declaratory judgment for no infringement related to the Barred Photographs. First Case Dkt. 7. In the First Case, Plaintiff filed an answer and counterclaim wherein it claimed infringement of the Barred Photographs. *Id*. Although Plaintiff knew of the alleged uses of these three Barred Photographs in April 2019, Plaintiff did not include the first three Infringing Articles

as part of its counterclaim in the First Case, but instead, waited until two years later to include the first three Infringing Articles in the present case. Dkt 2.

Another example of a claim made by Plaintiff that it cannot and has not supported is its claim for willful infringement. *see America West Bank Members, L.C. v. State*, 342 P.3d 224, 230 (Utah 2014). The Complaint alleges that Defendants infringement was willful. "The prima facie case for willful infringement requires a showing of specific intent to violate copyright law." *BC Technical, Inc. v. Ensil Int'l Corp.*, 464 Fed. App'x 689, 696 (10th Cir. 2012). Infringement is not willful if the infringers were not aware of or had no reason to believe the acts constituted copyright infringement. 17 U.S.C. § 504(c)(2). Defendants had no reason to believe embedding images into the articles constituted copyright infringement. Best Decl. ¶ 12-16; Cassidy Decl. ¶ 16-21; Wilding Decl. ¶ 13-18 (Defendants had good faith belief embedding is not infringement or that it was protected by the DMCA Safe Harbor).

### ii.   No Damages.

Plaintiff's Complaint prays for relief for "[a]ctual damages and disgorgement of all profits derived by Defendants form their acts of copyright infringement to reimburse Trunk Archive for all damages suffered by it …." Dkt. 2 at 11. Plaintiff did not provide a computation of its damages or any evidence to support its claimed losses in response to Defendants' Interrogatory asking for this information. Ex. H, Resp. No. 2. Plaintiff has not identified any additional licenses, any lost licensing fees, or any evidence the market for paid licensing has been devalued. *Id*. at 2-3. Plaintiff has not produced any evidence of actual damages or lost revenue from Defendants' actions. *Id*. Additionally, Plaintiff's Complaint alleges willful infringement, but it has not identified any evidence to support intent. Dkt. 2 at 11. For the same reasons discussed in relation to its defense for no willful infringement

in connection with its failure to state a claim defense (*see* IV(i)(i)), there remain genuine issues of material fact for the jury.

Also, for the same reasons presented in Best Little Sites and Nathan Best's Opposition to Motion to Dismiss Counterclaim and to Strike Certain Affirmative Defenses ("Opp. Mot. Strike Dkt. 64") apply here. Dkt. 64 at 10-11. In view of that opposition, the Court has already denied Plaintiff's attempt to strike this defense. Dkt. 70.

### iii.  Public Policy.

Not disputed that "this [C]ourt has already stricken this defense as insufficient." See Dkt. 70."

### iv.  Failure To Mitigate.

Not disputed that "this [C]ourt has already stricken this defense as insufficient." See Dkt. 70.

### v.  DMCA Safe Harbor

Plaintiff's Motion states, "the Court has already entered judgment on the pleadings in favor of Trunk Archive on this issue. *See* Dkt. #85." This determination was dependent on the fact the Photographs were not stored on servers owned or controlled by Defendants. Dkt. 85 page 16-17. Plaintiff now concedes the Photographs were embedded. Dkt. 102 pages 6-7. If Plaintiff attempts to dispute its own "undisputed fact," then the DMCA safe harbor defense should persist.

### vi.  Res Judicata.

The issues and subject matter in this case overlap the issues in the First Case. The bases, reasoning, and explanation set out in Defendants' Opp. Mot. Strike Dkt. 64 apply here. Dkt. 64 at 10-11. In view of that opposition, the Court has denied Plaintiff's attempt to strike this defense. Dkt 70.

### vii.  Lack Of Actual Knowledge.

As discussed above, Plaintiff has alleged willful infringement and is asking for statutory

damages. Dkt 2. 17 U.S.C. §504(c)(2) provides that if an "infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." There remain numerous issues of disputed facts which should be left to the jury as to whether Defendants reasonably believed its acts did not constitute infringement. Best Decl. ¶ 12-16; Cassidy Decl. ¶ 16-21; Wilding Decl. ¶ 13-18. (*see* IV(i)(i)). Also, the same reasons presented in their Opp. Mot. Strike Dkt. 64 apply here. Dkt. 64 at 10-11. The Court has already denied Plaintiff's attempt to strike this defense. Dkt. 70.

> viii.  *Lack Of Material Contribution.*

Plaintiff has withdrawn or made clear it is not seeking contributory infringement.

> ix.  *Lack Of Intent.*

Also, the same reasons presented in Defendants' Opp. Mot. Strike Dkt. 64 apply here. Dkt. 64 at 10-11. In view of that opposition, the Court has already denied Plaintiff's attempt to strike this defense. Dkt. 70. As with several other defenses, this defense also goes directly to Trunk Archive's allegation of willful infringement, which requires "that the defendant either knew that his or her conduct constituted copyright infringement or recklessly disregarded the possibility that his or her conduct constituted copyright infringement." *Nunes*, 2018 WL 2214593, at *1. Further, there exists considerable factual issues that support this defense. Best Decl. ¶ 12-16; Cassidy Decl. ¶ 16-21; Wilding Decl. ¶ 13-18. (*see* IV(i)(i)).

> x.  *Expeditious Removal.*

As discussed above, Plaintiff's Complaint alleges that Defendants' infringement was willful. Dkt 2. For the same reasons discussed above in section IV(i)(i), this leaves a genuine issue of material fact for which a motion for summary judgment cannot be granted. *Id*.

    *xi. No DMCA Takedown Notification.*

The response in Section IV(i)(v) applies here.

    *xii. Embedding.*

For the same reasons discussed in Section IV(b), embedding is a defense. Dkt. 85.

    *xiii. No Proximate Damages.*

Plaintiff's Motion on this defense should be denied for the same reasons presented in their Opp. Mot. Strike Dkt. 64. The Court has already denied Plaintiff's attempt to strike this defense. Dkt 70. For the same reasons presented above in connection with its defense for no damages (Section IV(i)(ii)) as well as its arguments in Sections IV(i)(I, ix, x, and xi)), there remain genuine issues of material fact for the jury.

    *xiv. Bad Faith.*

Plaintiff employed "troll" like tactics to extract a quick and undervalued settlement with the threat of statutory damages and attorneys' fees even in the face of Defendants' reasonable and valid noninfringement defenses. Exs. J and L. There are considerable factual disputes concerning whether the motivation to file this lawsuit was to protect licenses or to force quick undervalued low-cost settlements with threats of statutory damages and attorneys' fees. Plaintiff's initial cease and desist and demand letters demonstrate this tactic. *Id*. This is especially true as it should have known embedding would be a defense or that the DMCA Safe Harbor would apply. Plaintiff initially offered to settle offering "a complete release of all liability associated with this image for $12,000." Ex. L. This low offer was made, despite the fact that if Plaintiff believed it had a valid claim, Plaintiff could be awarded statutory damages of $150,000. 17 U.S.C. 504(c)(2). Also, in view that embedding is an available defense to infringement, Defendants opposition and rejection to Plaintiff's low ball offers

with the threat of statutory damages and attorneys' fees was reasonable. Additionally, it appears that Plaintiff has made no attempt to protect the Photographs by employing paywalls, utilizing metadata tagging, or placing digital watermarks over its works. Ex. A, Best. Decl. ¶ 22; Ex. O; *see also* Dkt 85 page 14. Also, Plaintiff has allowed the widespread distribution of its work. Ex. H, Resp. Nos. 23-48. *See* IV(h)(iii); Ex. I, Resp. Nos. 23-48; Ex. A, Best Decl. ¶ 24; Ex. B, Cassidy Decl. ¶ 20; Wilding Decl. ¶ 17; Exs. M, N, and P.

       *xv.  Unjust Enrichment.*

Not disputed that "this [C]ourt has already stricken this defense as insufficient." See Dkt. #70.

       *xvi.  Lack Of Malice.*

For the same reasons as discussed above in connection with its defenses of failure to state a claim, no damages, lack of knowledge, lack of intent, expeditions removal, embedding, no proximate damages, bad faith, there remain disputed factual issues as to this defense. Sections IV(i)(i, ii, vii, ix, x, xii, xiii, xiv).

       *xvii.  Unclean Hands.*

For the same reasons as discussed above in connection with its defenses of failure to state a claim, no damages, lack of knowledge, lack of intent, expeditions removal, embedding, no proximate damages, bad faith, there remain disputed factual issues as to this defense. Sections IV(i)(i, ii, vii, ix, x, xii, xiii, xiv).

       *xviii.  Good Faith.*

For the same reasons as discussed above in connection with its defenses of failure to state a claim, no damages, lack of knowledge, lack of intent, expeditions removal, embedding, no proximate damages, bad faith, there remain disputed factual issues as to this defense. Sections IV(i)(i, ii, vii, ix,

x, xii, xiii, xiv).

xix.   *Infliction Of Own Harm.*

As discussed above, Plaintiff has taken no steps to protect its copyrights. Ex. A, Best Decl. ¶ 22; Ex. O. *see also* Dkt. 85 page 14.

xx.   *No Ability To Supervise Or Control.*

For the same reasons discussed above in connection with vicarious liability (Section IV(c)(ii)), this defense should remain and not be disposed of on summary judgment. *See* Ex. A, Best Decl. ¶ 5 and 10; Dkt. 102-1 Ex. 37 Resp. No. 7; Dkt. 102-1 Ex. 39 Nos. 3-18. Defendants CBM and Best did not review the allegedly infringing articles prior to their publication.

xxi.   *No Financial Benefit.*

For the same reasons discussed above in connection with vicarious liability (Section IV(c)(iii)), this defense should remain and not be disposed of on summary judgment. *See* Ex. B, Cassidy Decl. ¶ 4; Ex. C, Wilding Decl. ¶ 21; Dkt 102-1 Ex. 36. There is no evidence showing the allegedly infringing images contributed to monetization.

xxii.   *Laches And Waiver.*

Not disputed that "this [C]ourt has already stricken this defense as insufficient." See Dkt. #70. As to the defense of waiver, see argument regarding the statute of limitations in Section IV(g)(i).

xxiii.   *Copyright Misuse.*

For the same reasons as discussed above in connection with its defenses of failure to state a claim, no damages, lack of knowledge, lack of intent, expeditions removal, embedding, no proximate damages, bad faith, there remain disputed factual issues as to this defense. IV(i)(i, ii, vii, ix, x, xii, xiii, xiv); Exs. J, L, and O.

      *xxiv.  First Amendment.*

Not disputed that "this [C]ourt has already stricken this defense as insufficient." See Dkt. #70.

      *xxv.  Fair Use.*

For the same reasons discussed above in Section IV(f) there remain considerable factual disputes as to the defense of fair use. Therefore, summary adjudication on this defense is improper.

      *xxvi.  Invalid Copyrights.*

Defendants withdraw this defense, until and unless information is discovered as to validity.

      *xxvii.  Speculative Damages.*

See argument above in section IV(i)(ii) related to damages.

      *xxviii.  De Minimis Use.*

The undisputed fact as agreed to by Plaintiff is that Defendants did not copy or use any of the Photographs but only embedded the HTML code to link back to the Photographs. Dkt. 102 at 6-7. For the same reasons as discussed above related to embedding and the fair use defense, there remains disputed issues of fact.

**g.  Statutory Damages Should Not Be Awarded**

No damages, including statutory damages, should be awarded as embedding and fair use are defenses to copyright infringement, and have been prior to and throughout this case. Dkt. 85. Even if infringement were found, because embedding is a recognized defense, other available defenses, Defendants' good faith actions, and Plaintiff's bad actions, the Court in its discretion should limit statutory damages to the lowest possible amount. 17 U.S.C. §504(c)(1) ("as the court considers just."). If infringement is found, Defendants' reserve their rights to address damages then.

## V.     CONCLUSION

Because embedding is a defense to infringement, as well as Defendants' other available defenses,

when all the facts whether disputed or undisputed are viewed in the light most favorable to Defendants

and they are afforded all inferences, Plaintiff's motion should be denied.

Dated this 29th day of December, 2023.

KIMBALL ANDERSON

/s/ Robert E. Aycock
Robert E. Aycock
Tanner Reber

*Attorneys for Defendants and Counterclaim-Plaintiffs ComicBookMovie.com and Nathan Best*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 29, 2023, I caused a true and correct copy of the foregoing

**DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND**

**SUPPORTING MEMORANDUM** to be filed via the Court's CM/ECF system, which directed

service by email on all counsel of record.

*/s/Robert E. Aycock*